ACCEPTED
03-15-00313-CV
6015790
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/10/2015 11:56:19 AM
JEFFREY D. KYLE
CLERK

**CASE NO. 03-15-00313-CV**

_____

**IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS AT AUSTIN**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/10/2015 11:56:19 AM
JEFFREY D. KYLE
Clerk

_____

**HERMENIA JENKINS ,**
*Appellant*
**v.**

**CROSBY INDEPENDENT SCHOOL DISTRICT, and
MICHAEL L. WILLIAMS, COMMISSIONER OF EDUCATION,**
*Appellees*

_____

Appealed from the 200th Judicial District of Travis County, Texas
Cause No. D-1-GN-14-000619
*Jenkins v. Crosby Indep. Sch. Dist. and Michael L. Williams*
The Honorable Amy Clark Meachum presiding

_____

**APPELLANT'S BRIEF**

_____

Kevin F. Lungwitz    State Bar No. 12698790
Elizabeth Poole    State Bar No. 24051201
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd.
Box D-109-362
Austin, Texas 78704-4785
P. 512.461.0188
F. 866.739.7138
Kevin@LungwitzLaw.com
Elizabeth@LungwitzLaw.com
Attorneys for Appellant Hermenia Jenkins

**ORAL ARGUMENT REQUESTED**      July 10, 2015

# I. IDENTITIES OF PARTIES AND ATTORNEYS

### Appellant/Plaintiff
Hermenia Jenkins

**Attorney in District Court and Court of Appeals:**
Kevin Lungwitz
State Bar No. 12698790
Elizabeth Poole
State Bar No. 24051201
THE LUNGWITZ LAW FIRM, P.C.
3005 S. Lamar Blvd.
Box D-109-362
Austin TX 78704
Phone:       512.461.0188
Fax:         866.739.7138
Kevin@LungwitzLaw.com
Elizabeth@LungwitzLaw.com

### Appellee/Defendant:
Crosby Independent School District

**Attorneys in District Court and Court of Appeals:**
David B. Hodgins
Rebecca R. Weimer
THOMPSON & HORTON, L.L.P.
3200 Southwest Freeway, Suite 2000
Houston TX 77027
Tel:  713.554.6745
Fax: 713.583.8245
DHodgins@thompsonhorton.com
RWeimer@thompsonhorton.com

**<u>Appellee/Defendant:</u>**
Michael L. Williams, Commissioner of Education

**<u>Attorneys in District Court and Court of Appeals</u>:**
Andrew Lutostanski
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
Andrew.Lutostanski@texasattorneygeneral.com

Ken Paxton/Greg Abbott, Attorney General of Texas
Charles E. Roy/Daniel T. Hodge, First Assistant Attorney General of Texas
James E. Davis/David C. Mattax, Dep. Attorney General for Defense Litigation
David A. Talbot, Jr., Chief - Administrative Law Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:  (512) 475-4200
Facsimile:   (512) 457-4680

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS.......................................................... 2

TABLE OF CONTENTS ...................................................................................... 4

TABLE OF APPENDICES ................................................................................... 5

INDEX OF AUTHORITIES ................................................................................. 6

STATEMENT OF THE CASE .............................................................................. 8

STATEMENT REGARDING ORAL ARGUMENT ................................................. 8

STANDARD OF REVIEW ................................................................................... 9

ISSUES PRESENTED ........................................................................................10

STATEMENT OF FACTS....................................................................................11

SUMMARY OF THE ARGUMENT.....................................................................12

ARGUMENT ......................................................................................................14

1.  Texas law requires a principal to be employed in the "same professional
    capacity" from year to year, unless the school board nonrenews her
    contract.  Here, Jenkins was employed as principal for eight years, then
    involuntarily reassigned to assistant principal without receiving the quasi-
    due-process protections of the contract nonrenewal process.  Is principal
    in the "same professional capacity" as assistant principal? .............................14

    A.  Texas Education Code §21.201(1) defines "professional capacity"
        in §21.206.  .......................................................................................14

    B.  A principal's job is not comparable to an assistant principal's job.  ......20

2.  School districts must employ each educator under a contract with a
    legitimate professional capacity.  Jenkins was a principal, but her contract
    says she was an "Employee" which is not a legitimate professional
    capacity.  The commissioner found that Jenkins was an "administrator," a
    term not found in her contract or defined in law, but broad enough to
    encompass her reassignment from principal to assistant principal.  Did the
    commissioner correctly interpret the contract? .................................................24

CONCLUSION ...................................................................................................29

PRAYER .............................................................................................................30

CERTIFICATE OF COMPLIANCE ....................................................................31

CERTIFICATE OF SERVICE .............................................................................32

_____

*Jenkins v. Crosby Indep. Sch. Dist.* - Case No. 03-15-00313-CV
Appellant's Brief
Page 4

**TABLE OF APPENDICES**

1. *Jenkins v. Crosby Indep. Sch. Dist.*,
   Docket No. 043-R10-1211 (Tex. Comm'r Educ. 2013)

2. Final Judgment - *Jenkins v. Crosby Indep. Sch. Dist.,* No. D-1-GN-14-000619 (200th Dist. Ct., Travis County, Tex. Feb. 26, 2015)

3. Texas Education Code Chapter 21, Subchapter E §§21.201-21.213

4. Texas Education Code §11.201 and §11.202

5. Jenkins' Employment Contract 2011-2013

6. *Barich v. San Felipe-Del Rio Cons. Indep. Sch. Dist.*,
   Docket No. 117-R1a-484 (Tex. Comm'r Educ. 1985)

7. *Perales v. Robstown Indep. Sch. Dist.,*
   Docket Nos. 053-R10-104; 084-R3-604 (Tex. Comm'r Educ. 2006)

8. *Carpenter v. Wichita Falls Indep. Sch. Dist.,*
   Docket No. 247-R3-491 (Tex. Comm'r Educ. 1993)

9. *Lehr v. Ector County Indep. Sch. Dist.,*
   Docket No. 003-R3-0908 (Tex. Comm'r Educ. 2011)

10. *Young v. Leggett Indep. Sch. Dist.,*
    Docket No. 175-R3-898 (Tex. Comm'r Educ. 1998)

11. *Wheeler v. Austin Indep. Sch. Dist.,*
    Docket No. 008-R3-1108 (Tex. Comm'r Educ. 2011)

12. *Tuck v. Alief Indep. Sch. Dist.*,
    Docket No. 008-R10-1007 (Tex. Comm'r Educ. 2012)

13. Chart of reassignment decisions from the commissioner (From the commissioner's brief filed in Travis County District Court.)

# INDEX OF AUTHORITIES

Texas Cases:

*Evergreen Nat. Indem. Com. v. Tan It All, Inc.,* 111 S.W. 3d 669
    (Tex. App. - Austin 2003, no pet.)......................................................28
*Kelley-Coppedge, Inc. v. Highlands Ins. Co.,*
    980 S.W.2d 462 (Tex. 1998).........................................................28
*Montgomery Independent School District v. Davis,* 34 S.W.3d 559, 566
    (Tex. 2000)...................................................................................9
*Poole v. Karnack Indep. Sch. Dist.,* 344 S.W.3d 440, 443
    (Tex. App. – Austin 2011, no pet.) .....................................................9

Commissioner's Decisions:

*Barich v. San Felipe-Del Rio Cons. Indep. Sch. Dist.,*
    Docket No. 117-R1a-484 (Tex. Comm'r Educ. 1985) .....16, 17, 19, 20
*Carpenter v. Wichita Falls Indep. Sch. Dist.,*
    Docket No. 247-R3-491 (Tex. Comm'r Educ. 1993) ...................16, 26
*Jenkins v. Crosby Indep. Sch. Dist.,*
    Docket No. 043-R10-1211 (Tex. Comm'r Educ. 2013) ...........8, 18, 24
*Lehr v. Ector County Indep. Sch. Dist.,*
    Docket No. 003-R3-0908, p. 13 (Tex. Comm'r Educ. 2011) .......15, 19
*Martinez v. San Antonio Indep. Sch. Dist.,*
    Docket No. 219-R3-589 (Tex. Comm'r Educ. 1989) ........................17
*Perales v. Robstown Indep. Sch. Dist.,*
    Docket No. 053-R10-104; 084-R3-604 (Tex. Comm'r Educ. 2006)..16
*Ramos v. El Paso Indep. Sch. Dist.,*
    Docket No. 002-R10-900 (Tex. Comm'r Educ. 2002) ......................17
*Tuck v. Alief Indep. Sch. Dist.,*
    Docket No. 008-R10-1007 (Tex. Comm'r Educ. 2012)
    .............................................................................15, 19, 20, 25, 28
*Wheeler v. Austin Indep. Sch. Dist.,*
    Docket No. 008-R3-1108 (Tex. Comm'r Educ. 2011) ...........18, 25, 28
*Young v. Leggett Indep. Sch. Dist.,*
    Docket No. 175-R3-898 (Tex. Comm'r Educ. 1998) ........................25

Texas Statutes and Administrative Code:

Texas Education Code §7.057(d) ........................................................................9
Texas Education Code §11.201 and 11.202 .......................................................21
Texas Education Code §11.253...........................................................................21
Texas Education Code §11.253(h)......................................................................22
Texas Education Code Chapter 21 ......................................................................14
Texas Education Code §21.002...........................................................................27
Texas Education Code §21.201..............................................................12, 13, 16, 26
Texas Education Code §21.201(1)....................12, 14, 15, 16, 18, 19, 20, 29
Texas Education Code §21.206..................................12, 14, 15, 16, 19, 20
Texas Education Code §21.206(b)...........................................................14, 15, 18
Texas Education Code §21.210(c) ......................................................................16
Texas Education Code §21.212...........................................................................15
Texas Education Code §21.212(b).......................................................................15
Texas Education Code §21.354...........................................................................23
Texas Education Code §21.3541..........................................................................23
Texas Education Code §21.357...........................................................................22
Texas Education Code §39.107(b) .......................................................................22
Texas Govt. Code §2001.174..............................................................................9
Texas Govt. Code Chapter 2001, subchapters F and G ....................................8
19 Texas Admin Code Chapters 241 and 242.....................................................23
19 Texas Admin Code §232.2(b) ........................................................................23

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the case* | This is a public educator employment and contract case. The case is procedurally governed by Texas Education Code §7.057(d), which gives this court jurisdiction; and Texas Government Code Chapter 2001, subchapters F and G.<br><br>Jenkins pursued an employment grievance. (R. 287-289; R. 327-336)  The Crosby ISD school board denied the grievance on October 24, 2011. (R. 324) |
| *The Commissioner of Education* | Jenkins timely appealed to the Commissioner of Education who affirmed the school board on December 19, 2013. *Jenkins v. Crosby Indep. Sch. Dist.*, Docket No. 043-R10-1211 (Tex. Comm'r Educ. 2013) (Appx. 1, R. 5-30). |
| *Trial Court Judge, district, county and disposition* | Jenkins timely appealed the Commissioner's Decision to the 200th Judicial District Court of Travis County, Texas. *Jenkins v. Crosby Indep. Sch. Dist. and Michael L. Williams,* Cause No. D-1-GN-14-000619.<br><br>On February 26, 2015, the Honorable Amy Clark Meachum signed the Final Judgment affirming the Commissioner's Decision.  (Appx. 3)  Jenkins timely filed a motion for new trial on March 23, 2015, which was overruled by operation of law. |
| *Third Court of Appeals* | Jenkins filed a Notice of Appeal on May 22, 2015. |

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would aid in the Court's decision on the novel issues presented.  The likely presence of *amici curiae* indicates a broad interest in the issues among affected members of the school law community.  All of the attorneys

in this case have experience in the narrow field of school law, providing the Court the opportunity to inquire about matters that the briefs may not fully resolve.

## STANDARD OF REVIEW

This Court has jurisdiction pursuant to §7.057(d) of the Texas Education Code. Judicial review of the commissioner's decision is governed by a substantial evidence review, as set forth in §2001.174 of the Texas Administrative Procedure Act. *Poole v. Karnack Indep. Sch. Dist.,* 344 S.W.3d 440, 443 (Tex. App. – Austin 2011, no pet.). Under the substantial evidence rule, this Court reviews issues of law de novo. Tex. Gov. Code §2001.174. This appeal involves pure issues of law.

This Court must confine its review to the record of the proceedings before the commissioner. In reviewing the commissioner's decision, this Court must determine whether there is "more than a mere scintilla" of evidence to support the commissioner's decision. Whether the commissioner's decision meets that standard is a question of law. *Montgomery Independent School District v. Davis*, 34 S.W.3d 559, 566 (Tex. 2000).

Substantial evidence does not exist to support the commissioner's decision and the commissioner's conclusions of law are in violation of statute, in excess of the agency's statutory authority, or are otherwise erroneous. Tex. Gov. Code §2001.174.

## ISSUES PRESENTED

1. Texas law requires a principal to be employed in the "same professional capacity" from year to year, unless the school board nonrenews her contract. Here, Jenkins was employed as principal for eight years, then she was involuntarily reassigned to assistant principal without receiving the quasi-due-process protections of the contract nonrenewal process. Is principal in the "same professional capacity" as assistant principal?

2. School districts must employ each educator under a contract with a legitimate professional capacity. Jenkins was a principal, but her contract says she was an "Employee" which is not a legitimate professional capacity. The commissioner found that Jenkins was an "administrator," a term not found in her contract or defined in law, but broad enough to encompass her reassignment from principal to assistant principal. Did the commissioner correctly interpret the contract?

# STATEMENT OF FACTS[1]

Jenkins served as campus principal of Charles R. Drew Intermediate School from 2003 through June 2011. (R. 258, grievance transcript) She was employed by Defendant Crosby Independent School District (CISD) under a term contract for the school years 2011 - 2013, which she signed on March 2, 2011. (Appx. 5; R. 294 ex. 4) The contract is silent regarding her job placement or employment classification. (e.g. principal, teacher, administrator, counselor, etc.) The contract merely refers to Jenkins as "Employee." (Appx. 5)

The superintendent informed her by memo dated June 28, 2011 that he was reassigning Jenkins from campus principal of Charles R. Drew Intermediate to assistant principal at Crosby High School for the 2011-12 school year. No performance reason was given for the reassignment. (R. 291) At the time, Jenkins had worked in CISD for 16 years, the previous eight years as principal.

Jenkins objected to the reassignment by pursuing an employment grievance under school board policy DGBA. The school board denied the grievance. (R. 287-322; R. 324) Policy DGBA does not provide for a due process hearing; only a "stop, look and listen" hearing. (R. 327)

---

[1] "R." stands for administrative record, and is followed by the administrative record page number. The administrative record is part of the reporter's record.

## SUMMARY OF THE ARGUMENT

THE FIRST ISSUE: Principal and assistant principal are not in the "same professional capacity" in Texas Education Code §21.206. Texas Education Code §21.201(1) defines "teacher" as "superintendent, *principal*, supervisor, classroom teacher, counselor, or other full-time professional employee who is required to hold a certificate …, or a nurse." (Appx. 3, emphasis added) Applying the law to the facts, §21.206 requires that Jenkins - a principal - be employed in the "same professional capacity" from year to year, unless the school board invokes the statutory, contract nonrenewal process. (Appx. 3) Jenkins lost her job as principal without receiving the protections of the quasi-due-process contract nonrenewal process because CISD and the commissioner erroneously construed principal and assistant principal to be in the same professional capacity.

For years the commissioner has opined that the positions listed in §21.201, including superintendent, classroom teacher, counselor, librarian and nurse are all distinct professional capacities - *except for principal*.

Instead of looking to the list of professional capacities in §21.201 to decide this case, the commissioner first looked to the job title in the contract. Here, the contract was too vague to determine professional capacity, so the commissioner purportedly reviewed the authority, duties and salaries of the positions before and after the reassignment to determine whether they fell within the same professional

capacity. Even by this standard, it is clear that principal is not in the same professional capacity as assistant principal. By law, a principal is the sole, campus instructional leader and state law largely defines the authority and duties. Conversely, state law does not define what an assistant principal does. An assistant principal serves at the pleasure of the principal, subject to a local job description. Also, the job descriptions in this case prove that principal and assistant principal are not in the same professional capacity.

THE SECOND ISSUE: A school district must employ each educator under a contract with a legitimate professional capacity. Though Jenkins had been employed as principal for the preceding eight years, Jenkins' contract with CISD said she was a generic "employee," which the commissioner has said is not a legitimate professional capacity. To resolve this contractual ambiguity, the commissioner erroneously held that Jenkins was an "administrator," another generic term broad enough to encompass her reassignment to assistant principal. But "administrator" does not appear anywhere in Jenkins' contract or in §21.201, and it is not defined in relevant state law. Since the contract did not state a legitimate professional capacity, the commissioner should have construed it narrowly against the author, CISD, as a contract for the position of "principal," thereby invalidating Jenkins' reassignment to assistant principal.

<u>**ARGUMENT**</u>

**1. Texas law requires a principal to be employed in the "same professional capacity" from year to year, unless the school board nonrenews her contract. Here, Jenkins was employed as principal for eight years, then involuntarily reassigned to assistant principal without receiving the quasi-due-process protections of the contract nonrenewal process. Is principal in the "same professional capacity" as assistant principal?**

**A.   TEXAS EDUCATION CODE §21.201(1) DEFINES "PROFESSIONAL CAPACITY" IN §21.206.**

Chapter 21 of the Texas Education Code governs the contractual relationship between the professional, certified employee and the school district. Texas Education Code §21.201(1) defines teacher as:

> A superintendent, *principal*, supervisor, classroom teacher, counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B, or a nurse.

> (Appx. 3, emphasis added)

One of the greatest statutory protections teachers have is the right to be employed from year to year, under contract, *in the same professional capacity* unless the school district invokes the statutory, contract nonrenewal process. Texas Education Code §21.206(b) states, "The board's failure to give [timely, written notice of proposed, contract nonrenewal] … constitutes an election to employ *the teacher* in the *same professional capacity* for the following school year." (Brackets and emphases added) (Appx. 3)  The commissioner has described this

---

passage in §21.206 as "a central plank" in an educator's statutory contract rights. *Tuck v. Alief Indep. Sch. Dist.*, Docket No. 008-R10-1007, p. 5 (Tex. Comm'r Educ. 2012) (Appx. 12).

Since the term "teacher" specifically includes principal, as applied in this case §21.206(b) says, "The board's failure to give [statutory written notice of proposed, contract nonrenewal] … constitutes an election to employ *the principal* in the *same professional capacity* for the following school year." (Brackets and emphases added; "principal" substituted for "teacher") (Appx. 3) Principal is one of several "professional capacities" specifically identified in §21.201(1).[2]

If a school board seeks to nonrenew a principal's contract at the end of the school year, the statutory nonrenewal process in §21.206 requires the board to give a principal timely written notice and reasons for the proposed nonrenewal, and an opportunity for a formal hearing to challenge the reasons. At the hearing, the principal has the right to be represented, to hear the evidence against her, to cross-examine adverse witnesses, and to present supporting evidence. Tex. Educ. Code

---

[2] Superintendents are not included in the definition of "teacher" in §21.206. Superintendents are protected by §21.212, the only other place in the Education Code where the term "same professional capacity" is used. While the contract nonrenewal procedures for superintendents are slightly different than for principals, supervisors, classroom teachers, and counselors, §21.212(b) still requires a school board to "employ the superintendent in the same professional capacity for the following school year" if the board fails to timely invoke the contract nonrenewal process. (Appx. 3) It is undisputed that superintendent is a "professional capacity" and that a school board cannot reassign a superintendent without following the contract

§21.210 (c). These protections are best described as due process or "quasi-due-process" protections.[3]  Here, Jenkins lost her principal job without ever receiving these protections. She was only allowed to pursue a grievance with a "stop, look, and listen" review by the school board.  (R. 327; 287-289)

There are no reported Texas court cases on whether §21.201 defines some or all of the "professional capacities" referred to in §21.206.[4]  *Barich v. San Felipe-Del Rio Cons. Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 117-R1a-484 (Tex. Comm'r Educ. 1985) (Appx. 6), is the commissioner's watershed decision on reassignments.  In *Barich*, the issue was whether an ROTC instructor had to be reassigned to the same ROTC position (for which he may not have been properly certified by the U.S. Air Force), or another teaching position for which he was certified by the Texas Education Agency. The commissioner explained that the

---

nonrenewal process.  *Lehr v. Ector County Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 003-R3-0908, p. 12 (Tex. Comm'r Educ. 2011) (Appx.  9)

[3] While these protections include the traditional components of due process, the legislature has declared that, "A teacher does not have a property interest in a contract beyond its term." Tex. Educ. Code §21.204 (e).  Whether this declaration formally undercuts a claim to due process in light of these traditional due process rights, is beyond the scope of this case.  Suffice it to say that the contract nonrenewal protections are at the very least "quasi-due-process" in nature.

[4] The commissioner has confronted this argument before.  *Perales v. Robstown Indep. Sch. Dist.*, Docket Nos. 053-R10-104; 084-R3-604 (Tex. Comm'r Educ. 2006) (Appx. 7) "Same professional capacity," as used in Texas Education Code section 21.206, is not limited to the individual classifications used in Texas Education Code section 21.201(1)." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 247-R3-491 (Tex. Comm'r Educ. 1993) (Appx. 8) "Appellant would have the commissioner … hold that the phrase "same professional capacity" … is … defined … by the definition of "teacher" found in §21.201(1) of that Act.  … [T]his phrase is … undefined … and … is a matter for interpretation by the commissioner, in the first instance, and by the courts."

---

legislature used the phrase "same professional capacity" rather than "exact same position," thereby giving districts flexibility in personnel assignments "while discouraging the abuse of the district's inherent or contractual reassignment authority." *Barich,* pp. 7-8 (Appx. 6)

Jenkins agrees that an employee is not entitled to the exact same position from year to year. "Same professional capacity" lies somewhere between, on the one hand, the "exact same position," and on the other hand, the school district's unfettered authority to reassign employees. The elementary principal of Campus A may be reassigned as elementary principal of Campus B as in *Martinez v. San Antonio Indep. Sch. Dist.,* Tex. Educ. Agency Docket No. 219-R3-589 (Tex. Comm'r Educ. 1989) (Appx. 8). A high school principal may be reassigned as an elementary school principal as in *Ramos v. El Paso Indep. Sch. Dist.,* Tex. Educ. Agency Docket No. 002-R10-900 (Tex. Comm'r Educ. 2002) (Appx. 9). However, since principal is its own professional capacity, CISD cannot reassign Jenkins from principal to assistant principal without giving her the protections of the contract nonrenewal process.

The commissioner recently described the competing interests that exist in reassignments:

> The district is given some flexibility to reassign employees in order to manage staff to cover school needs, while employees are assured of due process to protect against decisions that effectively demote them or

fundamentally alter their existing contractual relationships with and duties to the employing district.

*Wheeler v. Austin Indep. Sch. Dist.*, Docket No. 008-R3-1108, p. 3 (Tex. Comm'r Educ. 2011) (Appx. 11). Though the commissioner speaks as if he tries to balance the different interests, the scales are always tipped against administrators. For 30 years prior to this case, *the commissioner has never rejected a reassignment from one administrator position to another.* (Appx. 13) Jenkins was effectively demoted from the unique position of campus principal to one of several assistant principals at a different campus, fundamentally altering her contractual relationship with the district, without any quasi-due-process protection that the commissioner promised to protect.

The commissioner opined in this case, "The positions described in the first sentence of Texas Education Code section 21.201(1) *may or may not be* professional capacities for purposes of Texas Education Code section 21.206(b)." *Jenkins v. Crosby Indep. Sch. Dist.,* Tex. Educ. Agency Docket No. 043-R10-1211 (Tex. Comm'r Educ. 2013) (Appx. 1, p. 24 emphasis added). This indecisiveness is an acknowledgement by the commissioner that he has recognized as professional capacities many of the positions listed in §21.201(1), but not principal.

> An administrator … may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of a librarian; etc.

*Barich*, p. 8 (Appx. 6); *See Tuck v. Alief Indep. Sch. Dist.*, Docket No. 008-R10-1007, p. 6 (Tex. Comm'r Educ. 2012) (Appx. 12). Thus, the commissioner has conceded that §21.201(1) defines "professional capacity" as to superintendent, classroom teacher, counselor, nurse, and librarian.[5] However, without any rationale, the commissioner has failed to include principal in that group, even though it is also specifically identified in §21.201(1).

Defendants will argue that superintendents have statutory authority to reassign staff and that the employment contract also grants reassignment authority. There is a kernel of truth to that, but "same professional capacity" in §21.206 has always tempered the school district's authority to reassign professional staff. Section §21.206 also trumps any contract language that says an employee may be reassigned. This is the tension that the commissioner accurately described in *Barich* that exists between "exact same position" and the district's "abuse" of its right to reassign. The commissioner said it best:

> It would be odd for districts to believe just because contracts referred to employees as 'professional employees' that they could reassign such employees to any other professional position. If that were the case, superintendents could be reassigned as librarians and school nurses.

---

[5] Superintendents may not be reassigned out of their professional capacity. *Lehr v. Ector County Indep. Sch. Dist.*, Docket No. 003-R3-0908, p. 13 (Tex. Comm'r Educ. 2011) (Appx. 9)

*Tuck v. Alief Indep. Sch. Dist.*, Docket No. 008-R10-1007, p. 11 (Tex. Comm'r Educ. 2012) (Appx. 12). If this Court finds that principal is its own professional capacity like superintendent, classroom teacher, counselor, librarian and nurse, Jenkins can still be reassigned to another campus as principal. Jenkins could agree to a reassignment to another professional capacity. But the district could not involuntarily reassign her to a position other than principal without giving her the quasi-due-process protections of the contract nonrenewal process. Employing a principal as an "employee," then claiming an unchecked right to reassign her, is an "abuse of the district's inherent or contractual reassignment authority," the very thing the commissioner promised to guard against in *Barich*. *Barich,* pp. 7-8 (Appx. 6).

### B. A PRINCIPAL'S JOB IS NOT COMPARABLE TO AN ASSISTANT PRINCIPAL'S JOB

Assuming *arguendo* that §21.201(1) does not define "professional capacity" in §21.206, principal and assistant principal are still not in the same professional capacity. The commissioner has stated that he will review "differences in authority, duties, and salary" to determine if two jobs are in the same professional capacity. *Barich* p. 8. (Appx. 6.) He has declared that the test is "fact-intensive." *Tuck v. Alief Indep. Sch. Dist.*, Docket No. 008-R10-1007, p. 11 (Tex. Comm'r Educ. 2012) (Appx. 12). But, once the employee is declared to be an

"administrator," the commissioner's test has proven to be a legal fiction. No matter how different the authority, duties and salary, the result for administrators is always the same: The commissioner has approved all administrator-to-administrator reassignments for the last 30 years. (Appx. 13)

An objective comparison of the authority and duties between principal and assistant principal prove that the positions are fundamentally different and are not in the same professional capacity. Like a superintendent, and *unlike any other position in the public schools*, a principal receives her authority and duties directly from state law. Tex. Educ. Code §§11.201, 11.202 (Appx. 4). A school district or superintendent may not alter the authority granted to a principal under state law. Pursuant to Texas Education Code §11.202 the principal has these powers:

   a.   The principal of a school is the instructional leader of the school and shall be provided with adequate training and personnel assistance to assume that role.

   b.   Each principal shall:

        1.   Except as provided by Subsection (d), approve all teacher and staff appointments for that principal's campus from a pool of applicants selected by the district or of applicants who meet the hiring requirements established by the district, based on criteria developed by the principal after informal consultation with the faculty;
        2.   Set specific education objectives for the principal's campus, through the planning process under Section 11.253;
        3.   Develop budgets for the principal's campus;

---

4. Assume the administrative responsibility and instructional leadership, under the supervision of the superintendent, for discipline at the campus;

5. Assign, evaluate, and promote personnel assigned to the campus;

6. Recommend to the superintendent the termination or suspension of an employee assigned to the campus or the nonrenewal of the term contract of an employee assigned to the campus; and

7. Perform other duties assigned by the superintendent pursuant to the policy of the board of trustees.

c. The board of trustees of a school district shall adopt a policy for the selection of a campus principal that includes qualifications required for that position.

d. The superintendent … has final placement authority for a teacher transferred because of enrollment shifts or program changes …

A principal shall regularly consult a committee of community stakeholders in the "planning, operation, supervision, and evaluation of the campus educational program." Tex. Educ. Code §11.253(h). That a principal is granted authority directly from state law portends that the state also holds her accountable for the success or failure of the campus. A principal may not be retained at a campus deemed "unacceptable" for two years unless by permission of a statutory campus intervention team. Tex. Educ. Code §39.107(b). Conversely, a principal may receive a financial performance incentive for success. Tex. Educ. Code §21.357.

State law requires specific guidelines for the appraisals of principals that are distinct from the appraisals of other administrators, including assistant principals.

Tex. Educ. Code §21.354 and Tex. Educ. Code §21.3541.

There are only two categories of administrator certificates in Texas: superintendent and principal. Title 19 Tex. Admin. Code Chap. 241 and 242.[6] Not only does state law enunciate a principal's legal duties and authority, state regulation makes it clear that, like superintendents, principals are one-of-a-kind.[7]

A principal is a community figure and the spokesperson for the school. When a campus principal is removed or demoted, it makes the news, even in large cities.

In contrast, an assistant principal's authority and duties come from the principal or other supervisors. There is no state law defining the authority and duties of an assistant principal. Whereas the principal is the chief instructional leader of the campus, an assistant principal serves at the pleasure of the principal and a local job description. Whereas a principal's statutory duties may not be altered by the school district, an assistant principal's duties may be altered at any time by her supervisors. Here, the CISD's job description vaguely says that the assistant principal shall:

> Provide students with appropriate learning activities and experience designed to fulfill their potential for intellectual, emotional, physical

---

[6] 19 Tex. Admin. Code §232.2(b): Classes of certificates include the following: 1. Superintendent; 2. Principal; 3. Classroom teacher; 4. Instructional educator other than classroom teacher, including reading specialist; 5. Master teacher; 6. School librarian; 7. School counselor; 8. Educational diagnostician; and 9. Educational aide.

[7] According to the commissioner, a superintendent is "*sui generis*," or one-of-a-kind, and may not be reassigned. *Lehr v. Ector County Indep. Sch. Dist.*, Docket No. 003-R3-0908, p. 13 (Tex. Comm'r Educ. 2011) (Appx. 9)

and social growth.

(R. 293) There is no comparison between the statutory authority and duties of Jenkins as principal, and the authority and duties delineated in her assistant principal job description.

The commissioner erroneously stated, "The local record does not indicate with specificity what [Jenkins'] duties as assistant principal at Crosby High School are." *Jenkins v. Crosby Indep. Sch. Dist.*, Tex. Educ. Agency Docket No. 043-R10-1211 (Tex. Comm'r Educ. 2013) (Appx. 1, p. 2, finding of fact #4.). Had the commissioner compared Jenkins' statutory duties as principal with the actual job description of assistant principal in the record (R. 293), he would have had no option but to declare them as wholly different professional capacities.

2. **School districts must employ each educator under a contract with a legitimate professional capacity. Jenkins was a principal, but her contract says she was an "Employee" which is not a legitimate professional capacity. The commissioner found that Jenkins was an "administrator," a term not found in her contract or defined in law, but broad enough to encompass her reassignment from principal to assistant principal. Did the commissioner correctly interpret the contract?**

This issue is more fact-specific than the first. The commissioner has approached reassignment cases by first looking to the job title stated in the contract. The commissioner asks: "Is the contractual job title a legitimate professional capacity? Are both jobs encompassed by the contractual job title?" If

yes to both questions, then the two positions are probably within the same professional capacity. *Young v. Leggett Indep. Sch. Dist.*, Docket No. 175-R3-898 (Tex. Comm'r Educ. 1998) (Appx. 10)

What if the contract does not state a legitimate professional capacity and the answer to the first question is "no"? That is the case here. Jenkins was employed under a contract with Crosby ISD as an "employee." According to the commissioner in two recent cases, "professional employee" is not a legitimate professional capacity. *Wheeler v. Austin Indep. Sch. Dist.*, Docket No. 008-R3-1108 (Tex. Comm'r Educ. 2011) (Appx. 11). *Tuck v. Alief Indep. Sch. Dist.*, Docket No. 008-R10-1007, p. 11 (Tex. Comm'r Educ. 2012) (Appx. 12). The commissioner has described "professional employee" as "broad," "undefined," and "of little assistance in determining [the employee's] professional capacity;" "vague" and "overbroad" (*Wheeler*, pp. 5-6); "broad" and "improper" (*Tuck*, pp. 7-8); and "not a legitimate professional capacity." (*Wheeler*, p. 5; *Tuck* p. 7)

Here the commissioner ignored the fact that Jenkins was employed as an ambiguous "employee." There is no way to discern from reading the contract what Jenkins' position was, therefore, the contractual job title should be replaced with Jenkins' actual position. In this case, the contractual job title, "employee," should have been replaced with "principal," the job Jenkins had held for the previous eight years when she signed the contract. Without any legal reasoning, the commissioner

found, *sua sponte,* that Jenkins' professional capacity under the contract was "administrator," thus repairing the illegitimate contract term to the benefit of the school district.

"Administrator" is not a term found in §21.201, and it does not appear in Jenkins' employment contract authored by CISD. The commissioner does not explain where he got the term or why he inserted it into the contract. The commissioner has held that "administrator" is a legitimate professional capacity, but even the commissioner concedes the term is "generic." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, Docket No. 0247-R3-491 (Tex. Comm'r Educ. 1993) (Appx. 8).

"Administrator" is a contractual black hole, pulling any and all administrative positions into it. These positions may or may not require educator certification, and may or may not be recognized in law. They might include principal, assistant principal, assistant superintendent, athletic director, attendance coordinator, science support specialist, director of Even Start, a generic central office position, textbook coordinator, and other supervisory positions, limited only by the school district's creativity. (See Appx. 13) Though the differences in these positions are often vast, the commissioner has painted them with the same broad brush, declaring them to all reside in the same "administrator" professional capacity. If the contract says "administrator," the commissioner has never

overruled a reassignment from one administrator position to another for 30 years prior to this case. (Appx. 13)

State law says, "A school district shall employ each classroom teacher, principal, librarian, nurse, or school counselor under a … contract." Tex. Educ. Code §21.002. This law would have no meaning if a principal could be hired as an "employee" or "administrator" then immediately reassigned to another position without quasi-due-process contract protection. Each principal is entitled to a contract. The law says nothing about employing each administrator or employee under a contract, and indeed, does not require it.

Here, this Court does not need to decide whether it is appropriate for a school district to employ a principal under an "administrator" contract. What this Court must decide is whether the commissioner erred when he unilaterally inserted that term into her contract. Jenkins objects that the commissioner altered the contract with the generic "administrator" to cure the more ambiguous "employee" designation. The commissioner should have inserted the more accurate term - "principal." Each principal is entitled to a contract. Tex. Educ. Code. §21.002. Jenkins was employed as the statutorily designated and authorized campus principal - the campus instructional leader - for eight years preceding and during the execution of the contract in question. (R. 287-89; R. 213) She was not an ambiguous "employee" and she was not a generic "administrator."

Under the doctrine of *contra proferentem*, an ambiguous contract should be interpreted against its author. *Evergreen Nat. Indem. Com. v. Tan It All, Inc.*, 111 S.W. 3d 669 (Tex. App. - Austin 2003, no pet.). Whether a contact is ambiguous is a question of law for the court to decide. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462 (Tex. 1998). In other cases, the commissioner has declared contracts like Jenkins' to be ambiguous, describing "professional employee" as "overbroad," "vague," and "improper." *Tuck* at pp. 7-8; *Wheeler* at pp. 5-6. Though her contract is ambiguous as a matter of law, here, the commissioner failed to interpret the ambiguity against the author as required.

Jenkins was employed as a principal, and her contract should reflect that, especially since the CISD used an ambiguous and illegitimate term to define her professional capacity. This is the only reasonable and lawful interpretation that one can impose on the contract, which was signed at the same time that Jenkins was employed as a campus principal. (R. 294) When Jenkins' contract is construed against CISD on the question of her professional capacity, it must be concluded that she cannot be reassigned from principal to assistant principal without receiving the protections of the contract nonrenewal process.

# CONCLUSION

This case does not affect the superintendent's authority to reassign any personnel other than a principal. The school's ability to reassign classroom teachers, counselors, librarians, nurses and other administrators is unaffected. Jenkins only advocates for the inclusion of principals among the specific list of professional capacities defined by §21.201(1).

A principal is not comparable to assistant principal. Principals and superintendents derive their authority directly from state law and state certification. Assistant principals derive their authority only through their supervisors and a local job description. The position of campus principal is not a generic administrator position. As principal, Jenkins was the instructional leader, community figure, spokesperson, and chief supervisor of the campus. As assistant principal, she is one of several, operating in a supporting role, and serving at the pleasure of the principal.

The school district may reassign the principal to a different campus. The district may negotiate a reassignment of the principal to a different professional capacity. If a principal is underperforming, the district may work to remediate her performance, negotiate a peaceful resolution of the employment relationship, or seek to dismiss the principal. The principal would be entitled to written reasons for dismissal, and an opportunity to challenge the reasons in a hearing. These

approaches respect the principal's rights for quasi-due-process, and reasonably temper the district's unfettered authority to reassign principals.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, JENKINS respectfully requests that she be granted the following relief:

A.     That this Court reverse the trial court and the decision of the commissioner and render for Jenkins;

B.     That this Court finds that CISD breached Jenkins' contract and/or violated Jenkins' statutory rights;

C.     That this Court order CISD to immediately reinstate Jenkins to her former position as principal;

D.     That Jenkins be awarded such other and further relief to which she may show herself to be justly entitled.

Respectfully submitted,

/s/ Kevin F. Lungwitz
Kevin F. Lungwitz
State Bar No. 12698790
Elizabeth Poole
State Bar No. 24051201
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd.
Suite D-109-362
Austin, Texas 78704-4785
P. 512.461.0188
F. 866.739.7138
Kevin@LungwitzLaw.com
Elizabeth@LungwitzLaw.com

ATTORNEYS FOR APPELLANT
HERMENIA JENKINS

**CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. PROC. 9.4(I)(3)**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this brief, excluding those matters listed in Rule 9.4(i)(1) is 4580.

/s/ Kevin F. Lungwitz
Kevin F. Lungwitz

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on:

David B. Hodgins
THOMPSON & HORTON, L.L.P.
3200 Southwest freeway, Suite 2000
Houston TX 77027
Telephone: (713) 554-6745
Telecopy: (713) 583-8245
dhodgins@thompsonhorton.com
FOR APPELLEE CROSBY ISD

Andrew Lutostanski
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin TX 78711-2548
Phone: (512) 475-4200
Fax: (512) 320-0167
andrew.lutostanski@texasattorneygeneral.gov
FOR APPELLEE COMMISSIONER OF EDUCATION

Via e-file and courtesy email on July 10, 2015.

/s/ Kevin F. Lungwitz
Kevin F. Lungwitz

# APPENDIX 1

*Jenkins v. Crosby Indep. Sch. Dist.*,

Docket No. 043-R10-1211

(Tex. Comm'r Educ. 2013)

| HERMENIA JENKINS | § | BEFORE THE |
| --- | --- | --- |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| CROSBY INDEPENDENT SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Hermenia Jenkins, appeals the denial of her grievance by Respondent, Crosby Independent School District. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause. Petitioner is represented by Kevin F. Lungwitz, Attorney at Law, Austin, Texas. Respondent is represented by David B. Hodgins, Attorney at Law, Houston, Texas[1].

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied in part and dismissed in part. Exceptions and replies were timely filed and considered.

The central issue in this case is whether a principal serving under a term contract can be reassigned to an assistant principal position in the year after the principal's contract has been renewed. By statute, such a reassignment must be in "same professional capacity." Petitioner contends that a bright line rule should be established so that a principal may only be reassigned to another principal position. For the Commissioner to so rule would require the Commissioner to overrule a string of cases going back to the Commissioner's earliest decisions under the Term Contract Nonrenewal Act. Further, such a ruling is not consistent with the intention of the Legislature which passed the statute in question. The Legislature did not create the purposed bright line rule, but instead used language that allows the Commissioner to

---

[1] The Texas Association of School Board's Legal Assistance Fund filed a Brief of *Amicus Curiae.*

**Appx. 1**

H. Jenkins v. Crosby ISD
TEA #: 000005

exercise his broad experience in education to determine just what is the "same professional capacity" in each individual case.

Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[2].

1.    In March 2011, Petitioner and Respondent signed a contract that provides in relevant part:

> 1.    The Board hereby agrees to employ the Employee and the Employee agrees to serve the Board by engaging in duties as assigned by the Superintendent of the Crosby Independent School District for the school years 2011-2013 with beginning and ending dates as set by the Board.
>
> . . .
>
> 3.    It is understood and agreed by the parties to this Contract that the Superintendent of the Crosby Independent School District shall have the right to assign such duties to the Employee as the Superintendent shall deem proper, and since the Employee is not employed to fill a specific position or assignment, the Superintendent may assign or reassign the Employee to other or additional duties for which he or she is professionally certified or otherwise qualified to perform

2.    Petitioner served as the principal of Charles R. Drew Intermediate School from 2003 to the end of the 2010-2011 school year.

3.    On June 28, 2011, Petitioner was reassigned from the position of principal at Charles R. Drew Intermediate to the position of assistant principal at Crosby High School.

4.    The local record does not indicate with specificity what Petitioner's duties as assistant principal at Crosby High School are.

---

[2] *See* 19 TEX. ADMIN. CODE §157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

043-R10-1211                                        2

## Discussion

Petitioner asserts that Respondent improperly reassigned her. Respondent denies this claim. In particular, Petitioner alleges that Respondent's actions violated Texas Education Code section 11.202, which designates a principal as the instructional leader of a campus; section 11.201, which grants supervisory rights to superintendents, and section 21.206(b) which requires a school board that does not timely give notice of proposed nonrenewal to hire the teacher in the same professional capacity for the following school year. Petitioner also alleges that Respondent violated 19 TEX. ADMIN. CODE § 150.1021, which concerns the Commissioner's Recommended Appraisal process for administrators and policy DN(LOCAL). Respondent denies these claims.

### Rights

Petitioner claims her reassignment violated her rights under Texas Education Code section 11.202, 19 TEX. ADMIN. CODE § 150.1021, and policy DN(LOCAL). Texas Education Code section 11.202 is entitled "Principals." It provides that a principal is the instructional leader of a school. It lists seven duties of a principal. It requires school boards to adopt a policy for selecting principals. It gives a superintendent or designee final authority to assign teachers transferred due to enrollment shifts or program changes. Texas Education Code section 11.202 does not give Petitioner the right to a principal position. Likewise, 19 TEX. ADMIN. CODE § 150.1021, and policy DN(LOCAL) do not give Petitioner a right to a principal position. However, if Petitioner were entitled to a principal position, she would be entitled to the rights provided by this statute and rule, but not local policy. Under Texas Education Code section 7.057(a)(2)(A), the Commissioner lacks jurisdiction over violations of school district policies. *Reeves v. Aledo Independent School District*, Docket No. 106-R10-496 (Comm'r Educ. 1999)

### TEX. EDUC. CODE § 11.201

Texas Education Code 11.201(d)(2) provides that superintendents have responsibility for most assignments. Petitioner contends that Respondent's

043-R10-1211                                        3

superintendent reassigned her in an arbitrary and capricious manner and, hence, the reassignment is invalid. However, a superintendent does not violate Texas Education Code 11.201(d) when a superintendent poorly exercises an authority granted by this section. The Commissioner has held that:

> The provisions in question do not require this responsibility to be exercised fairly or wisely. The provisions also do not prohibit a district from taking action against superintendents who act rashly or unfairly.

*S.R.S. v Groesbeck Independent School District*, Docket No. 025-R5-105 (Comm'r Educ. 2006). Texas Education Code 11.201(d) could only be violated by a refusal to exercise the statutory grant of authority.

A board's decision may be overturned for being arbitrary and capricious. However, this is only the case when the board's decision itself is arbitrary and capricious. That a superintendent's action was arbitrary and capricious does not make a school board's decision arbitrary and capricious. If any action of a superintendent that was alleged to be was arbitrary and capricious could be appealed to the Commissioner, the Commissioner's docket would greatly expand. This would be contrary to the intention of the Legislature of limiting the Commissioner's jurisdiction, which can be seen by comparing Texas Education Code section 7.057 to the prior jurisdictional statute, Texas Education Code section 11.13. The Commissioner lacks jurisdiction under Texas Education Code section 7.057(a)(2)(A) over a claim Respondent's superintendent arbitrarily and capriciously reassigned her.

Same Professional Capacity

Petitioner contends that her reassignment is not proper because the positions of principal and assistant principal are not in the same professional capacity. The phrase "same professional capacity" occurs twice in the Texas Education Code. In Texas Education Code section 21.206 provides:

043-R10-1211                                              4

(a) Not later than the 10th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract. The notice must be delivered personally by hand delivery to the teacher on the campus at which the teacher is employed, except that if the teacher is not present on the campus on the date that hand delivery is attempted, the notice must be mailed by prepaid certified mail or delivered by express delivery service to the teacher's address of record with the district. Notice that is postmarked on or before the 10th day before the last day of instruction is considered timely given under this subsection.

(b) The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

(c) This section does not apply to a term contract with a superintendent.

If a school district fails to timely give a teacher notice of proposed nonrenewal when the teacher's contract is about to expire, the school district is required to employ the teacher in the "same professional capacity" for the following school year. A requirement to employ a teacher in the "same professional capacity" is triggered only when a contract is about to expire and timely notice of proposed nonrenewal is not given. The other time the phrase "same professional capacity" is used in the Texas Education Code is found at Texas Education Code section 21.212. This provision is very similar to Texas Education Code section 21.206. The major distinction is that it applies exclusively to superintendents.

In the present case, it would seem that no violation of Texas Education Code section 21.206 could occur because when Petitioner was reassigned her contract was not about to expire. Petitioner's contract will not expire until the end of the 2012-2013 school year. Petitioner's claim concerning Texas Education Code section 21.206 would not appear to be ripe. However, Petitioner points out that she was employed by Respondent as a principal just prior to her signing her 2011-2013 contract. Hence, during the 2011-2012 school year, Respondent was required to employ Petitioner in the same professional capacity as Petitioner held during the 2010-2011 school year. However, if

043-R10-1211                                      5

Petitioner were to prevail on this claim, she would only be entitled to be employed in the same professional capacity for the 2011-2012 school year and not for the 2012-2013 school year. While this may be viewed as a result that does not favor teachers, some implications of multiple year term contracts favor teachers.

As the Commissioner pointed out in *Smithwick v. Castleberry Independent School District*, Docket No. 085-R1-0711 n. 2 (Comm'r Educ. 2011), multiple year contracts can also benefit teachers. A multiple year contract may only be nonrenewed when it is about to expire. A school district that wishes to end a multiple year contract at the end of the fist contract year must proceed by the more difficult process of termination as opposed to nonrenewal. In such a case, the district is required to prove good cause and the case is heard by an independent hearing examiner. TEX. EDUC. CODE §§ 21.211, 21.251 *et seq.*

Must Principals Remain Principals?

Petitioner argues that the Commissioner should overturn precedent and conclude that if a principal's contract is not nonrenewed, a school district is limited to reassigning a principal to another principal position for the next school year. Petitioner argues that the only position that is in the same professional capacity of a principal is the position of principal. Precedent should not be lightly overturned. Teachers and school districts base important decisions in reliance on Commissioner's Decisions. But the fundamental principle of statutory construction is to give effect to the intention of the Legislature. If the Commissioner's long standing interpretation of the statute is in conflict with the intention of the Legislature, the Commissioner's interpretation should change.

TCNA

The Term Contract Nonrenewal Act[3] ("TCNA") was passed by the 67th Legislature in 1981[4]. Term Contract Nonrenewal Act, 67th Leg., R.S., ch. 765, 1981 Tex.

---

[3] Section 1 of SB 341 itself provided that "this act shall be known as "The Term Contract Nonrenewal Act."
[4] The TCNA became effective on August 31, 1981. However, because most contracts for the 1981-1982 school year had already been signed by that date, the TCNA really became operational for the 1982-1983

043-R10-1211                                    6

Gen Laws 2847. This law fundamentally changed teacher[5] contracts. Before the TCNA many districts hired teachers and administrators on one-year contracts. When the contract term expired, the district was not required to offer a contract for the new school year. *Seifert v. Lingleville Indep. Sch. Dist.*, 692 S.W.2d 461, 462 (Tex. 1985). Prior to the passage of the TCNA, school districts were not required to establish policy reasons for ending a contractual relationship, to give teachers the reasons why ending the contractual relationship was proposed, and to provide teachers with the opportunity for a hearing where the administration had the burden of proof to show that the teacher's contract should be nonrenewed. A key passage of the original TCNA, then numbered as Texas Education Code section 21.204, required a district that did not nonrenew a teacher's contract to hire the teacher for the next school year:

Notice

(a) In the event the board of trustees receives a recommendation for nonrenewal, the board after consideration of written evaluations required by Section 21.202 of this subchapter and the reasons for the recommendation, shall in its sole discretion, either reject the recommendation or shall give the teacher written notice of the proposed nonrenewal on or before April 1 proceeding the end of the employment fixed in the contract.

(b) *In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board shall thereby elect to employ such employee in the same professional capacity for the succeeding school year.*

(c) The notice of proposed nonrenewal required in this section shall contain a statement of all the reasons for such proposed action.

(Emphasis added). If a teacher's contract was not noticed for nonrenewal, the school board was not only required to hire the teacher for the next school year but also to employ the teacher in the same professional capacity for the next school year. The fundamental dispute in this case is over the meaning of the phrase "same professional capacity."

---

school year. That makes the 1984-1985 school year, the first time the issue of whether a teacher was rehired in the same professional capacity could actually be raised.

[5] From the beginning, the TCNA has used an expansive definition of "teacher" that includes many who are not normally referred to as teachers.

<u>Legislative History</u>

The legislative history of the TCNA[6] sheds some light on the meaning of the phrase "same professional capacity." Senate Bill 341 created the TCNA. As originally filed, SB 341 was far more ambitious than the TCNA which became law. Under SB 341 as filed, a term or continuing contract could only be ended for "just cause." The contract could only be ended after the teacher was given written notice of deficiencies, assistance, and reasonable time for improvement. Evidence against a teacher could only be used if it was promptly brought to the teacher's attention. The hearing was to be held before an attorney selected by both parties. The hearing examiner's decision was final in that there was no appeal to the board or the Commissioner, but the hearing examiner's decision was appealable to district court under the Administrative Procedures and Texas Register Act.

More to the point of the current controversy, SB 341 as filed defined "demotion" in an expansive manner:

> . . . an involuntary reduction of a teacher to a position of lesser rank, responsibility, or compensation, or the reassignment of a teacher outside the scope of the teacher's teaching certificate or major or minor field of study.

Any loss of rank, responsibility, or compensation constituted a demotion. All of the procedures for ending a contract described in the preceding paragraph also applied when a teacher was proposed for demotion. Demotion could only occur after just cause was proved at a hearing. Demotion would apply to a change in professional capacity as well as many more situations. SB 341 made it through the Senate in substantially the same form as it was filed.

In the House, SB 341 became the TCNA. The House Education Committee passed its substitute for SB 341 with the following language in section 21.204(b).

---

[6] The relevant legislative history may be found at the website for the Legislative Reference Library of Texas. http://www.lrl.state.tx.us/index.cfm.

043-R10-1211                                    8

In the event of failure to give such notice of proposed nonrenewal within the time herein specified, the board of trustees shall thereby elect to employ such employee in the same capacity for the succeeding school year.

The meaning of the phrase "same capacity" is not defined in the Committee Substitute. "Same capacity" could perhaps be interpreted broadly to mean in a particular case: the fifth grade English teacher at Davis Elementary School. It could perhaps be interpreted strictly to mean any classroom teaching position. When SB 341 was heard by the House on Second Reading an amendment was made to include the word "professional" between the words "same" and "capacity." No definition was added for the phrase "same professional capacity."

*Barich*

The Commissioner has on numerous occasions ruled on the issue of whether a particular assignment was in the same professional capacity. There being no statutory definition of "same professional capacity," the Commissioner has described the meaning of the term. The seminal case as to the meaning of the phrase "same professional capacity" is *Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ. 1985):

> Petitioner argues that he did not receive an offer of employment in the "same professional capacity," because he was never offered the same position he had held during the 1982-83 school year; i.e., ROTC teacher. It would not be reasonable, however, to conclude that the legislature intended that every teacher who does not receive notice of his or her proposed nonrenewal by April 1 is entitled to be employed in the exact same position the following school year. Such a holding would require a school district to actually begin nonrenewal proceedings by April 1 against every teacher it might conceivably wish to assign to a different position the following year, or face a nonrenewal claim with any reassignment effected after April 1.
>
> *It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "the exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual reassignment authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the*

H. Jenkins v. Crosby ISD
TEA #: 000013

*district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of a librarian; etc.*

*In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless, be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary.*

In the present case, Petitioner was employed during the 1982-83 school year as an ROTC teacher. The district's offers of employment ranged from the general (i.e., a statement that the district would comply with the Commissioner's Order and that Petitioner should "report to work" at once) to the relatively - - though not completely - - specific (i.e., references to teaching an elementary grade, eighth grade social science, high school psychology, or high school industrial arts). Nevertheless, it is clear - - and Petitioner concedes (Tr. 77-79) - - that, although the district at no time offered to reinstate Petitioner as ROTC teacher, it did offer to place him in a teaching position of some sort. Further, the uncontested testimony is that Petitioner would not suffer any loss of salary due to the placement. (See Finding of Fact No. 4). In his Post-Hearing Brief, Petitioner asserts that the other positions "are substantially different, involve different responsibilities, and require different skills." (p. 3). However, Petitioner introduced no evidence which would support this contention. More importantly, no evidence was introduced which would support a holding that it would be improper to reassign an ROTC teacher to one of the positions referred to by the district.

Under the circumstances, it is concluded that the school district unconditionally offered Petitioner a position in the "same professional capacity" for the 1983-84 school year and that Petitioner rejected that offer. Petitioner was, therefore, not employed by the district during the 1983-84 school year by choice, and he has no cognizable claim against the district for correctly noting, on March 28, 1983, that he was not then employed by the district, and for advising him that it did not intend to employ him during the 1984-85 school year.

(Emphasis added)

As shown above, the Commissioner's interpretation of the Legislature's intent is supported by the legislative history. As the bill went through the Legislature more flexibility was granted to school districts. The Commissioner held that the first question to be asked to determine whether a reassignment is in the same professional capacity is

whether the district could have contracted with the teacher for that position. This results in several conclusions. An administrator cannot be reassigned as a classroom teacher. A classroom teacher cannot be reassigned as a counselor. A counselor cannot be reassigned as a nurse. A nurse cannot be reassigned as a librarian. It should be noted that as the TCNA then read, classroom teacher and counselor were listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1):

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor or other full-time professional employee, except paraprofessional personnel, who is required to hold a valid certificate or permit.

Administrator, nurse, and librarian were not listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1). From the first substantive decision made in the first year the issue could be addressed by the Commissioner, the named positions found at Texas Education Code section 21.201(1) were not held to be professional capacities as the Commissioner used the term "administrator" that is not listed to include superintendents and assistant principals.

The Commissioner goes on to find that employing one in the same professional category is not sufficient to constitute same professional capacity in some instances. While a superintendent and an assistant elementary school principal might be in the same professional category of administrator they are not in the same professional capacity because of major distinctions in authority, duties, and salary. The Commissioner acknowledges that other factors could be considered. As to the issue directly presented in *Barich*, it was found that reassigning an ROTC teacher to another teaching position was valid because the positions were in the same professional capacity.

*Hester*

Decided just months after *Barich*, *Hester v. Canadian Independent School District*, Docket No. 106-R1-585 (Comm'r Educ. 1985) further sets out what is meant by "same professional capacity." Hester was employed under contract for the position

043-R10-1211                                        11

H. Jenkins v. Crosby ISD
TEA #: 000015

teacher/coach. The Commissioner found that Hester was employed in the professional capacity of teacher/coach and that since there was not substantial evidence to support the nonrenewal of his contract that Respondent was required to employ Hester in the same professional of teacher/coach for the next school year. It should be noted that coach was not listed as such in the definition of "teacher" found at Texas Education Code section 21.201(1). Nonetheless, the Commissioner found that by contract the district had made teacher/coach Hester's professional capacity. How a teacher's contract defines the teacher's professional capacity is significant but not necessarily dispositive. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991). The Commissioner has held in several cases that a school district is bound by professional capacities such as teacher/coach and teacher/dean that it creates in its contractual relationships. If a school district hires a teacher under a term contract in a particular capacity, even if such capacity is not specifically listed in the definition of "teacher" in the TCNA, the district must rehire the teacher in that capacity for the next school year if the district does not nonrenew the teacher's contract.

Progeny of *Barich*

Through the years since 1985, the Commissioner has consistently applied the principles enunciated in *Barich*. Contracted to be a teacher or a coach, the district properly reassigned the employee from the position of middle school teacher and high school coach to the position of physical education teacher with scheduling and budgeting responsibilities. *Lieberman v. Eagle Mountain-Saginaw Independent School District*, Docket No. 192-R3-785 (Comm'r Educ. 1985). Contracted to be Teacher/Coach Football (Head football coach), the district improperly reassigned the employee to a teaching position. *Grounds v. Tolar Independent School District*, Docket No. 340-R3-786 (Comm'r Educ. 1986). Contracted to be a teacher and head coach for duties as assigned, the district properly reassigned the employee from teacher and head coach for football, basketball, and track to the position of teacher and head coach for boys'

H. Jenkins v. Crosby ISD
TEA #: 000016

basketball. *Reyes v. Culberson County Independent School District*, Docket No. 229-R3-787 (Comm'r Educ. 1987). Contracted to be a teacher/coach, the district properly reassigned the employee from being a teacher and football coach to being a teacher and baseball coach. *Satcher v. Florence Independent School District*, Docket No. 363-R3-786 (Comm'r Educ. 1987). Contracted to be teachers/deans, the district improperly reassigned the employees from teacher/dean positions to teacher positions. *Abbott et al. v. Ector County Independent School District*, Docket No. 081-R3-1287, 105-R3-288 (Comm'r Educ. 1991). Contracted for 220 duty days, the district properly reduced duty days to 188 days for the following school year. *Marshall v. Seguin Independent School District*, Docket No. 177-R1-690 (Comm'r Educ. 1991). Contracted as an administrator, the district properly reassigned the employee from the district wide position of Science Support Specialist to the position of high school assistant principal. *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1991). The district properly reassigned employee from the position of high school assistant principal to the position of middle school assistant principal. *Andrews v. Houston Independent School District*, Docket No. 236-R1-897 (Comm'r Educ. 1997). Contracted as a professional employee[7], the district properly reassigned the employee from the position of athletic director to the position of teacher/assistant principal. *Keith v. Tarkington Independent School District*, Docket No. 459-R3-891(Comm'r Educ. 1992). Contracted as teachers, the district's reduction in salary by itself did not place the teachers in different professional capacities. *Goedeke v. Smyer Independent School District*, Docket No. 111-R3-1292 (Comm'r Educ. 1997). Contracted as teacher/assistant band director, the district improperly reassigned the employee to a teaching position. *Salinas v. Roma Independent School District*, Docket No. 058-R3-1196 (Comm'r Educ. 1997). Contracted as an administrator, the district properly reassigned the employee from

---

[7] *Keith* does not discuss whether "professional employee" is a legitimate professional capacity. It does not conclude that because the two positions at issue were professional that the reassignment is allowable. *Keith* simply mentions what the contract at issue states.

043-R10-1211                                          13

H. Jenkins v. Crosby ISD
TEA #: 000017

principal of an independent middle school campus to the position of principal or assistant principal for grades 7 to 9 at a unified junior high/high school campus. *Underwood v. Rusk Independent School District*, Docket No. 062-R3-198 (Comm'r Educ. 1998). Contracted as a teacher/coach, the district properly reassigned the employee from the position of varsity coach and teacher to the position of junior high school coach and teacher. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). Contracted as an administrator, the district properly reassigned the employee from the district wide position of attendance coordinator to the position of middle school assistant principal. *Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000). The district properly transferred the employee from one principal position to another. *Yturralde v. El Paso Independent School District*, Docket No. 001-R10-900 (Comm'r Educ. 2002). The district properly transferred the employee from the position of high school principal to the position of elementary principal. *Ramos v. El Paso Independent School District*, Docket No. 002-R10-900 (Comm'r Educ. 2002). Contracted as an administrator, the district properly reassigned the employee from the position of high school principal to the position of middle school assistant principal. *Pasqua v. Fort Stockton Independent School District*, Docket No. 011-R3-1102 (Comm'r Educ. 2004). Contracted as an administrator, the district properly reassigned the employee from a district-wide Director of Even Start to the position middle school assistant principal. *Perales v. Robstown Independent School District*, Docket Nos. 052-R10-104, 084-R3-604 (Comm'r Educ. 2006). Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. *Sanchez v. Donna Independent School District*, Docket No. 075-R10-605 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned the employees from a central office position to an assistant principal position. *Gonzalez v. Donna Independent School District*, Docket No. 074-R10-605 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned

043-R10-1211                                    14

the employee from a central office position to an assistant principal position. *Perez v. Donna Independent School District,* Docket No. 086-R1-705 (Comm'r Educ. 2007). Contracted as an administrator, the district properly reassigned the employee from the position of Executive Director of Special Education to the position of elementary school assistant principal. *Lehr v. Ector County Independent School District,* Docket No. 003-R3-0908 (Comm'r Educ. 2011). Contracted as professional employee, the district improperly reassigned the employee from the position of assistant principal to the position of classroom teacher. *Wheeler v. Austin Independent School District,* Docket No. 008-R3-1108 (Comm'r Educ. 2011). Contracted as a professional employee, the district properly reassigned the employee from the position of middle school principal to the position of Human Resources Coordinator. *Murillo v. Laredo Independent School District,* Docket No. 027-R3-0108 (Comm'r Educ. 2012). The district properly reassigned the employee from the position of elementary school principal to the position of Program Specialist II. *Montgomery v. Richardson Independent School District,* Docket No. 007-R10-1008 (Comm'r Educ. 2012). Contracted as a professional employee, the district improperly reassigned the employee from the position of Career Specialist to the position of teacher. *Tuck v. Alief Independent School District,* Docket No. 008-R10-1007 (Comm'r Educ. 2012). Contracted as an administrator, the district properly reassigned the employee from the position of principal to the position of assistant principal. *McCoy v. Kermit Independent School District,* Docket No. 004-R3-0908 (Comm'r Educ. 2012).

Administrators

As can be seen from the above, a great many of the same professional capacity cases involved administrators. In *Carpenter v. Wichita Falls Independent School District,* Docket No. 247-R3-491 (Comm'r Educ. 1991) the Commissioner held:

> The question presented by this appeal is the scope and reach of the Term Contract Nonrenewal Act, Texas Education Code section 21.204(b), in the context of the

043-R10-1211                    15

reassignment of those school district personnel coming under its protections. Petitioner would have the Commissioner of Education hold that the phrase "same professional capacity" as used in the TCNA is either defined by or in some way informed by the definition of "teacher" found in § 21.201(1) of that Act. I do not believe the statutory language can permit of such an interpretation. Rather, this phrase is left undefined by the statute, and therefore its meaning is a matter for interpretation by the Commissioner, in the first instance, and by the courts. The decisions of the Commissioner (and the courts) have consistently looked to the language of the employment contract itself and attempted to give the parties the benefit of their bargain. In this case, the contract between the parties provides that the position to which Petitioner was entitled was that of a generic "administrator." Petitioner has not proven that hers was a contract of adhesion, which would clearly change the result in this case. It is true that the Commissioner has held that § 21.204(b) limits the right of the district to transfer a term contract teacher. *Barich v. San Felipe-Del Rio C.I.S.D.*, Docket No. 117-R1a-484 (Comm'r Educ. May 1985). It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under § 21.204(b) [8]. However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

Administrators can often be reassigned to different administrator positions, but that does not mean that they may be assigned to any administrator positions. Districts can by contract establish broad professional capacities. However, professional capacities that are too broad will not be allowed. *Tuck v. Alief Independent School District*, Docket No. 008-R10-1007 (Comm'r Educ. 2012).

Deference

If the Commissioner were to decide to issue a new interpretation of "same professional capacity" it would seem to be because his long standing interpretation was incorrect. To determine whether the Commissioner's interpretation is correct, some

---

[8] The old Texas Education Code section 21.204 is the predecessor of the current Texas Education Code section 21.206.

H. Jenkins v. Crosby ISD
TEA #: 000020

cannons of statutory interpretation will be considered. The standards for deferring to an agency's interpretation have been set by the Texas Supreme Court:

> If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, as there is here, we normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule. *See Pub. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Stanford v. Butler*, 142 Tex. 692, 181 S.W.2d 269, 273 (Tex. 1944).

*TGS-NOPEC Geophysical v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). There is ambiguity about what the phrase "same professional capacity" means. The phrase is not defined in statute and is susceptible to multiple interpretations. The Commissioner's interpretation should be deferred to.

Further, as the Commissioner's interpretation is a long standing interpretation, the doctrine of legislative acquiescence applies:

> If an ambiguous statute that has been interpreted by a court of last resort or given a longstanding construction by a proper administrative officer is re-enacted without substantial change, the Legislature is presumed to have been familiar with that interpretation and to have adopted it. *See Grapevine Excavation, Inc. v. Md. Lloyds Ins. Co.*, 35 S.W.3d 1, 5, 43 Tex. Sup. Ct. J. 1086 (Tex. 2000) (Once the Texas Supreme Court and courts of appeals "construe a statute and the Legislature re-enacts or codifies that statute without substantial change, we presume that the Legislature has adopted the judicial interpretation."); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 248, 34 Tex. Sup. Ct. J. 652 (Tex. 1991) ("'[A] statute of doubtful meaning that has been construed by the proper administrative officers, when re-enacted without any substantial change in verbiage, will ordinarily receive the same construction.' This rule is only applicable where there has been an affirmative long-standing administrative policy.") (quoting *Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180, 10 Tex. Sup. Ct. J. 254 (Tex. 1967)); *Tex. Employers' Ins. Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390, 395 (Tex. 1946) ("There is another well-settled rule to guide us in the construction of a statute which is uncertain and ambiguous . . . .: 'Where a statute which has been construed, either by a court of last resort or by executive officers, is re-enacted without any substantial change of verbiage, it will continue to receive the same construction.'")

043-R10-1211                                    17

*Tex. Dept. of Protective & Regulatory Services v. Mage Child Care*, 145 S.W.3d 170, 175 (Tex. 2004). The Commissioner's interpretation is long standing. It goes back over one-quarter century. It has been repeatedly affirmed.

The statute at issue has been amended multiple times since the Commissioner has issued his interpretation. The TCNA has been amended by the Legislature in 1990, 1995, 2003, and 2011. Term Contract Nonrenewal Act, 71st Leg. 6th C.S., ch. 1 § 3.14, 1990 Tex. Gen. Laws 1 (allowing the hearing to be heard by a board designated impartial hearing officer); Term Contract Nonrenewal Act, 74th Leg. R.S., ch. 260 ch. 21 subch. E and F, 1995 Tex. Gen. Law 2207 (making many changes including modifying the definition of "teacher" and allowing boards to use the Independent Hearing Examiner Process); Term Contract Nonrenewal Act, 78th Leg R.S., ch. 484 § 1, 2003 Tex. Gen. Laws 1749 (concerning distribution of district employment policies); 82nd Leg. 1st C.S., ch. 8 §§ 8-11, 2011 Tex. Gen Laws 5463 (allowing districts to hire their own hearing examiners and making several changes concerning notice). The Legislature has acquiesced in the Commissioner's interpretation of the phrase "same professional capacity."

## Must Principal be a Professional Capacity?

Petitioner contends that her theory that a principal may only be reassigned to another principal position is compatible with *Barich* although she does recognize that it would require overruling other Commissioner's Decisions. Petitioner's theory rests on the premise that because the definition of "teacher" found in the TCNA references the position "principal" that "principal" is a professional capacity.

Petitioner's theory is not compatible with *Barich*. Under *Barich*, the first question is could the teacher contract for the position at issue. A principal can contract for an assistant principal position as a principal certificate is needed for either a principal or assistant principal position. 19 Tex. Admin. Code § 241(d). The next question is that even if the position could be contracted for are differences in authority, duties, salary and

043-R10-1211          18

other factors so great that the reassignment is actually in another professional capacity. This second consideration is set out right after the issue of reassigning a superintendent to the position of assistant elementary principal is raised. Texas Education Code section 21.201(1) in the original TCNA read as follows:

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor or other full-time professional employee, except paraprofessional personnel, who is required to hold a valid certificate or permit.

If Petitioner's theory was compatible with *Barich*, the Commissioner would have said the determination of whether a superintendent may be reassigned to the position of elementary school assistant principal is a simple issue, not an issue that is "not . . . so clear." Under Petitioner's theory, since "superintendent" is found in the definition of 21.201(1), "superintendent" is a professional capacity. The result would be that a superintendent cannot be reassigned to any position that is not a superintendent position. There would be no reason to apply the standards set out in *Barich* to determine whether a superintendent could be reassigned to an assistant principal position.

Petitioner's theory does have the virtue of simplicity. If a position is named in the definition of "teacher" any reassignment would have to be in that same position. However, it would be just as simple to apply the rule that if one holds an administrator's position one can be reassigned to any administrator's position. The Commissioner's solution is more complex than Petitioner's theory, but is more faithful to the statute at issue. If the Legislature intended "same professional capacity" to mean any position listed in the definition of "teacher," the Legislature would have said so. Instead, the Legislature used an undefined phrase that it intended the Commissioner to interpret using his experience in how schools operate. The Commissioner has consistently done so since the first opportunity to interpret the phrase at issue.

043-R10-1211                                             19

Like a Superintendent?

There are no Commissioner's Decisions that directly address whether a superintendent may be reassigned to another position. There is no Commissioner's Decision that finds that a superintendent was improperly reassigned. While *Barich* holds that a superintendent cannot be reassigned to the position of assistant elementary school principal, Barich was not a superintendent and was not reassigned to an assistant principal position. There is a pre-TCNA case, *Board of Trustees of Crystal City Independent School District v. Briggs*, 486 S.W.2d 829 (Tex. App. Beaumont 1972, writ ref'd n.r.e), which determined that a reassignment from superintendent to teacher was not allowed:

> Briggs was hired as superintendent of the public schools; under the statute, it is clear that there is a vast difference in the position of superintendent of a district answerable only to the Board of Trustees and that of a teacher in the schools. §§ 16.07, 16.08 Education Code.

The court in *Briggs* found the fact that a superintendent was only answerable to the board of trustees to be highly significant.

In the recent case of *Lehr v. Ector County Independent School District*, Docket No. 003-R3-0908 (Comm'r Educ. 2011), the issue was raised whether it was appropriate to reassign the Executive Director of Special Education to the position of assistant principal. The Commissioner held:

> The change in positions is unlike the move from superintendent to assistant principal described in *Barich*. A superintendent according to statute is "the educational leader and chief executive officer of the school district." TEX. EDUC. CODE § 11.201(a). The position of superintendent is *sui generis*. There is no administrator position that compares to it. The position of Executive Director of Special Education is not mentioned in the Texas Education Code. In fact, the certification mentioned in the job description for the position is "midmanagement/supervisor" is no longer awarded.[9] Currently, the only

---

[9] Hence, it is a good thing that the job description allows for alternative qualifications. While those who received midmanagement and supervisor certifications retain them, it is not perhaps wise to limit employment to those who have achieved a certification that is no longer issued.

H. Jenkins v. Crosby ISD
TEA #: 000024

certifications for administrator are superintendent and principal.[10] There is no certification that an Executive Director of Special Education is required to hold under the Texas Education Code or the rules adopted under the code.

Here like in *Briggs*, the Commissioner noted that the position of superintendent is unique. A superintendent is the chief executive officer of a school district. It almost goes without saying that a superintendent is answerable only to the board of trustees. Only the board of trustees has the authority to direct a superintendent. It is not the fact that the Texas Education Code specifies many of the superintendent's duties and creates unique procedures to nonrenew a superintendent's contract that makes the superintendent's role sui generis. TEX. EDUC. CODE §§ 11.201, 21.212. It is instead the fact the superintendent is only answerable to the school board as the chief executive officer of the school district that makes the office of superintendent *sui generis*.

Petitioner is correct that principals have many duties spelled out in the Texas Education Code. This does not make the position of principal *sui generis*. That the Texas Education Code defines many duties of a principal makes the principal position a well defined species. It does not make the principal position a genus all to itself. A principal is answerable to the superintendent and often to other high administrators such as deputy and assistant superintendents. A principal is answerable to the school board as the school board can nonrenewal or terminate a principal's contract.

Further, while there is a principal certification, it is required for both being a principal and an assistant principal. 19 TEX. ADMIN. CODE § 241(d). That the same training is required to be either a principal or an assistant principal is a further indication that the position of principal is not *sui generis*. It is true that one who holds a superintendent's certificate also is qualified to hold the positions of principal and assistant principal. 19 TEX. ADMIN. CODE § 242.1(d). It is not surprising that the training required to be a superintendent would also prepare one to a principal or an assistant principal. But a superintendent is required to have more than a principal's certificate.

---

[10] 19 TEX. ADMIN. CODE ch. 241 and 242. All other administrator certifications were not issued after 2000.

H. Jenkins v. Crosby ISD
TEA #: 000025

One who holds only a principal's certificate is not qualified to be a superintendent. A superintendent's certificate requires significantly more training than a principal's certificate. When a principal is reassigned, a school district is not limited to assigning the principal to another principal position. *Underwood v. Rusk Independent School District,* Docket No. 062-R3-198 (Comm'r Educ. 1998), *Pasqua v. Fort Stockton Independent School District,* Docket No. 011-R3-1102 (Comm'r Educ. 2004), *Murillo v. Laredo Independent School District,* Docket No. 027-R3-0108 (Comm'r Educ. 2012), *Montgomery v. Richardson Independent School District,* Docket No. 007-R10-1008 (Comm'r Educ. 2012), and *McCoy v. Kermit Independent School District,* Docket No. 004-R3-0908 (Comm'r Educ. 2012).

Present Reassignment

In the present case, Petitioner was reassigned from the position of principal of an intermediate school to the position of assistant principal of a high school. There is little in the record that indicates what duties Petitioner had at those two positions. The record does not demonstrate that applying the Commissioner's precedent as to what is the "same professional capacity" results in a conclusion that the two positions were in different professional capacities. However, Petitioner has not raised this issue. Petitioner's claim is not that in her particular circumstance, comparing authority, duties, compensation and other relevant factors, the two positions were in separate professional capacities. Petitioner's claim is that a principal may only be reassigned to another principal position. This is not the law. As the two positions are not shown to be in different professional capacities, Respondent did not violate Texas Education Code section 21.206.

Possible Consequences

Petitioner contends that if the Commissioner does not to change his interpretation of "same professional capacity" this could lead to a situation where a school district could reassign a principal to a position that does not require a chapter 21 contract and then make the principal an at-will employee for the following school year. It should be noted

043-R10-1211                                             22

that this is not the situation the Commissioner is presented with in this case. After her reassignment Petitioner retains a chapter 21 contract.

But assuming without finding that this issue was properly raised, there are at least two major problems with this claim. Petitioner chose not to contest her reassignment under Commissioner's precedent but instead to solely argue that she could only be reassigned to a principal's position. Whether or not Respondent reassignment meets the Commissioner's standards has not been contested or ruled upon. Not contesting a reassignment based on the standards previously established by the Commissioner could result in not receiving a Chapter 21 contract, but the fault would not be with the Commissioner's interpretation of Chapter 21.

Further, the case Petitioner relies on *Harris v. Royse City Independent School District*, Docket No. 057-R1-0506 (Comm. Educ. 2009) had a very different fact situation. Harris began his employment with Royse City Independent School District by signing a contract for a non-certified administrator position that provided for renewal or nonrenewal under chapter 21 of the Texas Education Code. This is not the type of contract that Petitioner holds. Petitioner in her original assignment and her reassignment was required to hold a principal's certificate.

Conclusion

The Petition for Review should be dismissed in part and denied in part. In many cases, principals may be assigned to other administrative positions. In the present case, it is determined that Petitioner was properly reassigned in the same professional capacity.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1.  The Commissioner, under Texas Education Code section 7.057(a)(2)(A), has jurisdiction over the claims that Respondent violated Texas Education Code section

043-R10-1211                                23

21.206(b) and based on such a violation also violated Texas Education Code section 11.20 and 19 TEX. ADMIN. CODE § 150.1021.

2. The Commissioner, under Texas Education Code section 7.057(a)(2)(A), lacks jurisdiction over violations of school district policies.

3. The Commissioner, under Texas Education Code section 7.057(a)(2)(A), lacks jurisdiction over the claim Respondent violated its policy FN(LOCAL).

4. A superintendent does not violate Texas Education Code 11.201(d) when a superintendent poorly exercises an authority granted by this section.

5. The Commissioner lacks jurisdiction over the claim that Respondent's superintendent arbitrarily and capriciously reassigned her in violation of Texas Education Code section 11.201(d) TEX. EDUC. CODE § 7.057(a)(2)(A).

6. If a school district fails to timely give a teacher notice of proposed nonrenewal when the teacher's contract is about to expire, the school district is required to employ the teacher in the "same professional capacity" for the following school year. A requirement to employ a teacher in the "same professional capacity" for the following school year is triggered only when a contract is about to expire and timely notice of proposed nonrenewal is not given. TEX. EDUC. CODE § 21.206(b).

7. Petitioner's claim that Respondent failed to employ her in the same professional capacity is ripe only as to the 2011-2012 school year.

8. One can be entitled to the protections of Texas Education Code Chapter 21, subchapter E based solely on a contract or district policy. One does not need to hold a position described in the first sentence of Texas Education Code section 21.201(1) to be entitled to a Chapter 21 term contract.

9. The positions described in the first sentence of Texas Education Code section 21.201(1) may or may not be professional capacities for purposes of Texas Education Code section 21.206(b).

10. The fact that the position of "principal" is listed in the first sentence of Texas Education Code section 21.201(1) does not mean that if one is employed by a school district as a principal under a term contract that one is employed under the professional capacity of principal. TEX. EDUC. CODE § 21.206(b).

11. A contract can establish a teacher's professional capacity under Texas Education Code section 21.206(b) if the professional capacity is not impermissibly broad. Whether a professional capacity is impermissibly broad is determined by comparing differences in authority, duties, and salary and other relevant factors. In many cases, a professional capacity of "administrator" will not be impermissibly broad for a reassignment.

12. Petitioner's professional capacity under Texas Education Code section 21.206(b) is administrator.

13. As Petitioner did not contest that her contractual professional capacity of administrator is impermissibly broad under the standards set out in Conclusion of Law No. 11, Petitioner has not raised this issue.

14. As the fact that a term contract employee is employed in a principal position does not make the employee's professional capacity "principal," Respondent did not improperly reassign Petitioner to a non-principal position in violation of Texas Education Code section 21.206(b).

15. Respondent did not reassign Petitioner in violation of Texas Education Code section 21.206(b)

16. The Petition for Review should be denied in part and dismissed in part.

043-R10-1211                                  25

## Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Edcuation, it is hereby

ORDERED that the Petitioner's appeal be, and is hereby, denied in part and dismissed in part.

SIGNED AND ISSUED this ___19th___ day of ___December___, 2013.

_____
MICHAEL WILLIAMS
COMMISSIONER OF EDUCATION

# APPENDIX 2

Final Judgment
*Jenkins v. Crosby Indep. Sch. Dist.,* No. D-1-GN-14-000619 (200th Dist. Ct., Travis County, Tex. Feb. 26, 2015)

| HERMENIA JENKINS, | § | IN THE DISTRICT COURT |
|---|---|---|
| *Plaintiff,* | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| CROSBY INDEPENDENT | § | |
| SCHOOL DISTRICT and | § | |
| MICHAEL L. WILLIAMS | § | |
| THE STATE COMMISSIONER | § | |
| OF EDUCATION, | § | |
| *Defendants.* | § | 200th JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

FEB 26 2015

At 10:20 A.M.

Velva L. Price, District Clerk

## FINAL JUDGMENT

On December 4, 2014, came to be heard and considered the cause of Plaintiff's suit for judicial review of an administrative decision of the Texas Commissioner of Education issued in Texas Education Agency Docket No. 043-R10-1211. Having considered the administrative record, pleadings, briefs, and arguments of counsel, the Court affirms the Commissioner's decision.

IT IS THEREFORE ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that all taxable costs of court are assessed against the party who incurred them; that all remedies not specifically granted herein are denied; and that this judgment disposes of all claims and all parties and is final and appealable.

SIGNED on this 26th day of February, 2015.

THE HONORABLE AMY CLARK MEACHUM

Appx. 2

Approved as to form:

/Kevin F. Lungwitz
State Bar No. 12698790
The Lungwitz Law Firm, P.C.
3005 S. Lamar Blvd., Suite D-109-362
Austin, Texas 78704-4785
Phone: (512) 461-0188
Fax: (866) 739-7138
kevin@lungwitzlaw.com
FOR PLAINTIFF HERMENIA JENKINS

David B. Hodgins
State Bar No. 09775530
Rebecca B. Weimer
State Bar No. 24062597
Thompson & Horton LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Phone: (713) 554-6745
Fax: (713) 583-8245
dhodgins@thompsonhorton.com
rweimer@thompsonhorton.com
FOR DEFENDANT CROSBY ISD

Andrew Lutostanski
Assistant Attorney General
State Bar No. 24072217
Office of the Attorney General of Texas
Administrative Law Division
P.O. Box 12548
Austin, Texas 78711-2548
Phone: (512) 475-4200
Fax: (512) 320-0167
andrew.lutostanski@texasattorneygeneral.gov
FOR DEFENDANT COMMISSIONER

# APPENDIX 3

Texas Education Code

Chapter 21

Subchapter E §§21.201-21.213

SUBCHAPTER E. TERM CONTRACTS

**Sec. 21.201**.  DEFINITIONS.  In this subchapter:

(1)  "Teacher" means a superintendent, principal, supervisor, classroom teacher, school counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B or a nurse.  The term does not include a person who is not entitled to a probationary, continuing, or term contract under Section 21.002, an existing contract, or district policy.

(2)  "School district" means any public school district in this state.

(3)  "Term contract" means any contract of employment for a fixed term between a school district and a teacher.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 443 (S.B. 715), Sec. 10, eff. June 14, 2013.

**Sec. 21.202**.  PROBATIONARY CONTRACT REQUIRED.  (a)  Except as provided by Subsection (b), before a teacher may be employed under a term contract, the teacher must be employed under a probationary contract for the period provided by Subchapter C.

(b)  A school district may employ a person as a principal or classroom teacher under a term contract if the person has experience as a public school principal or classroom teacher, respectively, regardless of whether the person is being employed by the school district for the first time or whether a probationary contract would otherwise be required under Section 21.102.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.  Amended by Acts 2003, 78th Leg., ch. 1232, Sec. 2, eff. Sept. 1, 2003.

**Sec. 21.203**.  EMPLOYMENT POLICIES.  (a)  Except as provided by Section 21.352(c), the employment policies adopted by a board of trustees must require a written evaluation of each teacher at annual or more frequent intervals.  The board must consider the most recent evaluations before making a decision not to renew a teacher's contract if the evaluations are relevant to the reason for the board's action.

(b)  The employment policies must include reasons for not renewing a teacher's contract at the end of a school year.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.  Amended by Acts 2003, 78th Leg., ch. 244, Sec. 1, eff. June 18, 2003.

**Sec. 21.204**.  TERM CONTRACT.  (a)  A term contract must be in writing and must include the terms of employment prescribed by this subchapter.

(b)  The board of trustees may include in the contract other provisions that are consistent with this subchapter.

(c)  Each contract under this subchapter is subject to approval by the board of trustees.

(d)  The board of trustees shall provide each teacher with a copy of the teacher's contract with the school district and, on the teacher's request, a copy of the board's employment policies.  If the district has an Internet website, the district shall place the board's employment policies on that website.  At each school in the district, the board shall make a copy of the board's employment policies available for inspection at a reasonable time on request.

(e)  A teacher does not have a property interest in a contract beyond its term.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.  Amended by Acts 2003, 78th Leg., ch. 484, Sec. 1, eff. Sept. 1, 2003.

**Appx. 3**

**Sec. 21.205**. TERM OF CONTRACT. Once a teacher has completed the probationary contract period, the term of a contract under this subchapter may not exceed five school years.
Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.


**Sec. 21.206**. NOTICE OF CONTRACT RENEWAL OR NONRENEWAL. (a) Not later than the 10th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract. The notice must be delivered personally by hand delivery to the teacher on the campus at which the teacher is employed, except that if the teacher is not present on the campus on the date that hand delivery is attempted, the notice must be mailed by prepaid certified mail or delivered by express delivery service to the teacher's address of record with the district. Notice that is postmarked on or before the 10th day before the last day of instruction is considered timely given under this subsection.

(b) The board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

(c) This section does not apply to a term contract with a superintendent.
Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.
Amended by:
Acts 2011, 82nd Leg., 1st C.S., Ch. 8 (S.B. 8), Sec. 9, eff. September 28, 2011.


**Sec. 21.207**. HEARING UNDER TERM CONTRACT. (a) If the teacher desires a hearing after receiving notice of the proposed nonrenewal, the teacher shall notify the board of trustees in writing not later than the 15th day after the date the teacher receives hand delivery of the notice of the proposed action, or if the notice is mailed by prepaid certified mail or delivered by express delivery service, not later than the 15th day after the date the notice is delivered to the teacher's address of record with the district. The board shall provide for a hearing to be held not later than the 15th day after the date the board receives the request for a hearing unless the parties agree in writing to a different date. The hearing must be closed unless the teacher requests an open hearing.

(b) The hearing must be conducted in accordance with rules adopted by the board. The board may use the process established under Subchapter F.

(b-1) Notwithstanding any other provision of this code, this subsection applies only to a school district with an enrollment of at least 5,000 students. The board of trustees may designate an attorney licensed to practice law in this state to hold the hearing on behalf of the board, to create a hearing record for the board's consideration and action, and to recommend an action to the board. The attorney serving as the board's designee may not be employed by a school district and neither the designee nor a law firm with which the designee is associated may be serving as an agent or representative of a school district, of a teacher in a dispute between a district and a teacher, or of an organization of school employees, school administrators, or school boards of trustees. Not later than the 15th day after the completion of the hearing under this subsection, the board's designee shall provide to the board a record of the hearing and the designee's recommendation of whether the contract should be renewed or not renewed. The board shall consider the record of the hearing and the designee's recommendation at the first board meeting for which notice can be posted in compliance with Chapter 551, Government Code, following the receipt of the record and recommendation from the board's designee, unless the parties agree in writing to a different date. At the meeting, the board shall consider the hearing record and the designee's recommendation and allow each party to present an oral argument to the board. The board by written policy may limit the amount of time for oral argument. The policy must provide equal time for each party. The board may obtain advice concerning legal matters from an attorney who has not been involved in the proceedings. The board may accept, reject, or modify the designee's recommendation. The board shall notify the teacher in writing of the board's decision not later than the 15th day after the date of

the meeting.

 (c) At the hearing before the board or the board's designee, the teacher may:

  (1) be represented by a representative of the teacher's choice;

  (2) hear the evidence supporting the reason for nonrenewal;

  (3) cross-examine adverse witnesses; and

  (4) present evidence.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.
Amended by:
 Acts 2011, 82nd Leg., 1st C.S., Ch. 8 (S.B. 8), Sec. 10, eff. September 28, 2011.

 **Sec. 21.208**. DECISION OF BOARD. (a) If the teacher does not request a hearing, the board of trustees shall:

  (1) take the appropriate action to renew or not renew the teacher's contract;  and

  (2) notify the teacher in writing of that action not later than the 30th day after the date the notice of proposed nonrenewal was sent to the teacher.

 (b) If the teacher requests a hearing, following the hearing the board of trustees shall:

  (1) take the appropriate action to renew or not renew the teacher's contract;  and

  (2) notify the teacher in writing of that action not later than the 15th day after the date on which the hearing is concluded.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

 **Sec. 21.209**. APPEAL. A teacher who is aggrieved by a decision of a board of trustees on the nonrenewal of the teacher's term contract may appeal to the commissioner for a review of the decision of the board of trustees in accordance with the provisions of Subchapter G.  The commissioner may not substitute the commissioner's judgment for that of the board of trustees unless the board's decision was arbitrary, capricious, unlawful, or not supported by substantial evidence.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

 **Sec. 21.210**. RESIGNATION UNDER TERM CONTRACT. (a) A teacher employed under a term contract with a school district may relinquish the teaching position and leave the employment of the district at the end of a school year without penalty by filing a written resignation with the board of trustees or the board's designee not later than the 45th day before the first day of instruction of the following school year.  A written resignation mailed by prepaid certified or registered mail to the president of the board of trustees or the board's designee at the post office address of the district is considered filed at the time of mailing.

 (b) A teacher employed under a term contract may resign, with the consent of the board of trustees or the board's designee, at any other time.

 (c) On written complaint by the employing district, the State Board for Educator Certification may impose sanctions against a teacher who is employed under a term contract that obligates the district to employ the person for the following school year and who:

  (1) resigns;

  (2) fails without good cause to comply with Subsection (a) or (b);  and

  (3) fails to perform the contract.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

 **Sec. 21.211**. TERMINATION OR SUSPENSION. (a) The board of trustees may terminate a term contract and discharge a teacher at any time for:

  (1) good cause as determined by the board;  or

(2)  a financial exigency that requires a reduction in personnel.

(b)  For a good cause, as determined by the board, the board of trustees may suspend a teacher without pay for a period not to extend beyond the end of the school year:

(1)  pending discharge of the teacher;  or

(2)  in lieu of terminating the teacher.

(c)  A teacher who is not discharged after being suspended without pay pending discharge is entitled to back pay for the period of suspension.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.


Sec. 21.212.  APPLICABILITY OF SUBCHAPTER TO SUPERINTENDENTS.  (a)  The board of trustees of a school district may choose to not renew the employment of a superintendent employed under a term contract, effective at the end of the contract period.  If a majority of the board of trustees determines that the term contract of the superintendent should be considered for nonrenewal, the board shall give the superintendent written notice, containing reasonable notice of the reason for the proposed nonrenewal, not later than the 30th day before the last day of the contract term.

(b)  If the board of trustees fails to give notice of the proposed nonrenewal within the time specified by Subsection (a), the board of trustees shall employ the superintendent in the same professional capacity for the following school year.

(c)  If the superintendent, not later than the 15th day after receiving notice of the board's proposed action, does not request a hearing with the board of trustees under Section 21.207, the board of trustees shall:

(1)  take the appropriate action;  and

(2)  notify the superintendent in writing of the action not later than the 30th day after the date the board sends the notice of the proposed nonrenewal.

(d)  The board of trustees shall adopt policies that establish reasons for nonrenewal.  This section does not prohibit a board of trustees from discharging a superintendent for good cause during the term of a contract.

(e)  A superintendent employed under a term contract may leave the employment of the district at the end of a school year without penalty by filing a written resignation with the board of trustees.  The resignation must be addressed to the board and filed not later than the 45th day before the first day of instruction of the following school year.  A superintendent may resign, with the consent of the board of trustees, at any other time.

(f)  On the basis of a financial exigency declared under Section 44.011 that requires a reduction in personnel, the board of trustees of a school district may choose to amend the terms of the contract of a superintendent employed under a term contract.  A superintendent whose contract is amended under this subsection may resign without penalty by providing reasonable notice to the board and may continue employment for that notice period under the prior contract.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

Amended by:

Acts 2011, 82nd Leg., 1st C.S., Ch. 8 (S.B. 8), Sec. 11, eff. September 28, 2011.


Sec. 21.213.  NONAPPLICABILITY OF SUBCHAPTER.  Except as provided by Section 21.202, this subchapter does not apply to a teacher employed under a probationary contract in accordance with Subchapter C  or a continuing contract in accordance with Subchapter D.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

# APPENDIX 4

Texas Education Code

§11.201 and §11.202

## Texas Education Code §11.201 and 11.202

Sec. 11.201. SUPERINTENDENTS. (a) The superintendent is the educational leader and the chief executive officer of the school district.

(b) The board of trustees of an independent school district may employ by contract a superintendent for a term not to exceed five years.

(c) For purposes of this subsection, "severance payment" means any amount paid by the board of trustees of an independent school district to or in behalf of a superintendent on early termination of the superintendent's contract that exceeds the amount earned by the superintendent under the contract as of the date of termination, including any amount that exceeds the amount of earned standard salary and benefits that is paid as a condition of early termination of the contract. The board of trustees that makes a severance payment to a superintendent shall report the terms of the severance payment to the commissioner. The commissioner shall reduce the district's Foundation School Program funds by any amount that the amount of the severance payment to the superintendent exceeds an amount equal to one year's salary and benefits under the superintendent's terminated contract. The commissioner may adopt rules as necessary to administer this subsection.

(d) The duties of the superintendent include:

(1) assuming administrative responsibility and leadership for the planning, organization, operation, supervision, and evaluation of the education programs, services, and facilities of the district and for the annual performance appraisal of the district's staff;

(2) except as provided by Section 11.202, assuming administrative authority and responsibility for the assignment, supervision, and evaluation of all personnel of the district other than the superintendent;

(3) overseeing compliance with the standards for school facilities established by the commissioner under Section 46.008;

(4) initiating the termination or suspension of an employee or the nonrenewal of an employee's term contract;

(5) managing the day-to-day operations of the district as its administrative manager, including implementing and monitoring plans, procedures, programs, and systems to achieve clearly defined and desired results in major areas of district operations;

(6) preparing and submitting to the board of trustees a proposed budget as provided by Section 44.002 and rules adopted under that section, and administering the budget;

(7) preparing recommendations for policies to be adopted by the board of trustees and overseeing the implementation of adopted policies;

(8) developing or causing to be developed appropriate administrative regulations to implement policies established by the board of trustees;

(9) providing leadership for the attainment and, if necessary, improvement of student performance in the district based on the indicators adopted under Sections 39.053 and 39.301 and other indicators adopted by the commissioner or the district's board of trustees;

(10) organizing the district's central administration;

(11) consulting with the district-level committee as required under Section 11.252(f);

(12) ensuring:

(A) adoption of a student code of conduct as required under Section 37.001 and enforcement of that code of conduct; and

(B) adoption and enforcement of other student disciplinary rules and procedures as necessary;

(13) submitting reports as required by state or federal law, rule, or regulation;

(14) providing joint leadership with the board of trustees to ensure that the responsibilities of the board and superintendent team are carried out; and

(15) performing any other duties assigned by action of the board of trustees.

(e) The superintendent of a school district may not receive any financial benefit for personal services performed by the superintendent for any business entity that conducts or solicits business with the district. Any

**Appx. 4**

financial benefit received by the superintendent for performing personal services for any other entity, including a school district, open-enrollment charter school, regional education service center, or public or private institution of higher education, must be approved by the board of trustees on a case-by-case basis in an open meeting.  For purposes of this subsection, the receipt of reimbursement for a reasonable expense is not considered a financial benefit.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.  Amended by Acts 2001, 77th Leg., ch. 955, Sec. 1, eff. Sept. 1, 2001.

Amended by:

  Acts 2007, 80th Leg., R.S., Ch. 90 (H.B. 189), Sec. 1, eff. May 15, 2007.

  Acts 2007, 80th Leg., R.S., Ch. 1244 (H.B. 2563), Sec. 6, eff. September 1, 2007.

  Acts 2009, 81st Leg., R.S., Ch. 895 (H.B. 3), Sec. 8, eff. June 19, 2009.


  **Sec. 11.202**.  PRINCIPALS.  (a)  The principal of a school is the instructional leader of the school and shall be provided with adequate training and personnel assistance to assume that role.

  (b)  Each principal shall:

    (1)  except as provided by Subsection (d), approve all teacher and staff appointments for that principal's campus from a pool of applicants selected by the district or of applicants who meet the hiring requirements established by the district, based on criteria developed by the principal after informal consultation with the faculty;

    (2)  set specific education objectives for the principal's campus, through the planning process under Section 11.253;

    (3)  develop budgets for the principal's campus;

    (4)   assume the administrative responsibility and instructional leadership, under the supervision of the superintendent, for discipline at the campus;

    (5)  assign, evaluate, and promote personnel assigned to the campus;

    (6)  recommend to the superintendent the termination or suspension of an employee assigned to the campus or the nonrenewal of the term contract of an employee assigned to the campus;  and

    (7)  perform other duties assigned by the superintendent pursuant to the policy of the board of trustees.

  (c)  The board of trustees of a school district shall adopt a policy for the selection of a campus principal that includes qualifications required for that position.

  (d)  The superintendent or the person designated by the superintendent has final placement authority for a teacher transferred because of enrollment shifts or program changes in the district.

Added by Acts 1995, 74th Leg., ch. 260, Sec. 1, eff. May 30, 1995.

# APPENDIX 5


Jenkins' Employment Contract 2011-2013

# CROSBY INDEPENDENT SCHOOL DISTRICT
## TWO-YEAR TERM CONTRACT

State of Texas)
County of Harris)

Date given employee ___3/2/11___

This contract is entered into by and between the Board of Trustees of the Crosby Independent School District (Board) and
___R. Mary Jenkins___ (Employee) under the following terms and conditions:

1. The Board hereby agrees to employ the Employee and the Employee agrees to serve the Board by engaging in duties as assigned by the Superintendent of the Crosby Independent School District for the school years ___2011___ - ___2013___ with beginning and ending dates as set by the Board.

2. The Board agrees to pay the Employee for the services rendered an annual salary according to the compensation plan adopted by the Board. The Employee understands and agrees that only the Board is authorized to establish an annual salary and any representations made by any other person regarding salary is of no effect and shall not be relied upon.

3. It is understood and agreed by the parties to this Contract that the Superintendent of the Crosby Independent School District shall have the right to assign such duties to the Employee as the Superintendent shall deem proper; and since the Employee is not employed to fill a specific position or assignment, the Superintendent may assign or reassign the Employee to other or additional duties for which he or she is professionally certified or otherwise qualified to perform. Administrative changes will be made with the approval of the Board.

4. Supplemental duties may be assigned to the Employee for which a stipend may or may not be paid. No property right to continued employment exists in such supplemental duties regardless of whether stipends are paid, and such duties may be terminated for any reason or for no reason, at the sole discretion of the Superintendent with the Board approval.

5. It is understood and agreed that if the Employee is employed in more than one position such as teacher/coach or teacher/band director, the Employee's performance will be evaluated in each assignment, and that unsatisfactory performance in either assignment constitutes grounds for nonrenewal or termination of this Contract. The employee cannot resign one position without resigning both unless with the approval of the Superintendent.

6. It is understood and agreed by the parties to this Contract that the Employee shall carry out his or her duties to the best of his or her skill and ability and shall discharge the duties required by the federal law, by school laws of this state, and by this District. The Contract is specifically subject to the policies, procedures, administrative directives, rules and regulations of the District which are in effect at this time, any amendments which may hereafter be enacted or any which may be adopted during the term of this Contract.

7. This Contract is conditioned on the Employee providing the necessary certification and experience records, medical records, oath of office and other records required by the District. At the beginning of this Contract, and at any time during this Contract, the Employee specifically agrees to submit to a review of his or her national criminal history record information (NCHRI) if required by the District, THA, or SBEC. Any misrepresentation contained in any of these records shall be grounds for the termination of employment.

8. Any action or event that the Board determines creates a financial exigency and a need to reduce expenditures for personnel, such as, but not limited to, declines in enrollment or tax revenues, reductions in funding, or change of program shall constitute cause for termination at any time during the term of this Contract.

9. Employment in a federally or categorically funded position is expressly conditioned upon the availability of full funding for the position, and any reduction of such funding constitutes good cause for termination of this Contract.

10. The Board of Trustees shall notify Employee in writing, not later than the 45th day before the last day of instruction in the school year covered by this Contract, whether it intends to renew or not renew the Contract. Renewal or nonrenewal will be in accordance with the Board policy and state law.

11. The Board has not adopted any policy, rule, regulation, law or practice providing for tenure. No right of tenure is created by this Contract. This Contract shall not grant or create any contractual or other expectancy of continued employment or claim of entitlement to employment beyond the term of the Contract.

12. During the term of this Contract, the Employee may be terminated for good cause as determined by the Board, financial exigency that requires a reduction in personnel, or for any reason stated in Board policy for this Contract. The Board may suspend Employee without pay for good cause as determined by the Board for a period not to extend beyond the end of the school year covered in this Contract pending discharge of Employee or in lieu of termination.

13. It is understood and agreed by the Board and the Employee, that upon acceptance of this Contract by the Employee, all previous contracts of employment with the Board are superseded and terminated and are of no force and effect.

14. The salary for the last month of the term of this Contract shall be payable only upon receipt from the Employee of all District property, textbooks, documents and reports required by the District.

15. The Employee may resign at the end of the school year covered by this Contract by filing a written resignation with the Board so long as the written resignation is filed by the 45th day before the first day of the following school year. A written resignation mailed by prepaid certified or registered mail to the President of the Board at the post office address of the District is considered filed at the time of mailing. If the Employee attempts to resign at any other time, the Employee will be released from this Contract only with the written consent of the Board. If the Board does not consent to release the Employee and the Employee nevertheless abandons the Contract, the District may file a complaint seeking sanctions against the Employee, with the State Board for Educator Certification.

16. Invalidity of any portion of this Contract under the laws of the State of Texas or of the United States shall not effect the validity of the remainder of the Contract.

17. This offer of employment expires if this Contract is not signed and returned to the Superintendent by the Employee on or before ___March 31___ ___2011___.

I have signed this Contract and agree to comply with its terms and conditions.

_____ 3/2/2011
Date

_____ 5/1/2010
Date

_____
Employee's Signature

___Beryl Blankenship___
Board President's Signature

EXHIBIT 1

## Appx. 5

(13)

# APPENDIX 6

*Barich v. San Felipe-Del Rio Cons. Indep. Sch. Dist.,*
Docket No. 117-R1a-484
(Tex. Comm'r Educ. 1985)

DOCKET NO. 117-R1a-484

SAMUEL BARICH        ß                    BEFORE THE STATE
                     ß
                     ß
V.    ß
                     ß                    COMMISSIONER OF EDUCATION
                     ß
SAN FELIPE-DEL RIO CON-       ß
SOLIDATED INDEPENDENT ß
SCHOOL DISTRICT ß                         THE STATE OF TEXAS

DECISION OF THE COMMISSIONER

Statement of the Case

Samuel Barich, Petitioner, brings this appeal concerning his employment
relationship with San Felipe-Del Rio Consolidated Independent School District,
Respondent. A hearing on this matter was conducted on September 24, 1984 before
Mark W. Robinett, the Hearing Officer appointed by the Commissioner of
Education. Petitioner is represented by Dean A. Pinkert and Leonard J.
Schwartz, Attorneys at Law, Austin, Texas. Respondent is represented by William
C. Bednar, Attorney at Law, Austin, Texas, and Haygood Gulley, Attorney at Law,
Del Rio, Texas.

On February 25, 1985, the Hearing Officer issued a Proposal for Decision
recommending to the State Commissioner of Education that Petitioner's appeal be
denied. Our records reflect that a copy of the Proposal for Decision was
received by both parties. Petitioner filed Exceptions to the Proposal for
Decision on March 25, 1985. No reply to the exceptions was filed.

Findings of Fact

After due consideration of the evidence and matters officially noticed, in my
capacity as State Commissioner of Education, I make the following Findings of
Fact:

1. In a previous case between the same parties, Barich v. San Felipe-Del Rio
Consolidated ISD, No. 086-R1a-483 (Comm. Educ., May 1983), the Commissioner
held, in Conclusion of Law No. 2, that the school district had, pursuant to Tex.
Educ. Code Ann. ß21.204, "elected to employ Petitioner in his current
professional capacity for the 1983-84 school year."

2. The Commissioner's Decision was affirmed by the State Board of Education on
September 10, 1983. A Motion for Rehearing was not filed by either party.

3. It is uncontested that, during the 1982-83 school year, Petitioner served
the district as an ROTC teacher. (Pet. Ex. 15).

4. After the State Board of Education had entered its decision, the school
district's attorney, Mr. Gulley, called Petitioner's attorney, Mr. Schwartz.
Mr. Gulley represented that Petitioner could not be reinstated as ROTC teacher,
because the school district did not believe that he could be certified by the
Air Force in that position, inasmuch as Petitioner was past retirement age and
had already received the maximum one year extension of his certification. (Tr.
41-42). Mr. Gulley further stated that reinstatement in another position would
be at the salary of an ROTC teacher. (Tr. 52). Petitioner's attorney replied
that he wanted his client to return to work in the exact same position he had
held during the 1982-83 school year. (Tr. 41-42).

5. On October 3, 1983, Petitioner's attorney sent a letter to the school
district's attorney, which reads, in pertinent part, as follows:

**Appx. 6**

1

Thank you for offering to settle the above-referenced case.  However, while we appreciate your offer of immediate reinstatement, we must reject it as it is, in our opinion, incomplete.

Mr. Barich has authorized us to extend to you the following counteroffer.  Mr. Barich will report to school and undertake his duties if the district will comply with the following:

1. Mr. Barich must be assigned in the "same professional capacity," Tex. Education Code subsection 21.204(b), as he was previously employed; i.e., as the head of the R.O.T.C.;

2. Mr. Barich must be made whole for all lost salary and benefits for the period that he has been unemployed;

3. Mr. Barich must be paid his attorneys' fees and court costs.  The fees are currently, at our normal billing rate, $9,337.50, while costs are $2,644.84.  We think that $10,000 is a reasonable compromise of attorneys' fees and costs.  Of course, this offer on attorneys' fees is only if this settlement offer is accepted within the next thirty (30) days; and

4. All references in Mr. Barich's personnel files to the wrongful breach of his employment contract must be expunged.

(Pet. Ex. 1).

6. On October 21, 1983, Michael C. Boyle, attorney at law, San Antonio, Texas, sent a letter to Petitioner's attorney, which reads, in pertinent part, as follows:

This firm will be working as co-counsel with Mr. Haygood Gulley in the above matter.  In that regard, as attorneys for the School District, I would like to reiterate what Mr. Gulley expressed to you in your telephone conversation of September 26, 1983.  The School District is quite willing to abide by the Order of the Commissioner that Mr. Barich be retained in his same professional capacity for the present school year.  As you know, that Order is now final; no appeal has been taken to the District Court by either party.  Mr. Gulley's conversation with you of September 26, 1983, is not an offer of settlement as you seem to indicate in your correspondence to him of October 3, 1983.  Mr. Gulley merely expressed the sentiments of the District to abide by the Commissioner's Order and permit Mr. Barich to remain as a teacher for the current year.

Mr. Gulley likewise expressed to you the very real problem that the United States Air Force has refused to sanction Mr. Barich as a R.O.T.C. teacher.  We would welcome any suggestions that you have whereby the School District can permit Mr. Barich to function in the same professional capacity when the Air Force has taken the position that he is not qualified to act as an R.O.T.C. teacher.  Mr. Gulley suggested that you contact the Air Force directly and attempt to obtain a reversal of that decision.

2

Nevertheless, as indicated herein, the School District is willing to abide by the Commissioner's decision to retain Mr. Barich for the present year. Thus, the School District expects Mr. Barich to report for duty at once.

(Pet. Ex. 2).

7. On October 25, 1983, Petitioner's attorney sent a letter to Mr. Boyle, which reads, in pertinent part, as follows:

As soon as you can assure my client, Samuel E. Barich, that he will be returned "to the same professional capacity," as ordered by the Commissioner of Education, he will report for duty. Until then, you are not completely abiding by the decision of the State Board of Education. Furthermore, Mr. Barich is entitled to be made whole for the breach of his contract.

In your letter of October 21, 1983, you state that you would welcome any suggestions that we have regarding the problem with the Air Force. We do, indeed, have a suggestion: Write the Air Force and request a waiver for Mr. Barich. The Air Force routinely grants the requests of school districts for a waiver of the age requirement. In fact, I have been advised that the Air Force told your client this several months ago.

As soon as you receive the official waiver and the school notifies my client that he is to report to work "in the same professional capacity" as he held prior to the breach of his contract, we are sure that he would be willing to sign a new one-year contract and report to work. Of course, he will still proceed to obtain redress for the prior illegal termination of his employment.

In order to give the school district an opportunity to obtain a waiver from the Air Force, we will not take any further action on this matter for forty-five days. If you have not made Mr. Barich whole (including reinstatement to his prior position with the R.O.T.C.) at the expiration of that period, we will file suit for breach of contract. We will seek damages, attorneys fees, and injunctive relief.

As we are sure you are aware, the question of liability is now finally decided and may not be relitigated.

We believe that our position in this matter is clear and has been consistent throughout the litigation. Our client is entitled to full relief; not just a cryptic promise that the school will "permit Mr. Barich to remain as a teacher for the current year." After being unemployed for several months, having litigated in the courts and the administrative agency which oversees the operations of local school systems and having won throughout the course of this matter in every forum, the school's refusal to completely abide by the State Board of Education's Order affirming the Commissioner, we believe that our stand is entirely justifiable.

In particular, the Commissioner ordered that "Petitioner's appeal be, in all things, GRANTED." Emphasis added. If you will refer to the Prayer for Relief in Petitioner's Petition for Review, you will find that the appeal included the request that the teacher be made whole for all damages arising out of the wrongful discontinuation of Petitioner's employment, including attorneys' fees. We expect nothing less.

3

(Pet. Ex. 3).

8. On November 7, 1983, Mr. Boyle sent a letter to Petitioner's attorney, which reads, in pertinent part, as follows:

Thank you for your letter of October 25, 1983. I have discussed the same with Mr. Gulley and with Superintendent Evins.

I have been advised to report the following:

1. By telephone conversation on September 21, 1983, you were advised by Haygood Gulley, local counsel for the School that the School would abide by the decision of the Commission (sic) and further, that Lt. Col. Barich should report to work forthwith.

Six weeks have now elapsed and Lt. Col. Barich has not reported for work as instructed. In fact, Lt. Col. Barich has not communicated with the School in any manner whatsoever.

2. Lt. Col. Barich's qualifications to hold any particular position with the School is within the realm of his personal responsibilities. Lt. Col. Barich should have requested the required Department of Air Force authorizations long ago. However, you now desire to place this responsibility upon the school. The School denies any such responsibility. Nonetheless, in a continuing effort to resolve this matter, the School is requesting such authorization from the Department of Air Force. You will be furnished a copy of this request.

3. The fact remains that Lt. Col. Barich has totally failed to report for work. Again, demand is hereby made that Lt. Col. Barich report immediately to the School for a work assignment.

4. Should Lt. Col. Barich fail to report for work immediately, you are advised that the School will take under consideration the termination of Lt. Col. Barich's relationship with the School. You will be advised, in accordance with the law, of any such consideration.

Lastly, as I interpret the order of the Commissioner, after a review of all evidence presented, the only issue litigated concerned the reinstatement of Lt. Col. Barich. Thus, his reinstatement is the only issue before us, which issue, if you wish to call it an issue, was resolved long ago when Mr. Gulley advised you that the School would abide by the ruling of the Commission (sic). Therefore, I do not understand your offer not to take further action "within forty-five days" when compliance with the Commission's (sic) order rests squarely with Lt. Col. Barich, not the School.

(Pet. Ex. 4).

9. On November 14, 1983, Petitioner's attorney sent a letter to Mr. Boyle, the substance of which reads, in its entirety, as follows:

As soon as we are furnished the authorization from the Department of the Air Force and the school agrees to fully comply with the Commissioner's Order, Mr. Barich will report to work. However, he will not report until the school remedies its breach of contract.

4

As to your review of the Commissioner's Order we feel that you are incorrect in your interpretation. Our Petition for Review set out the following prayer for relief:

that the Respondent is required to set aside and disregard its announced decision to consider the non-renewal of Petitioner's contract for the School Year 1983-84;

that Respondent be required to expunge any reference in any personnel file of Petitioner's to said discontinuance of employment;

that Respondent be required to offer Petitioner a contract to continue Petitioner's professional employment as a teacher for the Respondent School District unless and until the at (sic) employment is discontinued under circumstances which fully comply with applicable law;

that Respondent be required to make Petitioner whole for all damages arising out of the wrongful discontinuation of Petitioner's employment, including attorneys fees pursuant to Title 42, United States Code Section 1988; and

that Petitioner have such other and further relief to which he may show himself entitled.

The Commissioner's Order reads as follows:

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of education, it is hereby

ORDERED that Petitioner's appeal be, in all things, GRANTED.

Emphasis added.

If you really wish to "resolve this matter" as you state in your letter of November 7, 1983 you need only to agree to make Col. Barich whole for all lost salary and benefits for the period that he has been unemployed, reinstate him in the "same professional capacity" which he previously held, expunge his personnel file and agree to pay him his reasonable attorneys fees.

On the other hand, if you wish to prolong this matter and needlessly waste taxpayers money, proceed to terminate him on the grounds that he refuses to return to work in the absence of a complete settlement. We will litigate this issue for the next few years - - then, if we are successful, the backpay award will be in excess of $75,000.00. I, for one, cannot undertand (sic) the benefits to be derived by the school system by taking this course of action. We will be paid our fees, nevertheless, as I am sure you will. Hence, the only losers will be the taxpayers and the students within the system. Mr. Barich may lose the termination question but he will still be entitled to the backpay due him until he is terminated. Given the amount of money he may ultimately have coming by the school's recalcitrance in fully complying with the Commissioner's Order, Col. Barich is willing to stand firm.

5

Even if it successfully terminates Col. Barich, the school district will expend more in attorneys fees in litigating the question of the termination's validity than it will spend in simply abiding by the Commissioner's Order.

If you wish to discuss settlement, please call me. Thank you.

(Pet. Ex. 5).

10. On December 21, 1983, Mr. Boyle sent a letter to Petitioner's attorney, the substance of which reads, in its entirety, as follows:

Thank you for your letter of November 14, 1983.

In addition, since that time we have had an opportunity to talk over the telephone.

If I understand your position correctly you are arguing that the District elected to retain Mr. Barich "in the same professional capacity" for the current year and that as such the District must pay his salary despite the fact that he is unable to perform his duties as an instructor in the ROTC program. I have discussed your view with Mr. Gulley, and he with the District. They are not in agreement with your argument; however, as I have mentioned in past correspondence to you and as Mr. Gulley has stressed to you over the telephone, the District is willing to employ Mr. Barich in some other position if he would kindly report to them. It is my understanding that Mr. Barich is qualified to teach the following subjects:

1. Any elementary grade;

2. Eighth grade social science;

3. High school psychology; and

4. High school industrial arts

Of course the district cannot be sure as to where he will be placed but if he would report for duty that uncertainty could be cleared up at once and Mr. Barich could begin earning a salary for the current year and mitigating his own alleged damages.

It is the position of the District that they are not attempting to evade whatsoever the Order of the Commissioner. However, because of the impossibility of performance and the inability to perform by one of the contracting parties, namely Mr. Barich, he cannot be employed in the same professional capacity. This inability of Mr. Barich to perform is a result of the position taken by the Air Force, a party over whom neither Mr. Barich nor the District has control. The District firmly believes it is not in breach of any contractual duty it owes to Mr. Barich and is more than willing to go the extra step by offering him a position in one of the other areas of education if Mr. Barich would merely report to the District that he wishes to return and continue. Surely, Mr. Barich should be interested in at least mitigating the damages you have alleged he shall sustain in your letter of November 14, 1983. Please have Mr. Barich contact the District at once.

6

(Pet. Ex. 6).

11. On March 28, 1984, Joe L. Sanders, President of the school district's Board of Trustees, sent a letter to Petitioner, the substance of which reads, in its entirety, as follows:

You are not now an employee or teacher in the San Felipe-Del Rio Independent School District.

Nonetheless, and out of an abundance of precaution, you are hereby advised that you shall not be an employee or teacher in the San Felipe-Del Rio Independent School District during the 1984-85 school year.

(Pet. Ex. 8).

Discussion

In his Petition for Review, Petitioner argues that the letter he received from the school district dated March 28, 1984 did not comply with the requirements of the Term Contract Nonrenewal Act (TCNA), Tex. Educ. Code Ann. ßß21.201 - .211 (Vernon Supp. 1984), and, therefore, his contract was renewed by operation of law for the 1984-85 school year.

The first issue that must be considered is whether Petitioner had a valid claim to employment with the district on March 28, 1984. If so, the notice he received could be construed as a nonrenewal notice. If not, it constitutes nothing more than a statement of the school district's understanding of the status of the dispute.

If Petitioner had an employment relationship with the school district on March 28, 1984, it was directly attributable to the Decision of the Commissioner in Docket No. 086-R1a-483, in which the Commissioner held that the school district had, as a matter of law, "elected to employ Petitioner in his current professional capacity for the 1983-84 school year." What that holding entitled Petitioner to was an offer from the school district of continued employment in the "same professional capacity." That holding did not create a contract between the parties or bind Petitioner to accept any offer from the district that did not comply with the Order. It only required the school district to make a valid offer, which Petitioner was free to accept or reject. His acceptance would create a contract binding on both parties. His rejection of a bona fide offer of continued employment in the "same professional capacity" would end any cognizible claim he might have to continued employment with the school district. See e.g., Gosney v. Sonora Independent School Dist., 603 F.2d 522, 524-25 (5th Cir. 1979); Jordan v. Board of Regents, Univ. System, 583 F. Supp. 23, 25-27 (S.D. Ga. 1983).

Petitioner argues that he did not receive an offer of employment in the "same professional capacity," because he was never offered the same position he had held during the 1982-83 school year; i.e., ROTC teacher. It would not be reasonable, however, to conclude that the legislature intended that every teacher who does not receive notice of his or her proposed nonrenewal by April 1 is entitled to be employed in the exact same position the following school year. Such a holding would require a school district to actually begin nonrenewal proceedings by April 1 against every teacher it might conceivably wish to assign to a different position the following year, or face a nonrenewal claim with any reassignment effected after April 1.

It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "the exact same position"), intended to allow school districts to be flexible in their personnel assignments while

7

discouraging the abuse of the district's inherent or contractual reassignment authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of a librarian; etc.

In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless, be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary.

In the present case, Petitioner was employed during the 1982-83 school year as an ROTC teacher. The district's offers of employment ranged from the general (i.e., a statement that the district would comply with the Commissioner's Order and that Petitioner should "report to work" at once) to the relatively − − though not completely − − specific (i.e., references to teaching an elementary grade, eighth grade social science, high school psychology, or high school industrial arts). Nevertheless, it is clear − − and Petitioner concedes (Tr. 77-79) − − that, although the district at no time offered to reinstate Petitioner as ROTC teacher, it did offer to place him in a teaching position of some sort. Further, the uncontested testimony is that Petitioner would not suffer any loss of salary due to the placement. (See Finding of Fact No. 4). In his Post-Hearing Brief, Petitioner asserts that the other positions "are substantially different, involve different responsibilities, and require different skills." (p. 3). However, Petitioner introduced no evidence which would support this contention. More importantly, no evidence was introduced which would support a holding that it would be improper to reassign an ROTC teacher to one of the positions referred to by the district.

Under the circumstances, it is concluded that the school district unconditionally offered Petitioner a position in the "same professional capacity" for the 1983-84 school year and that Petitioner rejected that offer. Petitioner was, therefore, not employed by the district during the 1983-84 school year by choice, and he has no cognizable claim against the district for correctly noting, on March 28, 1983, that he was not then employed by the district, and for advising him that it did not intend to employ him during the 1984-85 school year.

Respondent's Request for Additional Findings of Fact

Subsequent to the issuance of the Proposal for Decision, the school district filed a request that the Finding of Fact No. 8 be renumbered as 10, Findings of Fact Nos. 9 − 11 be renumbered as 12 − 14, respectively, and that the following additional Findings of Fact be made:

8. On March 19, 1983, Jesse L. Mathews, Deputy Director for Operations and Training, Air Force Reserve Officer's Training Corps, had written a letter to Mr. R. S. Evins, Superintendent of the district, in substance as follows:

8

"This is a follow-up on a phone conversation I had with Mr. Jac Mota, principal at Del Rio High School, regarding your Air Force JROTC Aerospace Education Instructor."

"Air Force ROTC Regulation 30-1 contains job specifications which state that the aerospace education instructor must be less than 65 years of age, however, a one-year waiver may be granted for exceptionally well-qualified applicants. In the case of Lt. Col. Samuel Barich, a waiver was granted to approve his continuation through the 1982-83 school year. The Commandant's current policy is that no waivers be granted beyond one year. Therefore, in view of this policy, Lt. Col. Barich is no longer eligible for instructor duty beyond the expiration of his current contract. We will not entertain additional waiver requests." [P's Exh. 24].

9. Superintendent Evins wrote to Jesse L. Mathews on November 2, 1983, requesting another age waiver for petitioner, in substance as follows:

"Lt. Col. Samuel Barich was employed by the San Felipe-Del Rio Independent School District for the school year 1982-1983 in the ROTC Program. So that Lt. Col. Barich may fulfill the same duties for school year 1983-84, the San Felipe-Del Rio Independent School District does hereby request the following:

"1. That the Department of the Air Force authorize Samuel Barich to fulfill such duties for the San Felipe-Del Rio Independent School District for school year 1983-1984 as he fulfilled in school year 1982-1983;

"2. That the Department of the Air Force waive any problems which it may have concerning the fact that Lt. Col. Barich is not more than 65 years of age.

"Your immediate reply to this request would be appreciated."

11. On November 9, 1983, Jesse L. Mathews wrote back to Superintendent Evins in substance as follows:

"Reference your 2 November 1983 request to waive the age 65 requirement on Lt. Col. Samuel Barich, USAF, ret., former Aerospace Education Instructor at Del Rio High School.

"Age waiver requests are entertained on an individual basis and are applicable to current instructor personnel who will attain age 65 during the academic year. Further, these instructors must consistently conform to Air Force standards to include dress and personal appearance. They must be recommended for waiver by the principal of the school and the appropriate Area Commandant.

"Additionally, the A.F.J.R.O.T.C. Unit at Del Rio High School is currently fully manned with three instructors and an approximate cadet enrollment of 214. Since Lt. Col. Barich was terminated as an A.F.J.R.O.T.C. Instructor effective 27 May 1983, and is no longer affiliated with A.F.J.R.O.T.C., we have no reason to consider an age waiver." [P's Exh. 14]

The requested Findings of Fact will not be made. They are relevant to one of the school district's defenses - - that Petitioner could not have been offered reemployment as R.O.T.C. instructor because he could not have obtained an age

9

waiver from the Air Force to serve in that capacity during the 1983-84 school year - - but that issue need not be reached, inasmuch as the issue concerning Petitioner's rejection of a valid offer of employment is dispositive of this appeal. Further, if the age waiver issue were reached, it would be necessary to conduct further proceedings for the purpose of receiving evidence on that issue, because Petitioner has asserted at all times that Air Force regulations would have allowed a waiver to have been granted by the Air Force if the school district had requested one. (See Tr. 73-74; Prehearing Conference Tr.: 16-17; and Petitioner's Response to Respondent's Request for Additional Findings of Fact).

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1. The school district was required, pursuant to ß21.204 of the Education Code and the Commissioner's Decision in Docket No. 086-R1a-483, to offer Petitioner a position for the 1983-84 school year in the "same professional capacity" in which he was employed during the 1982-83 school year.

2. The school district, by offering Petitioner a position for the 1983-84 school year as a teacher, with no reduction in salary or status, complied with ß21.204 of the Education Code and the Commissioner's Order in Docket No. 086-R1a-483.

3. Any claim by Petitioner to continued employment with the School District ended when he rejected the district's offer to employ him in the same professional capacity.

4. Because Petitioner was not employed by the school district on March 28, 1984, he has no cognizable claim against the district for its alleged nonrenewal of his employment on that date.

5. Petitioner's appeal should be DENIED.

O R D E R

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ENTERED this 6th day of May , 1985.

_____
W. N. KIRBY
COMMISSIONER OF EDUCATION

16

-4-
#117-R1a-484

# APPENDIX 7

*Perales v. Robstown Indep. Sch. Dist.,*
Docket Nos. 053-R10-104; 084-R3-604
(Tex. Comm'r Educ. 2006)

| LAURA PERALES | § | BEFORE THE |
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| ROBSTOWN INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

**DECISION OF THE DESIGNEE OF THE COMMISSIONER**

Statement of the Case

Petitioner, Laura Perales, appeals the action of Respondent, Robstown Independent School District, concerning her grievances. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education. Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas. Respondent is represented by John D. Bell, Attorney at Law, Corpus Christi, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied. Exceptions and replies were timely filed and considered.

Findings of Fact

The following Findings of Fact are based upon Petitioner's pleadings:

1. Respondent employed Petitioner under term contracts for the 2001-2005 school years. Respondent has not nonrenewed Petitioner's contract.

2 Respondent employed Petitioner as the Director of the Even Start Program for the 2001-2002 and 2002-2003 school years and the beginning of the 2003-2004 school year.

3. Even Start is a federal program designed "to help break the cycle of poverty and illiteracy by improving the educational opportunities of the Nation's low-income families by integrating early childhood, adult literacy, or adult education, and parenting education into a unified family literacy program."

**Appx. 7**

4.	The Even Start program is district-wide and at the time of the January 2004 board hearing served 64 part-time students.  As the Even Start Director, Petitioner directed three teachers, a secretary, two daycare workers, and a custodian.  Petitioner's position of Director of Even Start is similar to the position of a principal of a very small school.

5.	On November 17, 2003, Petitioner was notified that she would be reassigned to the position of assistant principal at Ortiz Intermediate School.  For the full 2003-2004 school year, Petitioner continued to receive her salary of $58,840.  As assistant principal, Petitioner lacked the final decision making authority of a principal.

6.	On April 8, 2004, Petitioner was notified that for the 2004-2005 school year, Petitioner received a salary of $51,090.

7.	For the 2002-2003 and 2003-2004 school years, Petitioner was employed under a teacher term contract for the position of administrator.  This contract provides:

> Employee agrees that the Superintendent of Schools shall have the right to assign such duties to the Employee as the Superintendent shall deem proper, and the Superintendent may, from time to time, assign or reassign the Employee to other or additional duties or assignments to the fullest extent permitted by state law and board policy.

8.	On the September 9, 2003 organizational chart, the Even Start Director is shown to be at Level II along with other directors and principals.  Assistant principals are found on Level III along with coordinators and facilitators.

9.	The salary schedule for the 2003-2004 school year lists the position of Even Start Director at Job Level 5 which has a minimum salary of $38,120, a midpoint of $46,380, and a maximum of $54,640.  Junior high school principals are listed at Job Grade 4 with a minimum salary of $35,660, a midpoint of $43,380, and a maximum of $51,090.

Discussion

Petitioner contends that Respondent failed to employ her in the same professional capacity and demoted her. Petitioner contends that removing her from her position as Director of the Even Start Program violated a federal grant.

Jurisdiction

Texas Education Code section 7.057 grants the Commissioner jurisdiction over written employment contracts and "the school laws of this state." "The school laws of this state" are defined as portions of the Texas Education Code and rules adopted under the Texas Education Code. This does not give the Commissioner jurisdiction to determine whether a school district has complied with federal grant requirements.

Same Professional Capacity

Petitioner notes that Texas Education Code section 21.206 requires Respondent to employ her in the same professional capacity during the 2003-2005 school years as she held during the 2002-2003 school years because Respondent has not nonrenewed her contract. Respondent does not disagree with this claim. The parties dispute the meaning of the phrase "same professional capacity." The term "same professional capacity" is not defined in statute. Petitioner suggests that the definition of "teacher", found at Texas Education Code section 21.201, is helpful:

> "Teacher" means a superintendent, principal, classroom teacher, counselor, or other full-time professional employee who is required to hold a certificate under Subchapter B or a nurse.

Petitioner contends that each individual classification is a different professional capacity for purposes of Texas Education Code section 21.206. There are a number of problems with this interpretation. The first problem is that the definition in question is that of "teacher", not of "professional capacity." The second difficulty is that the statutory category of "other full-time professional employee who is required to hold a certificate under Subchapter B" hardly seems a distinct professional capacity. A third difficulty is

that in a number of cases the Commissioner has interpreted "same professional capacity" in a different way. In *Barich v. San Felipe - Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ 1985), the Commissioner did not rule that the definitional categories created distinct professional capacities:

> In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g. administrator), but nevertheless, be invalid (e.g., from superintendent to assistant middle school principal).

In *Abbott v. Ector County Independent School District*, Docket No. 081-R3-127, 105-R3-1287 (Comm'r Educ. 1991), the Commissioner found that one hired as teacher/dean could not be reassigned to a pure teacher position. The Commissioner noted that as deans the employees in question had administrative duties. While there is no defined category of teacher/dean, the Commissioner found that such an employee had to be retained in the capacity of teacher/dean. In *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-3-491 (Comm'r Educ. 1993), Carpenter was employed under an administrator's contract. She was first assigned as the science supervisor. She was then reassigned as an assistant high school principal. The Commissioner determined that the two positions were in the same professional capacity:

> It has been the consistent view of the Commissioner that the TCNA[1] balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to the law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against the public policy expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me to be consistent with the TCNA.

In *Keith v. Tarkington Independent School District*, Docket No. 459-R3-891 (Comm'r Educ. 1992), the Commissioner found that a transfer from athletic director to

---

[1] "TCNA" stands for the "Term Contract Nonrenewal Act." Prior to the rewrite of the Education Code in 1995, the statutory provisions concerning term contracts were officially known as the Term Contract Nonrenewal Act.

teacher/assistant principal was a reassignment in the same professional capacity even though athletic director and assistant principal are not listed in Texas Education Code section 21.201(1). In *Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000), the Commissioner found that the professional capacity of certified administrator legitimately encompassed both attendance coordinator and middle school assistant principal. These cases are incompatible with Petitioner's claim that the same professional capacity is determined in reference to the definition of "teacher" found at Texas Education Code section 21.201. Since the language in question was first enacted in 1981 and the Education Code was reenacted without change in 1995, the Commissioner's long standing construction is affirmed by the doctrine of legislative acceptance. *Texas Dept. of Protective and Regulatory Services v. Mega Child Care*, 145 S. W. 3d 170, 176-177 (Tex. 2004).

Comparison of Positions

The Commissioner has held that in determining whether two positions are within the same professional capacity, the first question is whether both positions are within the professional capacity stated in the contract and the second question is whether the professional capacity is a legitimate professional capacity. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). The professional capacity stated in Petitioner's contract is "administrator." In the present case, the two positions are administrator positions. Whether "administrator" is a legitimate professional capacity that encompasses the positions in question is determined principally by comparing professional skills and responsibilities.

In the present case, Petitioner first held the position of Director of the Even Start Program. Even Start was a small program, but a district-wide program. The program was designed to combat illiteracy by keeping the whole family involved. Petitioner was responsible for 64 part-time students. Petitioner directed three teachers, a secretary, two daycare workers, and a custodian. In effect, Petitioner's position was the equivalent to

that of a principal of a very small magnet school. For the 2003-2004 school year, as Even Start Director, Petitioner earned $58,840. On the district's organizational chart, Even Start Director was on the same level as principals.

Petitioner's second position was that of an assistant middle school principal. Petitioner's duties as assistant principal impacted more students, teachers, and other employees, but as assistant principal she had less authority. Except in the absence of the principal, in many situations, Petitioner lacked final authority. For the 2003-2004 school year, as an assistant principal, Petitioner earned $58,840. On the district's organizational chart assistant principals are on the level below principals.

The positions of Even Start Director and assistant principal are within the same professional capacity. While the duties and responsibilities are not identical, they are sufficiently similar. Petitioner went from a position that was the equivalent of being the principal of a very small school to being a middle school assistant principal. Petitioner's pay remained the same for the 2003-2004 school year. While there was movement on the organizational chart, the movement was only one level. This case seems most similar to *Keith v. Tarkington Independent School District*, Docket No. 459-R3-891 (Comm'r Educ. 1992). In *Keith*, the movement was from a central office position to the position of assistant principal. The Commissioner held that the two positions were in the same professional capacity.

Demotion/Reduction in Salary

For the entire 2003-2004 school year, Petitioner continued to receive her salary of $58,840. On April 8, 2004, Petitioner was notified that for the 2004-2005 school year, she would receive a salary of $51,090. Petitioner maintains that the reduction in salary plus the reduction in responsibilities constitutes a demotion. This claim is a contract claim. The Commissioner has stated that in addition to reductions in pay, such factors of reduction in responsibilities and required skills are relevant factors when considering a demotion claim. *Underwood v. Rusk Independent School District*, Docket No. 062-R3-

198 (Comm'r Educ. 1998).  However, since any reduction in responsibilities or required skills is in accordance with Petitioner's contract, Respondent has not violated Petitioner's written employment contract.  TEX. EDUC. CODE § 7.057(a)(2)(B).  Further, even if Petitioner could identify a violation of her contract, Petitioner cannot show that this caused or would cause monetary harm.  *Smith v. Nelson*, 53 S.W.3d 792 (Tex. App.-Austin 2001, pet. denied).  The only contract in evidence is Petitioner's contract for the 2002-2004 school years.  This contract does not require that Petitioner receive the same or greater compensation for the 2004-2005 school year.  While Petitioner may have expected to receive the same or a higher salary, she had no contractual right to receive such a salary.  When a school district informs a teacher of a salary reduction at a time when the teacher can unilaterally withdraw from the contract, the district may reduce compensation from one school year to the next as long as the compensation complies with the state minimum salary schedule.  TEX. EDUC. CODE § 21.402-21.403.

Conclusion

Petitioner's reassignment from Even Start Director to assistant middle school principal was a reassignment within the same professional capacity.  Respondent has not impermissibly reduced Petitioner's salary or demoted her.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Designee of the Commissioner of Education, I make the following Conclusions of Law:

1.    The Commissioner has jurisdiction to hear this cause under Texas Education Code section 7.057, except as noted in Conclusion of Law No. 3.

2.    Texas Education Code section 7.057 grants the Commissioner jurisdiction over written employment contracts and "the school laws of this state."

3.    The Commissioner lacks jurisdiction to consider whether Respondent violated the requirements of the Even Start grant under Texas Education Code section 7.057.

4.    "Same professional capacity", as used in Texas Education Code section 21.206, is not limited to the individual classifications used in Texas Education Code section 21.201(1). This interpretation of the Commissioner is affirmed by the doctrine of legislative acceptance.

5.    "Administrator" is a legitimate professional capacity under Texas Education Code section 21.206.

6.    Whether the professional capacity of "administrator" properly includes two positions is determined principally by comparing the professional skills and responsibilities of the two positions.

7.    Petitioner's positions of Even Start Director and middle school assistant principal both legitimately fall under the professional capacity of administrator.

8.    Respondent did not violate Texas Education Code section 21.206 by reassigning Petitioner from Even Start Director to middle school assistant principal.

9.    Petitioner's claims of demotion and reduction in salary are contract claims. TEXAS EDUC. CODE § 7.057 (a)(2)(B).

10.    Reassigning Petitioner from Even Start Director to middle school assistant principal did not violate her contract.

11.    Even if reassigning Petitioner from Even Start Director to middle school assistant principal violated Petitioner's contract, it did not cause nor would it cause monetary harm.

12.    Reducing Petitioner's salary from the amount received for the 2003-2004 school year to the amount for the 2004-2005 school year did not violate Petitioner's contract as the salary offered was not below the salary required by the state minimum salary schedule. TEX. EDUC. CODE § 21.401-21.402.

13. Petitioner was not demoted in violation of her contract.

14. Petitioner's appeal should be denied.

O R D E R

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Designee of the Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ISSUED this _____ day of _____, 2006.


_____
ROBERT SCOTT
CHIEF DEPUTY COMMISSIONER
BY DESIGNATION

# APPENDIX 8

*Carpenter v. Wichita Falls Indep. Sch. Dist.*,
Docket No. 247-R3-491
(Tex. Comm'r Educ. 1993)

| | | |
|---|---|---|
| ROSE M. CARPENTER | § | BEFORE THE STATE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| WICHITA FALLS INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner was employed as an administrator by the Wichita Falls Independent School District for the 1989-90 school year. Her assignment at that time was science supervisor. Petitioner appeals the denial of her grievance claiming the reassignment was in violation of Texas Education Code § 21.204(d).

A hearing on the merits of this appeal was heard on January 13, 1992, before James C. Thompson, the Hearings Examiner appointed by the State Commissioner of Education. Petitioner was represented by Mark Robinett, Attorney at Law, Austin, Texas. Respondent was represented by Roger Hepworth, Attorney at Law, Austin, Texas.

On July 20, 1993, the Hearings Examiner issued a Proposal for Decision recommending that Petitioner's appeal be denied. Exceptions and replies were timely filed and considered.

### Findings of Fact

After due consideration of the evidence and matters officially noticed, in my capacity as State Commissioner of Education, I make the following Findings of Fact:

**Appx. 8**

1.    At all times relevant to this appeal Petitioner was employed by the Respondent as an administrator in the Wichita Falls Independent School District. (Joint Stip.; PX-1.)

2.    Both the administrator's contract for the 1989-90 school year and the administrator's contract for 1990-91 signed by Petitioner contain a clause providing that

> employee shall be subject to assignment and reassignment of positions or duties, additional duties, changes in responsibilities or work, transfers, or reclassification at any time during the contract term.

(PX-1; RX-2.)

3.    In June or July of 1990, the Wichita Falls Independent School District reorganized its administrative structure. As a result of the administrative reorganization of Wichita Falls Independent School District, some of the area supervisors were reassigned to campus-based administrative positions. (Joint Stip.)

4.    In July of 1990, Petitioner received notice from the Wichita Falls Independent School District that Petitioner would be reassigned to the position of Assistant High School Principal. (Joint Stip.)

5.    Petitioner received no decrease in salary or benefits from her reassignment. (Joint Stip.)

6.    At the time of the hearing Petitioner remained employed with the Wichita Falls Independent School District as an administrator in the position of Assistant Principal. (Joint Stip.)

7.    Petitioner voiced disapproval of the administrative reorganization.

8.    The Assistant Superintendent recommended that Petitioner would not be well suited to the new role as Science Support Specialist

because of a problem she had working with principals and teachers in the past.

9. Petitioner did not apply for the position of Science Support Specialist.

10. Petitioner's former position of Science Supervisor was among those positions abolished by the reorganization plan.

11. Petitioner's position as Assistant Principal is an administrative position and Petitioner's prior position as Science Supervisor was an administrative position. These positions are in the same professional capacity. (PX-2 and RX-2.)

## DISCUSSION

The question presented by this appeal is the scope and reach of the Term Contract Nonrenewal Act, Texas Education Code section 21.204(b), in the context of the reassignment of those school district personnel coming under its protections. Petitioner would have the Commissioner of Education hold that the phrase "same professional capacity" as used in the TCNA is either defined by or in some way informed by the definition of "teacher" found in §21.201(1) of that Act. I do not believe the statutory language can permit of such an interpretation. Rather, this phrase is left undefined by the statute, and therefore its meaning is a matter for interpretation by the Commissioner, in the first instance, and by the courts. The decisions of the Commissioner (and the courts) have consistently looked to the language of the employment contract itself and attempted to give the parties the benefit of their bargain. In this case, the contract between the parties provides that the position to which Petitioner was entitled was that of a generic "administrator." Petitioner has not proven that hers was a

contract of adhesion, which would clearly change the result in this case. It is true that the Commissioner has held that §21.204(b) limits the right of the district to transfer a term contract teacher. Barich v. San Felipe-Del Rio C.I.S.D., Docket No. 117-R1a-484 (Comm'r Educ. May 1985). It is possible to imagine situations where the transfer clause in an employment contract would be held unenforceable under §21.204(b). However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to the law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexiblity in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me to be consistent with the policies of the TCNA.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as State Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner of Education has jurisdiction over this appeal under Texas Education Code §11.13(a).

2. Respondent's decision to reassign Petitioner was neither arbitrary, capricious, nor unlawful.

3. Respondent's decision to reassign Petitioner was not a violation of state law.

#0247-R3-491                     -4-

4.	Petitioner had no contractual entitlement not to be reassigned from Science Supervisor to Assistant Principal.

5.	Petitioner had no property interest in the non-economic benefit of serving as Science Supervisor.

6.	Petitioner's appeal should be denied.

### **O R D E R**

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact and Conclusions of Law, in my capacity as State Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED.

SIGNED AND ISSUED this _____ day of _____, 199_.


_____
LIONEL R. MENO
COMMISSIONER OF EDUCATION

# APPENDIX 9

*Lehr v. Ector County Indep. Sch. Dist.,*
Docket No. 003-R3-0908
(Tex. Comm'r Educ. 2011)

| MARGARET LEHR | § | BEFORE THE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| ECTOR COUNTY INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Margaret Lehr, appeals the action of Respondent, Ector County Independent School District, concerning her grievance. Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education. Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas. Respondent is represented by Mike Atkins, Attorney at Law, Odessa, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be dismissed. Exceptions and replies were timely filed and considered.

### Findings of Fact

After due consideration of the record, the stipulations of the parties, and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1. Petitioner was employed by Respondent under a term contract for 2007-2008 school year as an administrator. For this school year, Petitioner held the position of Executive Director of Special Education, which was a Pay Grade 8 position. This was a 12 month position. The salary range for such a position according to the salary schedule

---

[1] *See* 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

**Appx. 9**

was $78,933 to $110,128. What salary Petitioner received within this salary range for the 2007-2008 school year is unknown.

2. Petitioner was employed by Respondent under a term contract for 2008-2009 school year as an administrator. For this school year, Petitioner held the position of Assistant Principal Lamar Elementary School, which initially was a Pay Grade 2 position but which was upgraded to a Pay Grade 3 position. The position was for 12 months. The salary range for such a position according to the salary schedule was $52,546-$76,401.

3. Petitioner received the same pay for the 2008-2009 school year as she received for the 2007-2008 school year.

4. By letter of June 11, 2009, Petitioner voluntarily submitted her resignation to be effective on June 30, 2009. This resignation was accepted by Respondent on June 11, 2009.

5. When Petitioner was reassigned to the position of Assistant Principal she was informed that a salary adjustment would be made for the 2009-2010 school year.

6. When Petitioner was reassigned to the position of Assistant Principal she was informed that the number of days to be worked would be reduced to 217 days from 227 days for her second year as an Assistant Principal.

7. The job description for Executive Director of Special Education provides in pertinent part:

**QUALIFICATIONS:**

- Master's Degree
- Mid-management/Supervisor Certification
- Special Education Certification
- Administrative or Supervisory Experience
- Such alternatives to the above qualifications as the Board may find appropriate.

**SUPERVISOR:**          Assistant Superintendent for Instruction Services

**JOB GOAL**: The goal of The Executive Director of Special Education is to direct the district's special education program to ensure provision of needed services for special education students and to ensure compliance with all state, federal, and local requirements.

Responsibility: To fulfill the responsibilities of this position, the person will:

01  Direct special education programs to ensure students with special needs are provided services as reflected in the Individualized Education Plan (IEP)

02  Ensure that each student is evaluated within state and federal guidelines and the findings are used for program improvement

03  Develop budgets and grants for growth and maintenance of special education programs

04  Monitor budgets to ensure that financial accounting procedures are followed in accordance with local, state, and federal regulations

05  Direct maintenance and security of confidential files and records

06  Direct the compiling, maintaining, and filing of required reports, records, and other documents

07  Serve as resource person in the design and equipping of physical facilities for individuals with disabilities

08  Implement and interpret policies established by federal and state laws, State Board of Education policies in the area of special education

09  Secure contracts with providers for services to special education students

10  Participate in district programs for recruitment, selection, orientation, assignment, and retention of special education employees

11    Establish and maintain open lines of communication by conducting conferences with parents, students, and educators concerning interpretation and review of special education programs

12    Work collaboratively with other members of the Curriculum and Instruction Division for accomplishment of the district's long and short goals and objectives.

13    Assume responsibility for own professional growth and development, for keeping current with literature; new research findings, and improved techniques, for attending appropriate professional meetings and conventions

14    Evaluate supervised personnel in accordance with district policy

15    Assume other duties and responsibilities as assigned by the Assistant Superintendent

16    Attend board meetings to maintain communication with school board members

17    Participate in superintendent's cabinet as a liaison between the SpEd Department and the Superintendent.

**TERM OF EMPLOYMENT:**    12 months (227 days)

8.    The job description for Assistant Principal-Elementary reads in pertinent part:

**QUALIFICATIONS:**    Master's Degree
Successful teaching experience
Valid administrator's certification issued by SBEC or eligible for temporary assistant principal certificate

**JOB GOAL:** The goal of the assistant principal is to assist the principal in fulfilling responsibilities and duties associated with the instructional staff

**RESPONSIBILITIES:**

01 Provide assistance in instructional monitoring of student performance;

02 Provide leadership to teachers on classroom management techniques and teaching strategies and delivery;

03 Assist in the planning and development of campus professional development;

04 Participate in interviewing and assigning of instructional personnel;

05 Assist in designing, implementing, and evaluating school climate;

06 Collaborate with campus improvement team;

07 Implement school curriculum and oversee District's curriculum initiatives;

08 Serve as an appraiser evaluating teacher performance;

09 Work with faculty in budgeting, accounting, facility planning, maintenance and operations;

10 Interpret, enforce and maintain proper student conduct and discipline; plan coordinate and supervise extracurricular activities;

11 Supervise the reporting and monitoring of student attendance and work with attendance personnel for investigating follow-up actions;

12 Participate in student and/or parent conferences;

13 Assume responsibility for coordinating transportation, custodial, cafeteria and other support services;

14 Cooperate in conducting safety inspections and safety drills;

15 Serve with parent, faculty, and student groups in building support for school;

16      Grow professionally in staff development areas and self improvement plans;

17      Assess school and program needs and develop programs and teaching strategies to meet indentified needs;

18      Utilize public relations skills in maintaining positive and open communication with community and parents;

19      Perform other duties as may be assigned by the principal;

20      May be responsible for coordinating the assignment of students to extended day activities (for magnet elementary school).

**TERM OF EMPLOYMENT**:      11 ½ months (217 days)

### Discussion

Petitioner contends that Respondent demoted her and changed her professional capacity when it reassigned her from the position of Executive Director of Special Education to the position of Assistant Principal at Lamar Elementary School. Respondent denies these claims and asserts that the case is moot and that the Commissioner lacks jurisdiction over Petitioner's contract claim because Petitioner cannot show monetary harm.

Mootness

Respondent contends that this case became moot when Petitioner submitted her resignation and that resignation was accepted. The Texas Supreme Court has held that:

> A case becomes moot when it appears that one seeks to obtain judgment upon some pretend controversy when in reality none exists, or when he seeks judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then existing controversy.

*McNeil v. Hubert*, 119 Tex. 18, 23, 23 S.W.2d 331, 333 (1930). Mootness is a component of subject matter jurisdiction. *State Bar of Texas v. Gomez*, 891 S.W2d 243, 244 (Tex. 1994). If a case is moot, the Commissioner lacks jurisdiction over the case.

<u>Evidence as to Mootness</u>

While jurisdiction is often determined on the pleadings, in the appropriate case, evidence may be taken. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2001). By Order of September 2, 2009, the parties were directed that:

> The parties will be brief the issues related to Respondent's Motion to Dismiss for Mootness. If a party believes that evidence not in the record is required to resolve issues related to the motion, the party shall identify the type of information believed to be needed and suggest a method to take such information. If a party believes additional evidence is needed, the party shall consult with the other party to determine if an agreement may be reached as to taking evidence.

While Petitioner's Brief on Respondent's Motion to Dismiss identifies evidence that she believes indicates that the resignation was not voluntary, Petitioner did not identify a method as to how such evidence might be taken or indicate that an attempt at an agreement as to taking evidence was attempted. The only evidence concerning the resignation itself is the parties' stipulation that the resignation was submitted by Petitioner and accepted by Respondent and, to the extent it is relevant, the local record.

<u>Resignation</u>

A resignation is a contract to end a contract. It normally[2] requires offer and acceptance. *Cantu v. Central Education Agency*, 884 S.W.2d 565 (Tex. App.-Austin 1994, no writ). If by her resignation, Petitioner's employment relationship with Respondent was ended, Petitioner could not recover on either her claim that she was demoted or that Respondent failed to employ her in the same professional capacity in violation of Texas Education Code section 21.206(b), as a valid resignation ends the mutual obligations of a contract. *New York Life Ins. Co. v. Thomas*, 103 S.W. 423, 152 (Tex. Civ. App. 1907). Petitioner asserts the defense that her actions in tendering a written resignation were not voluntary.

---

[2] A resignation of a chapter 21 contract made in writing 45 days before the first day of instruction is not required to be accepted to be effective. TEX. EDUC. CODE §§ 21.105, 21.160, and 21.210. In the present case, it is unclear whether the resignation met the relevant timelines and was required to be accepted.

<u>Was the Resignation Voluntary?</u>

Based on the stipulation of the parties, the resignation to be effective on June 30, 2009 was submitted and accepted on June 11, 2009. On June 11, 2009, a contract was made to end the employer-employee relationship on June 30, 2009. The contract made was not a contract that the employer-employee relationship would end on June 30, 2009 unless the Petitioner prevailed in the administrative appeal. The contract made between the parties was to end the employment relationship on June 30, 2009.

The local record contains evidence that can be considered in conjunction with the mootness claim. As set forth below, Respondent did not violate Texas Education Code section 21.206 when it reassigned Petitioner to other duties. A district's lawful action in accordance with a written contract cannot be said to force a teacher to submit a resignation. The local record does not support a determination that the resignation was not voluntary.

But even assuming the Petitioner was correct that a violation of Texas Education Code section 21.206 had occurred this would not result in a determination that the resignation was not voluntary. Even when one party to a contract violates a contract, the parties can still agree to end the contract. Petitioner sought a resignation effective on a particular day. Petitioner did not seek some other agreement. Respondent accepted the agreement Petitioner offered. Texas Education Code section 21.206 does not provide that a violation results in a resignation being deemed to be involuntary.

Assuming for purpose of argument that Petitioner's affidavit attached to Petitioner's Brief on Respondent's Motion to Dismiss is evidence to be considered, the results remains the same. The resignation was voluntary. While the affidavit sets forth reasons why Petitioner wished to end the employment relationship, it does not demonstrate that Petitioner's resignation was not voluntary. Petitioner retired earlier than she had wished to and sought other employment. This is a rational course of action. Petitioner could have remained employed with Respondent and sought to vindicate her

rights through her appeal to the Commissioner. That would also be a rational course of action, but Petitioner did not do this. Petitioner's resignation was voluntary.

What Effect Would a Ruling on the Merits Have?

Petitioner argues that even if the resignation was voluntary that a ruling on the merits would have a practical effect. Petitioner contends that the Commissioner could order Respondent to reinstate Petitioner or to pay lost retirement benefits. Petitioner further claims that a Commissioner's decision could be used by a court as a basis to award such benefits. However, Petitioner makes no legal citation to support these claims. As to the claims that the Commissioner could direct Respondent to reinstate Petitioner and pay lost retirement benefits, Respondent is mistaken. The Commissioner could not force Respondent to create a new contract with Petitioner or force Respondent to pay benefits somehow derived from this new contract. Petitioner has not shown she was owed any monetary benefits of the contract that ended on June 30, 2009. There is no relief that the Commissioner could offer that would have a practical legal effect.

Demotion

Petitioner claims that Respondent demoted her. The Texas Education Code does not prohibit a school district from demoting a teacher. Petitioner has not alleged that any section or sections of the Texas Education Code prohibits demotions. To the extent the Commissioner has jurisdiction over demotions, that authority must come from Texas Education Code section 7.057(a)(2)(B) which gives the Commissioner jurisdiction over violations of written employment contracts that cause or would cause monetary harm:

> a) Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:
>
> . . .
>
> (2) Actions or decisions of any school district board of trustees that violate:
>
> . . .
>
> (B) A provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

Because Petitioner had not lost salary or benefits when the grievance was filed or during the grievance, Petitioner cannot show the requisite monetary harm. *Smith v. Nelson*, 53 S.W.3d 792 (Tex. App.-Austin 2001, pet denied). The Commissioner lacks jurisdiction over Petitioner's demotion claim.

Same Professional Capacity

Assuming for the sake of argument that this case is not moot, the following analysis of "the same professional capacity" claim is made. A "teacher"[3] who holds a term contract under Texas Education Code chapter 21, subchapter E that is about to expire cannot be reassigned to a new position for the next school year unless the position is within the same professional capacity as the position the "teacher" held in the current school year:

> (a) Not later than the 45th day before the last day of instruction in a school year, the board of trustees shall notify in writing each teacher whose contract is about to expire whether the board proposes to renew or not renew the contract.
> (b) the board's failure to give the notice required by Subsection (a) within the time specified constitutes an election to employ the teacher in the same professional capacity for the following school year.

TEX. EDUC. CODE § 21.206. The term "same professional capacity" is not defined in the Texas Education Code. However, the Commissioner from the earliest substantive decision concerning this provision has held that "administrator" is a professional capacity.

> It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances the validity of a particular placement will be

---

[3] The definition of "teacher" found at Texas Education Code section 21.201 is truly a creature of statute. It includes individuals who would never in common speech be referred to as teachers.

clear. For example, an administrator who does not receive the required notice by April 1[4] may not be placed in the capacity of a classroom teacher. . .

In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such an assignment include, but are not limited to differences in authority, duties, and salary.

*Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ. 1985). Further, the Commissioner has found that the professional capacity of "administrator" is to be broadly interpreted:

It is possible to imagine situations where the transfer clause of an employment contract would be held to be unenforceable under § 21.204(b)[5]. However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to this law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case. The need for flexibility in making personnel changes is strongest, and the argument for a rigid tenure system weakest, at the administrative level. In short, I find the generic "administrator" position before me consistent with the policies of the TCNA.

*Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1993). In many cases, it will not constitute a violation of Texas Education Code section 21.206 for a district to reassign a term contract administrator from a position with one administrative job title to a position that has a different administrative job title. *Perez v. Donna Independent School District*, Docket No. 086-R1-705 (Comm'r Educ. 2007).

As *Carpenter* indicates, what professional capacity a "teacher" holds is to a certain extent determined by the employment contract. However, districts are not completely free to determine what professional capacity a "teacher" has. A professional

---

[4] In the original Term Contract Nonrenewal Act, a district had to propose nonrenewal on or before April 1, instead of the current requirement of "the 45th day before the last day of instruction." Term Contract Nonrenewal Act, 67th Leg., R.S. , ch. 765, § 2, 1981 Tex. Gen. Laws 2847.

[5] The old Texas Education Code section 21.204 is the predecessor of the current Texas Education Code section 21.206.

capacity must be a legitimate professional capacity. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). A district is not required to employ an assistant principal in the professional capacity of assistant principal. A district may employ an assistant principal in the professional capacity of administrator. To determine if a district may reassign an administrator who is employed in the central office to another position such as assistant principal, the two positions need to be compared.

Executive Director of Special Education and Assistant Principal

Applying the factors noted in *Barich*, it is concluded that Petitioner's two positions are in the same legitimate professional capacity of administrator. There are differences in authority, duties, and salary between the two positions. However, both positions are legitimate administrator positions.

Authority and Duties

Comparing authority and duties, one job is a central office position the other job is a campus position. The main evidence as to authority and duties comes from the job descriptions of the two positions. While the job descriptions are detailed, there are unanswered questions as to what the descriptions actually mean. For example, both job descriptions indicate that each position has a role in teacher appraisals. The Executive Director of Special Education is to "evaluate supervised personnel in accordance with district policy.'" An assistant principal is to "serve as an appraiser evaluating teacher performance." Because special education teachers teach on campuses, it is uncertain who performs teacher appraisals for special education teachers. Other issues are not answered by the record. It is unclear how many employees the Executive Director of Special Education supervises. It is also unclear how many students and teachers are on the elementary campus. But while the record is less than exhaustive, it is clear that both jobs are responsible administrative jobs.

The change in positions is unlike the move from superintendent to assistant principal described in *Barich*. A superintendent according to statute is "the educational leader and chief executive officer of the school district." TEX. EDUC. CODE § 11.201(a). The position of superintendent is *sui generis*. There is no administrator position that compares to it. The position of Executive Director of Special Education is not mentioned in the Texas Education Code. In fact, the certification mentioned in the job description for the position is "midmanagement/supervisor" is no longer awarded.[6] Currently, the only certifications for administrator are superintendent and principal.[7] There is no certification that an Executive Director of Special Education is required to hold under the Texas Education Code or the rules adopted under the code.

Petitioner contends that an Assistant Principal position "is, in essence, a support position." Petitioner's Brief, p. 10. In a way this is true. But it is also true that the Executive Director of Special Education is a support position. The Executive Director of Special Education assists the superintendent's assistant. The Executive Director of Special Education reports to the Assistant Superintendent for Instruction Services. The primary authority in a school district is held by the school board. TEX. EDUC. CODE § 11.002. A superintendent has considerable statutory authority. TEX. EDUC. CODE § 11.201. To a lesser degree, principals have statutory authority. TEX. EDUC. CODE § 11.202. Even teachers have some statutory authority. TEX. EDUC. CODE § 37.002. An Executive Director for Special Education is given no authority under the Texas Education Code. This does not mean that the position has no authority. Indeed, it has authority. However, the Executive Director of Special Education does not have the statutory authority like any of the positions listed above.

---

[6] Hence, it is a good thing that the job description allows for alternative qualifications. While those who received midmanagement and supervisor certifications retain them, it is not perhaps wise to limit employment to those who have achieved a certification that is no longer issued.

[7] 19 TEX. ADMIN. CODE ch. 241 and 242. All other administrator certifications were not issued after 2000.

Salary

Petitioner's salary did not change when she changed positions. However, Petitioner was informed that her salary classification would change. Just how much change might have occurred if Petitioner had not resigned is unclear. Based on the record it cannot be determined what Petitioner's salary for the 2009-2010 year would be. In fact, it is not clear what Petitioner's salary for the 2007-2008 and the 2008-2009 school years was. Only the salary range is known for those years. The difference between the salary ranges shows a potential change in salary of $2,500 to $58,000. A comparison of the salary ranges for 2007-2008 and 2008-2009 is not very useful. The record fails to indicate how an employee's actual salary is determined within the salary range. Further, any change in salary was to come in the 2009-2010 school year and the record reveals neither what Petitioner's salary for that year would have been, nor the salary ranges for that year.

If the Legislature had intended that no reduction in salary could occur when a teacher's contract is renewed, it would have said so. For example, in Texas Education Code section 21.402(d) and (f), it is specified that teachers who remain at the same school district cannot receive less than they received in particular school years. While salary is a factor to consider in determining whether two positions are in the same professional capacity, it will often not be a decisive factor. Teachers across the state often receive different salaries, yet no one questions whether they hold the same professional capacity. The same is true of assistant principals and all of those employed under term contracts. The record in the present case does not demonstrate a salary change that would indicate a change in professional capacity.

Applying the standards set out in *Barich* to the present case, the two positions Petitioner held are in the same legitimate professional capacity of administrator. Respondent did not violate Texas Education Code section 21.206 when it reassigned Petitioner.

Conclusion

The Commissioner lacks jurisdiction over all of Petitioner's claims because Petitioner's resignation has made this case moot. The Commissioner also lacks jurisdiction over the demotion claim because no monetary harm has been shown. Respondent did not violate Texas Education Code section 21.206 when it reassigned Petitioner.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner lacks jurisdiction over Petitioner's Texas Education Code section 21.206 claim under Texas Education Code section 7.057(a)(2)(A).

2. The Commissioner lacks jurisdiction over Petitioner's demotion claim. TEX. EDUC. CODE § 7.057(a)(2)(B).

3. A case becomes moot when it appears that one seeks to obtain judgment upon some pretend controversy when in reality none exists, or when he seeks judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then existing controversy.

4. Mootness is a component of subject matter jurisdiction.

5. A resignation is a contract to end a contract. It normally requires offer and acceptance.

6. A written resignation tendered and accepted and not the result of duress, fraud, or mistake constitutes a binding contract, by which the original contract is terminated and both parities released from further obligations thereunder. If Petitioner's resignation is of this character, the resignation ended the parties' obligations under their contract.

7.    Petitioner's resignation became a valid contract when it was voluntarily offered and accepted on June 11, 2009.  The employer-employee relationship between Petitioner and Respondent ended on June 30, 2009.

8.    The Commissioner does not have jurisdiction over demotion claims based on Texas Education Code section 7.057(a)(2)(A).

9.    The Commissioner may have jurisdiction over a demotion claim if a violation of a written employment contract is alleged that causes or would cause monetary harm.  TEX. EDUC. CODE § 7.057(a)(2)(B).

10.    The monetary harm referred to in Texas Education Code section 7.057(a)(2)(B) must be a contract damage.  If an employee does not lose salary or benefits based on an alleged violation of a written contract, the employee has not suffered monetary harm.

11.    Because Petitioner did not suffer monetary harm as that term is used in Texas Education Code section 7.057(a)(2)(B), the Commissioner lacks jurisdiction over Petitioner's demotion claim.

12.    Administrator is a professional capacity as that term is used in Texas Education Code section 21.206(b).

13.    The professional capacity of administrator, as it applies to Texas Education Code section 21.206(b), is a broad professional capacity.

14.    A "teacher" who is employed as an Assistant Principal may be employed in the professional capacity of administrator.  TEX. EDUC. CODE § 21.206(b).

15    A "teacher" who is employed as an Executive Director of Special Education may be employed in the professional capacity of administrator.

16.    To determine whether two positions are in the same professional capacity, a comparison should be made of any differences in authority, duties, and salary, along with any other relevant factors.  TEX. EDUC. CODE § 21.206(b).

17.    A grievant has the burden of proof before a school board.

18. As this case is an appeal of a school district's decision, the substantial evidence standard applies to the merits of the case. TEX. EDUC. CODE § 7.057(c).

19. There is substantial evidence to support Respondent's determination that Petitioner's two positions at issue are in the same professional capacity. TEX. EDUC. CODE § 21.206(b).

20. Respondent did not violate Texas Education Code section 21.206(b) when it reassigned Petitioner from the position of Executive Director of Special Education to the position of Assistant Principal.

21. The Petition for Review should be dismissed.

Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that the Petitioner's appeal be, and is hereby, dismissed.

SIGNED AND ISSUED this _____ day of _____, 2011.

_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

# APPENDIX 10

*Young v. Leggett Indep. Sch. Dist.,*
Docket No. 175-R3-898
(Tex. Comm'r Educ. 1998)

DOCKET NO. 175-R3-898

| TERRY W. YOUNG | ß | BEFORE THE |
| | ß | |
| | ß | |
| V. | ß | COMMISSIONER OF EDUCATION |
| | ß | |
| LEGGETT INDEPENDENT | ß | |
| SCHOOL DISTRICT | ß | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

Statement of the Case

Petitioner, Terry W. Young, appeals the decision of Respondent, Leggett Independent School District board of trustees, to deny his grievance. Paula Hamje was initially assigned as the Administrative Law Judge to preside over this case. Subsequently, Christopher Maska was appointed substitute Administrative Law Judge. Petitioner is represented by Lorraine J. Yancey, Attorney at Law, Austin, Texas. Respondent is represented by Susan G. Morrison, Attorney at Law, Austin, Texas.

On March 18, 1999, the Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be denied. Exceptions and replies were timely filed and considered.

Findings

After due consideration of the record and matters officially noticed, in my capacity as Commissioner of Education, I conclude that the following Findings are supported by substantial evidence:

1. Petitioner, Terry Young, was employed by Respondent, Leggett Independent School District, under a term contract for the 1997-1998 school year in the position of teacher/coach.
2. Respondent employed Petitioner under a term contract for the 1998-1999 school year for the position teacher/coach.
3. The record does not indicate that Petitioner's duties changed significantly in the years 1997-1998 and 1998-1999.
4. The record does not indicate that Petitioner incurred monetary harm as a result of his reassignment.
5. During the 1997-1998 school year Petitioner was assigned as a teacher and varsity coach.
6. For the 1998-1999 school year Petitioner was reassigned by the superintendent to the position of teacher and junior high coach.

Discussion

Petitioner contends that Respondent demoted him from the position of athletic director to the position of coach. Petitioner claims that this was done in violation of local policy in that the criteria for reassignment was not followed. Petitioner contends that his reassignment was done in violation of the Texas Education Code because the superintendent did not initiate it. Petitioner alleges that he is not serving in the same professional capacity.

Petitioner argues that he was demoted because he sought a hearing after being proposed for nonrenewal.
Record

Petitioner seeks the Commissioner to take official notice of a number of documents1.  These include:

Board Policy DAB(Local)
Petitioner's Employment Application
Petitioner's Employment Contract
Respondent's salary statements for Petitioner
Petitioner's Performance Appraisals
UIL Rules for 1997-1998 and 1998-1999
Respondent's correspondence with UIL
Board Minutes of Respondent's Board of Trustees
Correspondence from Respondent to Petitioner

Respondent requested that the Commissioner take official notice of certain documents if official notice was taken of documents proffered by Petitioner.
Official notice is the administrative law counterpart to judicial notice.  Texas Rule of Evidence 201 allows judicial notice as to facts "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  None of the significant facts in the documents can be said to be generally known in Texas, which is the extent of the Commissioner's jurisdiction.  Hence, the question to be asked is whether the facts in the documents are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.  A United States Weather Service table used to prove that it rained on a particular day in a particular city exemplifies the type of source whose accuracy cannot be questioned.  There is very little chance that such data will be incorrect or that someone manipulated the data to benefit a litigant.  Perhaps the documents that come closest to this standard in this case are the University Interscholastic League (hereinafter, "UIL") Rules.
Texas Rule of Civil Evidence 204

Texas Rule of Civil Evidence 204 sheds some light on the UIL rules.  This rule of evidence allows a court to take official notice of city and county ordinances and rules published in the Texas Register or Texas Administrative Code.  The UIL rules fit in none of these categories.  The UIL, which in some ways is a private body that also has some quasi-governmental functions, does not publish its rules in either the Texas Register or the Texas Administrative Code.  Nonetheless, the UIL rules seem similar to the type of documents covered by that rule of evidence.  Historically, Texas courts would not take judicial notice of such things as administrative regulations and local ordinances.  Southwestern Bell Telephone Co. v. Nash, 586 S.W.2d 647, 651 (Tex. App.-Austin 1979, no writ), Iranian Moslem Organization v. City of San Antonio, 615 S.W.2d 202, 214 n.4 (Tex. 1981).  However, with Nash, the law began to change.  The court in Nash held that judicial notice was appropriate for official publications.  In 1981, the Texas

Legislature adopted in part the argument in Nash and amended the Administrative Procedure and Texas Register Act to require judicial notice to be taken of the Texas Register and the Texas Administrative Code. Act of April 30, 1981, ch. 76ßß 1, 3 1981 Tex. Sess. Law 168-169. In 1984, the Texas Rules of Evidence were amended to add the current Rule 204. In Office of Public Utility Counsel v. Public Utility Commission of Texas, 878 S.W.2d 598, 600 (Tex. 1994), the Supreme Court extended the argument by requiring that judicial notice be taken of a published agency order. It is concluded that official notice should be taken of UIL rules. Official notice is taken of the 1997-1998 and 1998-1999 UIL rules provided by Petitioner. It should be noted that Respondent's objection to these rules was based on relevancy, not that they were not the type of document it was proper to take official notice of. However, Respondent's relevance argument fails because the UIL rules make one of Petitioner's contentions more likely rather than less likely. None of the other documents proffered by Petitioner or Respondent meet the requirements for official notice.

Demotion

While a school district may reassign a teacher at will, it may not demote a teacher at will. As the Texas Supreme Court held in Central Education Agency v. George West Independent School District, 783 S.W.2d 200, 202 (Tex. 1989), "The school district's right to modify the contract does not imply the power to substitute something entirely different." To demote a teacher during the term of the contract would violate the teaching contract. To demote a teacher in retaliation for filing a grievance would violate Texas Government Code ß617.005. This would also be a contract violation if this provision of the Government Code existed when the contract was signed: "[L]aws which subsist at the time and place of the making of a contract...enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." Von Hoffman v. City of Quincy, 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403 (1866) quoted in Smith v. Elliot & Deats, 39 Tex. 201, 212 (1873); see also Wessley Energy Corp. v. Jennings, 736 S.W.2d 624, 626 (Tex. 1987). These protections were a material part of McCollough's contracts, which the school district could not unilaterally abrogate without committing a breach. Id.

The relevant provision of the Government Code did exist when the contract was signed. Further, even as to reassignment, a district must follow its reassignment policies. The reason for this is that district employment policies in force at the time the contract is entered into become part of the teaching contract. Myrtle Springs Reverted Independent School District v. Hogan, 705 S.W.2d 707, 708 (Tex. Civ. App.-Texarkana 1985, writ ref'd n.r.e.). However, since all of these alleged violations are contractual violations, the Commissioner only has jurisdiction if the violation causes or would cause monetary harm. Texas Education Code ß7.057(a)(2)(B). The record does not indicate that Petitioner lost any salary. In fact, the grievance complains about lost earnings capacity not loss of salary or benefits. Lost earnings capacity is a tort claim that an employer's actions have decreased the

3

employee's ability to command a certain salary. However, the Commissioner does not have jurisdiction over tort actions under Texas Education Code ß7.057(a)(2)(B). Further, a district's tort immunity would foreclose recovery. Hogan at 710.

Board Cannot Initiate a Reassignment

Petitioner contends that the board of trustees initiated his reassignment and that only a superintendent or principal can initiate a reassignment. Petitioner points to Texas Education Code ßß11.201, 11.202. These provisions indicate that the day to day operations of a district are to be controlled by a superintendent and principals. Petitioner contends that the board's vote to offer Petitioner a new contract subject to reassignment interfered with the responsibilities of the superintendent and Petitioner's principal. However, Respondent's contracts have a reassignment clause. A vote to offer a contract subject to reassignment is a vote to offer the board's standard contract. Further, the record demonstrates that the superintendent initiated and supported the reassignment.

Same Professional Capacity

Petitioner argues that because Respondent did not give Petitioner timely notice of proposed nonrenewal Respondent must employ him in the same professional capacity for the next school year. Texas Education Code ß21.206. Respondent gave Petitioner notice of proposed nonrenewal but the notice was untimely. When Respondent realizes this, it voted to offer Petitioner a new contract. However, because timely notice was not given, Respondent was required to employee Petitioner in the same professional capacity for the following school year.

It is necessary to first determine what the phrase "same professional capacity" means. The Commissioner has held that the first thing to consider is what is stated in the contract. Reyes v. Culberson County Independent School District, Docket No. 229-R3-787 (Comm'r Educ. 1989). However, the Commissioner has also held:

It is possible to imagine situations where the transfer clause in an employment contract would be held unenforceable under ß21.204(b). However, this is not such a case. It has been the consistent view of the Commissioner that the TCNA balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly. Districts have responded to the law by creating broad classes within which transfers do not implicate the TCNA. If taken to extremes, this tactic would be against public policy as expressed in the TCNA, but I cannot make such a finding in this case...In short, I find the generic "administrator" position before me consistent with the policies of the TCNA. Carpenter v. Wichita Falls Independent School District, Docket No. 247-R3-491 (Comm'r Educ. 1993). The phrase "same professional capacity" encompasses broad categories.

4

Petitioner contends that he was employed as Athletic Director and head basketball coach for the 1997-1998 school year. However, in Petitioner's written grievance, Petitioner only complains about being moved from varsity basketball coach and teacher to junior high teacher and coach. In fact, the position of athletic director was not mentioned at the board hearing. The question to be answered is whether being a varsity coach and teacher is the same professional capacity as being a junior high coach and teacher. The first issue is to determine what is stated in the contract. Petitioner has a dual assignment contract as a teacher/coach. Petitioner's assignments for 1997-1998 and 1998-1999 comport with his contract. The next question is whether the professional capacity teacher/coach is overbroad. Based on the record in this case, it is concluded that it is not. In fact, the record gives very little indication as to what Petitioner's job responsibilities were for the years in question. It is concluded that being a varsity coach and teacher and being a junior high coach and teacher are jobs in the same professional capacity of teacher/coach.

Conclusion:

Petitioner's contentions that Respondent violated his contract fail because he can show no monetary harm. Petitioner's contention that Respondent violated the Texas Education Code by not employing him in the same professional capacity also fails. Varsity coach and teacher is the same professional capacity as junior high coach and teacher.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner has jurisdiction to hear this cause under Texas Education Code ß7.057(a)(2)(A).
2. Texas Education Code ß7.057(a)(2)(A) does not give the Commissioner jurisdiction over possible violations of district policies as these are not defined to be "school laws of this state." Hence, the Commissioner does not have jurisdiction under Texas Education Code ß7.057(a)(2)(A) to consider a possible violation of Board Policy DAB(Local).
3. Because Respondent's actions did not cause or would not cause monetary harm, Petitioner does not have a cause of action under Texas Education Code ß7.057(a)(2)(B).
4. Under Texas Education Code ß7.057(a)(2)(B), the Commissioner does not have jurisdiction over tort claims.
5. School districts have immunity over lost earnings capacity and other tort claims.
6. To demote a teacher during the term of a contract breaches the contract.
7. District employment policies in force at the time the contract is entered into become part of the teaching contract.
8. Laws which subsist at the time and place of the making of a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.

9. To demote a teacher in retaliation for filing a grievance would violate Texas Government Code ß617.005. Since this provision of the Government Code was in effect when Petitioner's contract was signed, a violation of this provision would violate Petitioner's contract.

10. Official notice is taken of the proffered UIL Rules for 1997-1998 and 1998-1999. Official notice is not taken of the other documents proffered by Petitioner and Respondent.

11. The reassignment of teachers is primarily the duty of superintendents and principals. Texas Education Code ßß11.201, 11.202.

12. Respondent's board of trustees did not reassign Petitioner. No violation of Texas Education Code ßß11.201, 11.202 occurred.

13. If a district does not nonrenew a teacher's contract, the district must employ the teacher in the same professional capacity for the following school year. Texas Education Code ß21.206(b).

14. Respondent did employ Petitioner in the same professional capacity for 1997-1998 and 1998-1999 school years.

15. In determining whether two position are within the same professional capacity, the first question is whether both positions are encompassed by the professional capacity as stated in the contract. The second question is whether the professional capacity stated in the contract is a legitimate professional capacity.

16. Teacher/coach is a legitimate professional capacity.

17. Petitioner's appeal should be denied.

### O R D E R

After due consideration of the record, matters officially noticed and the foregoing Findings and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, DENIED. SIGNED AND ISSUED this 12th day of AUGUST, 1999.

_____
MIKE MOSES
COMMISSIONER OF EDUCATION

1 Some of the documents are very similar to documents in the record.
#010-R2-994                    -2-

#175-R3-898                    -10-

6

# APPENDIX 11

*Wheeler v. Austin Indep. Sch. Dist.,*
Docket No. 008-R3-1108
(Tex. Comm'r Educ. 2011)

| | | |
|---|---|---|
| ROBERT WHEELER | § | BEFORE THE |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| AUSTIN INDEPENDENT | § | |
| SCHOOL DISTRICT | § | THE STATE OF TEXAS |

## DECISION OF THE COMMISSIONER

### Statement of the Case

Petitioner, Robert Wheeler, appeals the actions and decisions of Respondent, Austin Independent School District. Sandy Lowe is the Administrative Law Judge appointed by the Commissioner of Education to hear this cause. Petitioner is represented by Jefferson K. Brim, III, Attorney at Law, Austin, Texas. Respondent is represented by Dorcas Green, Attorney at Law, Austin, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be granted. Exceptions and replies were timely filed and considered.

### Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of fact that best support Respondent's decision[1].

1.     Petitioner was employed by Respondent under a term contract for the 2006-2007 school year. Respondent did not provide Petitioner notice of nonrenewal of this contract.

2     Respondent employed Petitioner as a middle school assistant principal for the 2006-2007 school year.

---

[1] *See* 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District,* Docket No. 090-R1-803 (Comm'r Educ. 2003).

**Appx. 11**

3. On May 23, 2007, Petitioner signed a three year term contract as a "professional employee" with Respondent beginning with the 2007-2008 school year.

4. On June 12, 2007, Petitioner was notified that he would be removed as assistant principal at Dobie Middle School and reassigned to the position of classroom teacher.

5. On June 12, 2007, Petitioner was notified that the difference in his salary from the 2006-2007 school year to the 2007-2008 school year would be a reduction of $7,152.91.

6. As a classroom teacher, Petitioner lacked the authority and responsibilities of an assistant principal.

## Discussion

Petitioner contends that the reassignment/demotion by Respondent was an illegal change in professional capacity.

### Jurisdiction

Section 7.057 of the Texas Education Code grants the Commissioner jurisdiction over violations of written employment contracts and "the school laws of this state." "The school laws of this state" are defined as the first two titles of the code and rules adopted under the code.

### Same Professional Capacity

Because Respondent did not provide notice of nonrenewal in a timely manner to Petitioner under section 21.206(a) of the Texas Education Code the parties agree section 21.206(b) requires Respondent to employ Petitioner during the 2007-2008 school year in the same professional capacity as he was employed in the 2006-2007 school year. The dispute in this proceeding is whether the district's reassignment of Petitioner from assistant principal to classroom teacher was a change in his professional capacity.

Petitioner contends that the positions of assistant principal and classroom teacher do not fall and never have fallen under the same professional capacity and that the

#008-R3-1108                                    -2-

professional skills and responsibilities required of the two positions are in no way the same. Petitioner also contends that the $7,152.91 reduction in pay he received as a result of the change in positions further illustrates that the two positions are not equivalent. Therefore, according to Petitioner, Respondent's reassignment of Petitioner was a change in his professional capacity.

In response, Respondent argues that Petitioner's professional capacity for both school years was "professional employee," a category broad enough to include both classroom teacher and assistant principal; therefore, according to Respondent, Petitioner was reassigned, but he remained in the same professional capacity. Respondent argues that section 21.206(b) does not obligate Respondent to employ Petitioner as an assistant principal for the 2007-2008 school year.

Section 21.206 does not define the term "same professional capacity" or "professional capacity," and there are no reported state court decisions in which the term has been defined or construed. In several Commissioner decisions, however, the term has been discussed, each time in the context of a claim, like the one presented here, that a reassignment violated the employee's contract because the reassignment constituted a change in professional capacity.

In *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-3-491 (Comm'r Educ. 1993), for instance, the Commissioner stated, "TCNA[2] balanced its grant of limited tenure rights against the considerable personnel management problems it might cause if imposed inflexibly." Thus, the Commissioner recognized a policy balance that the statute was intended to achieve: The district is given some flexibility to reassign employees in order to manage staff to cover school needs, while employees are assured of due process to protect against decisions that effectively demote them or fundamentally alter their existing contractual relationships with and duties to the employing district.

---

[2] "TCNA" stands for the "Term Contract Nonrenewal Act." Prior to the rewrite of the Education Code in 1995, the statutory provisions concerning term contracts were officially known as the Term Contract Nonrenewal Act. The TCNA is the predecessor of Tex. Educ. Code §§21.201-21.212.

Other Commissioner decisions have illustrated how this balance is maintained. In *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999), an employee complained that he had been reassigned improperly from a position as varsity basketball coach and teacher to a position as a junior high school coach and teacher. The Commissioner held that in determining whether the two positions are within the same professional capacity, the first step is to consider the terms of the employee's contract, and the next question is whether the professional capacity stated in the contract is overbroad. The employee had a dual assignment contract as a teacher/coach. The Commissioner found that the employee's professional capacity was teacher/coach and that the capacity stated in the contract was not overbroad. Because the employee remained a coach and teacher after the reassignment, the Commissioner held that his professional capacity had not been changed.

*Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000), is another instance in which a change in an employee's duties was found not to be a change in professional capacity. In *Veliz*, Petitioner was reassigned from attendance coordinator to middle school assistant principal. The Commissioner found that because "both positions require Petitioner to function as an administrator and require comparable professional skills and responsibilities," the district had not changed Petitioner's professional capacity.

By contrast, in *Abbott v. Ector County Independent School District*, Docket No. 081-R3-127, 105-R3-1287 (Comm'r Educ. 1991), the Commissioner found that a reassignment was not within the same professional capacity. In that case Petitioner was reassigned from the administrative position of teacher/dean of students to the position of teacher without the administrative duties of dean. The evidence showed that the position of dean of students carried an official separate title, with a stipulated rate of pay and a job description of administrative job duties that was clearly distinct from the district's job description for a teaching position. Based on this evidence, the Commissioner held that

"as a dean the employee in question had administrative duties and that "one hired as teacher/dean could not be reassigned to a pure teacher position."

In *Barich v. San Felipe - Del Rio Cons. Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ 1985), the Commissioner provided guidance on this issue that is particularly pertinent here. In that case, the Commissioner found that reassignment of an ROTC teacher to a different teaching position was not a change in professional capacity because Petitioner was not entitled to employment in the same exact teaching position for the next year. However, the Commissioner also commented, in language directly applicable to the facts of this dispute, "In some instances the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher."

Application of the meaning of "Same Professional Capacity" to the facts in this case.

As in *Young*, the first step in determining whether Respondent changed Petitioner's professional capacity in this case is to look at his contract. Petitioner's contract for 2006-07 states only that he was hired as a "professional employee." The contract does not define this term or further describe Petitioner's duties or position. Such a broad, undefined category is not a legitimate professional capacity. For this reason, the contract is of little assistance in determining Petitioner's professional capacity. As a result, the focus must instead be a comparison of Petitioner's actual job-related duties for the two school years.

Comparison of Positions

Actual Duties and Skills

Petitioner's job assignment for the school years 2004-05 through 2006-07 was assistant principal at Dobie Middle School. As an assistant principal, Petitioner was a part of a campus leadership team. As such, he had campus level responsibilities under the supervision of the principal in the areas of administration, instructional and

#008-R3-1108                    -5-

curriculum management, evaluation of the performance of classroom teachers, fiscal management, student discipline, and the organization of the campus as a whole, which includes many classrooms and several hundred students.

Although district policy does not provide a definition of the term "administrator" or "assistant principal," it is clear from reading the district's own definition of "classroom teacher"[3] that a classroom teacher has very different professional responsibilities than does an assistant principal. The job functions of a classroom teacher are focused primarily on the instruction directed to the students assigned to an individual classroom during the school year and to the responsibilities required of the teacher to prepare, deliver and evaluate the student's understanding of the instruction delivered to those assigned students by the teacher.

Contrary to the argument of the district, the Commissioner's decision in *Young* does not support its claim of reassignment. Petitioner's contract does not describe duties or capacity beyond that of the vague general description of "professional employee." Yet Petitioner's actual assignment shows duties in two very different professional positions, one intended for the direct instruction of students in a single classroom and the other focused on the complexities of assisting the management an entire campus with multiple classrooms and several hundred students. The significant difference in job duties between these two positions cannot be blurred by a contract description that would essentially allow a district to fundamentally alter the type of job Petitioner was assigned to do without complying with the requirements of Chapter 21 of the Texas Education Code. As a result, the contract term "professional employee" is overbroad and therefore does not define a legitimate professional capacity.

---

[3] District Policy DC (LEGAL), "classroom teacher" means an educator who is employed by the District and who, not less than an average of four hours each day, teaches in an academic instructional setting or a career and technology instructional setting. The term does not include a teacher's aide or a full-time administrator." *Education Code 5.001(2).* (Local Record-00081).

## SBEC Certification requirements

State-mandated certification requirements further support Petitioner's claim that Respondent changed his professional capacity for the 2007-2008 school year. The State Board of Educator Certification (SBEC) is responsible for regulating and overseeing all aspects of educator certification. TEX. EDUC. CODE § 21.031. The SBEC, in accordance with section 21.042 of the Texas Education Code, has adopted rules defining the training requirements, minimum academic qualifications and prior experience necessary for each class of certificate.

As required by 19 TEX. ADMIN. CODE § 241.1(d), to be assigned to the position of assistant principal, an individual must hold a valid principal certificate. Petitioner is the holder of a valid principal certificate. To be eligible to receive the Standard Principal Certificate, the individual must:

(1) successfully complete the assessments required under Chapter 230, Subchapter A of this title (relating to Educator Assessment);

(2) hold a master's degree from an accredited institution of higher education; and

(3) have two years of creditable teaching experience as a classroom teacher, as defined by Chapter 230, Subchapter Y of this title (relating to Definitions).

(4) successfully complete a principal preparation program that meets the requirements of §241.10 of this title (relating to the Preparation Requirements) and §241.15 of this title (relating to the Standards for the Principal Certificate) of this subchapter.

19 TEX. ADMIN. CODE § 241.25.

The standards for the principal certificate are the knowledge and skills that must be used by educator preparation programs in the development of curricula and coursework and are used by the SBEC as the basis for developing the assessments to obtain the certificate. The standards for principals as required by section 21.046 of the Texas Education Code, emphasize:

(1) instructional leadership;
(2) administration, supervision, and communication skills;
(3) curriculum and instruction management;
(4) performance evaluation;

(5) organization; and

(6) fiscal management.

19 TEX. ADMIN. CODE § 241.15.

In contrast, the "classroom teacher" certificate is intended for individuals who are entering the field of teaching for the first time. 19 TEX. ADMIN. CODE § 232.2(b)(3). Applicants must hold a bachelor's degree instead of the master's degree required for the principal certificate and the focus of the standards for the certificate is on the individual classroom[4] instead of the campus as a whole. Further, the positions to which the holder of only a classroom teacher certificate may be assigned are limited not only to the classroom, but also by specific grade levels and subject areas.

These certification rules are further indication that the positions of classroom teacher and assistant principal entail significantly different duties and require significant different skills. They therefore must be considered different professional capacities, as Petitioner contends.

Conclusion

Petitioner's reassignment from middle school assistant principal to classroom teacher was not a reassignment within the same professional capacity.

Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1. The Commissioner has jurisdiction to hear this cause under Texas Education Code § 7.057.

2. Texas Education Code § 7.057 grants the Commissioner jurisdiction over violations of written employment contracts and "the school laws of this state."

---

[4] 19 TEX. ADMIN. CODE § 228.35 (a) Coursework and/or Training for Candidates Seeking Initial Certification.

(1) An educator preparation program shall provide coursework and/or training to ensure the educator is effective in the classroom.

(2) Professional development should be sustained, intensive, and classroom focused.

3. Classroom teacher and assistant principal are not within the "same professional capacity", as used in Texas Education Code § 21.206.

4. Respondent violated Texas Education Code § 21.206 by reassigning Petitioner from middle school assistant principal to classroom teacher.

5. Petitioner is entitled to employment in the same professional capacity as he was employed in for the 2007-2008 school year until he resigns, his contract is properly ended, or his professional capacity is properly changed.

6. Petitioner is entitled to any back pay and benefits he would have received if he was employed in the proper professional capacity for the 2007-2008 school year.

7. Petitioner's appeal should be granted.

### Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

ORDERED that Petitioner's appeal be, and is hereby, granted.

SIGNED AND ISSUED this 19th day of July _____, 2011.

_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

# APPENDIX 12

*Tuck v. Alief Indep. Sch. Dist.*,
Docket No. 008-R10-1007
(Tex. Comm'r Educ. 2012)

| | | |
|---|---|---|
| AHMAL TUCK | § | BEFORE THE |
| | § | |
| | § | |
| | § | |
| | § | |
| V. | § | COMMISSIONER OF EDUCATION |
| | § | |
| | § | |
| ALIEF | § | |
| INDEPENDENT SCHOOL DISTRICT | § | THE STATE OF TEXAS |

**DECISION OF THE COMMISSIONER**

Statement of the Case

Petitioner, Ahmal Tuck, complains of actions and decisions of Respondent, Alief Independent School District.  Christopher Maska is the Administrative Law Judge appointed by the Commissioner of Education to preside over this cause.  Petitioner is represented by Mark W. Robinett, Attorney at Law, Austin, Texas.  Respondent is represented by Ellen H. Spalding, Attorney at Law, Houston, Texas.

The Administrative Law Judge issued a Proposal for Decision recommending that Petitioner's appeal be granted in part. Exceptions and replies were timely filed and considered.

Findings of Fact

After due consideration of the record and matters officially noticed, it is concluded that the following Findings of Fact are supported by substantial evidence and are the Findings of Fact that best support Respondent's decision[1].

1.      Petitioner was employed by Respondent under a chapter 21, subchapter E term contract for the 2006-2007 school year.  Petitioner's position with the district is identified in this contract as professional employee.  Petitioner was paid under the Administrative Professional Schedule.

---

[1] *See* 19 TEX. ADMIN. CODE § 157.1073(h); *Bosworth v. East Central Independent School District*, Docket No. 090-R1-803 (Comm'r Educ. 2003).

**Appx. 12**

2. For the 2006-2007 school year, Respondent employed Petitioner as a career specialist. Respondent's job description for this position provides:

TITLE: Career Specialist

QUALIFICATIONS: College degree.

Experience in business and community relations, personnel and human resources, or career guidance.

Speaking English only is a requirement of this job. This regulation will ensure effective communication during emergencies and discussion of assignments, work performance, and work rules. The regulation is not applicable during breaks, lunch time, and other time not directly related to the performance of job duties and emergencies.

REPORTS TO: Principal

JOB GOALS: To implement the Career and Life Management (CALM) program for high school students. Establish and cultivate a working relationship between the high school and the business and education communities.

PERFORMANCE RESPONSIBILITIES:

1. Investigates materials, technology, programs, etc. that would be effective tools for teaching career and life management skills.

2. Establishes and updates goals for the CALM program for each grade level.

3. Facilitates student participation/learning in the CALM center.

4. Involves the business community in the CALM center.

5. Involves the higher education institutions in the CALM program.

6. Creates/maintains a library of materials to be used as resources for students to investigate careers, continuing education, schools, and colleges.

7. Provides career education seminars, mentors, etc.

8. Keeps abreast of information available regarding career opportunities.

9. Provides career counseling.

10. Teaches teen leadership course.

11. Performs other responsibilities as deemed necessary by the administration.

EVALUATION: Performance of this job will be evaluated in accordance with provisions of the Board's policy on the evaluation of counselors.

3. On March 9, 2007, Petitioner was advised that she would be assigned to a teaching position for the 2007-2008 school year.

4. Petitioner was not given notice that her 2006-2007 contract was proposed for nonrenewal.

5. On April 25, 2007, Petitioner signed a chapter 21, subchapter E term contract with Respondent which had previously been signed by Respondent's superintendent on April 17, 2007. Petitioner's position with the district is identified in this contract as professional employee. The contract provides that Petitioner must be certified if required by the No Child Left Behind Act, the Texas Education Agency, the State Board of Education, or Respondent. The contract provides that "[a]ll existing agreements and contracts, both verbal and written, between the parties regarding the employment of the Employee are superseded by this contract." Petitioner received a similar salary for the 2006-2007 school year and the 2007-2008 school year.

6. Respondent's job description for the position of teacher provides:

TITLE: Teacher

QUALIFICATIONS: As set by state certification standards

REPORTS TO: Principal

JOB GOAL: To help students learn content and/or skills that will contribute to their development as mature, able and responsible men and women.

PERFORMANCE RESPONSIBILITIES:

1. Plans and teaches a program of study in accordance with the Alief Instructional Model, the philosophy and curriculum of the school district.

2. Creates a classroom environment that is conducive to learning and appropriate to the maturity and interests of the students.

3. Establishes and communicates clear objectives for all instruction in order to achieve curriculum goals.

4. Employs instructional methods and materials that are most appropriate for meeting curriculum goals and stated objectives.

5. Continually assesses the accomplishments of students, keeps appropriate records, gives intermediate feedback and provides progress reports on a regular basis.

6. Diagnoses the learning disabilities of students seeking the assistance of district specialists as needed or required.

7. Counsels with colleagues, students and/or parents on a regular basis.

8. Develops reasonable rules of classroom behavior and procedure and maintains order in the classroom.

9. Assists the administration in implementing all policies and/or rules governing student life and conduct.

10. Maintains professional competence through in-service education provided by the district and self selected professional growth activities.

11. Supervises pupils in out-of-classroom activities during the assigned work hours.

12. Participates in curriculum development programs and selection of textbooks as required.

13. Participates in faculty committees and sponsorship of pupil activities.

14. Performs other duties as assigned.

Evaluation: Performance of this job will be evaluated in accordance with provisions of the Board's policy on Evaluation of Teachers, and the Texas Teacher Appraisal System.

<u>Discussion</u>

Petitioner argues that Respondent assigned her to a position in a different professional capacity after the expiration of her term contract. Petitioner also contends that she was not given a fair hearing.

<u>TEX. EDUC. CODE § 21.206</u>

Texas Education Code section 21.206 is a central plank of the "Term Contract Nonrenewal Act[2]." It requires a school district that does not notify a teacher, whose contract is about to expire, not later than the 45th day before the last day of instruction that the contract is proposed for nonrenewal to employ the teacher in the "same professional capacity for the following school year." Without this provision a school district could simply let a teacher's contract expire and the district would not be required to employ the teacher. But this provision requires more than that the district must employ the teacher for the following school year. The district must employ such a teacher in the "same professional capacity."

The Commissioner has addressed the issue of what is meant by the phrase "same professional capacity" in a number of cases. In an early case under the Term Contract Nonrenewal Act, the Commissioner held:

> Petitioner argues that he did not receive an offer of employment in the "same professional capacity," because he was never offered the same position he had held during the 1982-83 school year; i.e., ROTC teacher. It would not be reasonable, however, to conclude that the legislature intended that every teacher who does not receive notice of his or her proposed nonrenewal by April 1 is entitled to be employed in the exact same position the following school year. Such a holding would require a school district to actually begin nonrenewal proceedings by April 1 against every teacher it might conceivably wish to assign to a different position the following year, or face a nonrenewal claim with any reassignment effected after April 1.

---

[2] Respondent was not required to employ Petitioner under a term contract for the 2006-2007 school year when he was employed as a career specialist. Career specialist is not listed as a position requiring a term contract. TEX. EDUC. CODE § 21201(1). However, school districts may offer term contracts to those not required to have term contracts. Ellen Williams, *Education*, 49 S.M.U. L. REV.4, 920 (1996).

It is more reasonable to conclude that the legislature, by using the term "same professional capacity" (instead of "the exact same position"), intended to allow school districts to be flexible in their personnel assignments while discouraging the abuse of the district's inherent or contractual reassignment authority. In other words, the district may place a teacher whose employment has been renewed by operation of law in a position different from that to which the teacher was assigned the previous year, as long as the position is one to which the district could have reassigned the teacher had the parties voluntarily entered into a contract for the following year. In some instances, the validity of a particular placement will be clear. For example, an administrator who does not receive the required notice by April 1 may not be placed in the capacity of a classroom teacher; a classroom teacher may not be placed in the capacity of a counselor; a counselor may not be placed in the capacity of a nurse; a nurse may not be placed in the capacity of a librarian; etc.

In other instances, the validity of a particular placement might not be so clear. For example, a placement might be to another position within the same professional category (e.g., administrator), but nevertheless, be invalid (e.g., from superintendent to assistant elementary school principal). Factors to be considered in determining the validity of such a placement include, but are not necessarily limited to, differences in authority, duties, and salary.

*Barich v. San Felipe-Del Rio Consolidated Independent School District*, Docket No. 117-R1a-484 (Comm'r Educ. 1985). In this case, the Commissioner made clear that districts were given flexibility in the assignment of covered employees to different positions. The question is whether the district could have reassigned the teacher to the new position. If under the previous contract the employee could have been assigned to the position in question, the position in question would normally be found to be in the same professional capacity. By contract a professional capacity could be limited to a narrow category such as secondary math teacher or made as broad as teacher. For example, if an employee is hired under a contract as a teacher/coach, an employee would only be employed under the same professional capacity if the employee had both teaching and coaching duties. *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999). The Commissioner did set out some bright line prohibitions that would not be allowed even if the terms of a contract appeared to allow such reassignments. A classroom teacher cannot be assigned as a counselor. A counselor may not be assigned as a nurse. A nurse may not be assigned as a librarian. However, those employed as

administrators may not be assigned to all other administrative positions. Just because a general statement of professional capacity may apply to two positions does not mean that those two positions are of the same professional capacity.

Building on the *Barich* case and others, the Commissioner has refined the analysis for determining if two jobs are in "same professional capacity." The first question is "what does the contract say?" The second question is "whether the professional capacity identified in the contract is a legitimate professional capacity?" The third question is "do the two positions legitimately fall under the same professional capacity?" *Perales v. Robstown Independent School District*, Docket Nos. 052-R10-104, 084-R3-604 (Comm'r Educ. 2006). Of primary consideration is a comparison of the professional skills and responsibilities of the two positions.

Legitimate Professional Capacity

The contract at issue in the present case states "(the district) hereby employs the undersigned professional employee." The contract does not specify Petitioner's professional capacity. But even assuming that Petitioner's professional capacity was "professional employee" this would not be a legitimate professional capacity as it includes virtually everyone who is entitled to a term contract. Texas Education Code section 21.201(a) provides a definition of "teacher" that is used to determine who would be entitled to a term contract:

> "Teacher" means a superintendent, principal, supervisor, classroom teacher, counselor, or other full-time professional employee who is required to hold a certificate issued under Subchapter B or a nurse. The term does not include a person who is not entitled to a probationary, continuing, or term contract under Section 21.002, an existing contract, or district policy.

All the categories listed in the first sentence are professionals. Hence, they could all be described as professional employees. The use of the term "professional employee" in Petitioner's contract is overbroad if it seen as indicating Petitioner's professional capacity. If professional employee were a professional capacity as that term is used in

Texas Education Code section 21.206 a district could reassign a classroom teacher to be a counselor or a counselor to be a nurse. As the Commissioner as held that this is improper in the *Barich* case, a district may not contractually declare an employee's professional capacity to be "professional employee" and then reassign the employee to any other position that can be described as a professional employee position. The question then becomes whether the skills, responsibility, authority, and salary are similar enough to constitute the same professional capacity.

Comparison of Positions

In the present case, Petitioner was employed under a term contract for the 2006-2007 school year. Petitioner held the position as career specialist. Petitioner received no notice of proposed nonrenewal. For the 2007-2008 school year, Petitioner was employed as a teacher. The parties dispute whether the position of career specialist is in the same professional capacity as the position of teacher. The two positions appear to be very different. The qualifications for the position of career specialist were a college degree and experience in business and community relations, personnel and human resources, or career guidance.

This contrasts with the qualifications for being a teacher. The qualification for being a teacher was solely the state certification standards, which means a valid teaching credential. Teachers were evaluated under the teacher standards. Career specialists were evaluated under the counselor standards. In many cases, one who qualified as a career specialist would not qualify as a teacher and vice versa. This is strong but perhaps not conclusive evidence that that the two positions are not in the same professional capacity.

An evaluation of the duties indicates again some significant differences. As a program specialist, Petitioner was in charge of a school-wide program. Important duties concerned cultivating relationships with the business and higher education communities. As a teacher, Petitioner was primarily concerned with the students assigned to her

classroom. There is some similarity in the duties for the two positions. Petitioner as a program specialist was required to teach a teen leadership course. In both positions, Petitioner reported to the principal. The salary for the two positions was similar. However, the two positions are very dissimilar. This case represents a change in positions that is much more similar to a change from the position of counselor to the position of teacher than a change from being a high school math teacher to being a junior high math teacher. Respondent did not employ Petitioner in the same professional capacity for the 2006-2007 year as it employed Petitioner for the 2007-2008 school year.

*Keith*

Respondent cites the case of *Keith v. Tarkington Independent School District,* Docket No. 459-R3-891 (Comm'r Educ. 1992) as an example that it believes to be similar to the present case. Keith was reassigned from the position of athletic coordinator[3] to the position of teacher/assistant principal at the same salary. The Commissioner found the positions were in the same professional capacity. The set of professional capacities in the *Keith* decision are very different from those in the present case. The *Keith* decision does not hold that "professional employee" is a legitimate professional capacity. The Commissioner found that in *Keith*, that the reassignment was "to a comparable position in the same professional capacity." Such a determination is always a fact specific determination.

Hearing

Petitioner argues that she was not given a fair hearing as Respondent failed to follow its hearing procedures. Petitioner contends that the administration provided the school board with a one and a half page cover letter that allowed it an additional opportunity to make its arguments and alleges that procedure is not allowed under

---

[3] The position of athletic coordinator entails very different duties in different school districts.

Respondent's policy. However, the issue of whether or not there was a procedural irregularity need not be addressed as Petitioner prevails on the merits.

Conclusion

By reassigning Petitioner from the position of career specialist to the position of teacher Respondent violated Texas Education Code section 21.206. Petitioner is entitled to be employed in the same professional capacity she was employed in during the 2006-2007 school year for the 2007-2008 school year.

Reply to Exceptions to the Proposal for Decision

Respondent makes a number of Exceptions to the Proposal for Decision. Some of these will be addressed herein. The rest have been adequately addressed previously.

Chapter 21 Contract

Respondent contends that the Commissioner lacks jurisdiction over this case because Petitioner lacks a chapter 21 contract. The contract in the record certainly appears to be a chapter 21 contract. Respondent points to no record evidence to support its contention. However, Respondent requests that official notice be taken of a document said to be board policy DCB(LOCAL). As the Commissioner pointed out in *Young v. Leggett Independent School District*, 175-R3-898 (Comm'r Educ. 1999), school district policies do not meet the requirements for official notice. Further, it should be noted that the document tendered has an issued date but not an adopted date. Respondent has not shown that Petitioner lacks a chapter 21 contract.

Exhaustion

Respondent contests Conclusion of Law No. 3 and the discussion section because Petitioner did not timely challenge the legitimacy of professional capacity. Respondent believes Petitioner should have challenged this within 15 days of signing her contract. However, Petitioner's contract nowhere states that Petitioner's professional capacity will

be "professional employee." The contract states, "(the district) hereby employs the undersigned professional employee." This is a true statement. What the contract does not say is "the undersigned is employed in the professional capacity of professional employee for purposes of reassignment under Texas Education Code section 21.206(b)." Changes have been made to some inartful wording in the Discussion section.

Respondent contends that Petitioner failed to raise this issue of whether "professional employee" is a legitimate professional capacity. This is true. Petitioner never contended that her professional capacity was "professional employee." However, Respondent, in its Brief raises the claim that Petitioner's professional capacity is "professional employee". Respondent having raised the issue, the issue was properly addressed.

Stare Decisis

Respondent contends that the Proposal for Decision fails to honor stare decisis. However, Respondent fails to find a single Commissioner's Decision that holds "professional employee" is a legitimate professional capacity. It would be odd for districts to believe just because contracts referred to employees as a "professional employees" that they could reassign such employees to any other professional position. If that were the case, superintendents could be reassigned as librarians and school nurses. The determination of whether a teacher has been reassigned to a new position in the same professional capacity is always fact intensive. In the present case, the facts demonstrate Petitioner was not reassigned in the same professional capacity.

## Conclusions of Law

After due consideration of the record, matters officially noticed, and the foregoing Findings of Fact, in my capacity as Commissioner of Education, I make the following Conclusions of Law:

1.    The Commissioner of Education has jurisdiction over this case under Texas Education Code section 7.057.

2.    The term "same professional capacity" as used in Texas Education Code section 21.206 is not limited to the classifications found in Texas Education Code section 21.201. To determine whether two positions are of the same professional capacity one must determine what professional capacity is identified by contract and determine whether that capacity is a legitimate professional capacity. One must then evaluate the two positions primarily by comparing professional duties and responsibilities but also including other factors such as salary and who an employee reports to.

3.    "Professional employee" is not a legitimate "professional capacity."

4.    When the professional duties and responsibilities of the two positions Petitioner held are compared, in addition to the salaries and who Petitioner reported to, it is concluded that the two positions are not in the "same professional capacity" as that term is used in Texas Education Code section 21.206.

5.    Respondent violated Texas Education Code section 21.206 by employing Petitioner in a different professional capacity in the 2007-2008 school year than Petitioner was employed in for the 2006-2007 school year.

6.    Petitioner is entitled to employment in the same professional capacity for the 2007-2008 school year as he was employed in for the 2006-2007 school year.

7.    The Petition for Review is granted to the extent specified in Conclusion of Law No. 6.

Order

After due consideration of the record, matters officially noticed and the foregoing Findings of Fact and Conclusions of Law, in my capacity as Commissioner of Education, it is hereby

008-R10-1007                                          -12-

ORDERED that Petitioner's appeal be, and is hereby, GRANTED to the extent specified in Conclusion of Law No. 6.

SIGNED AND ISSUED this _____ day of _____ 2012.


_____
ROBERT SCOTT
COMMISSIONER OF EDUCATION

# APPENDIX 13

Chart of reassignment decisions from the commissioner
(From the commissioner's trial brief filed in
Travis County District Court)

| Case | Application of Barich Principles |
|------|--------------------------------|
| *Lieberman v. Eagle Mountain-Saginaw Independent School District*, Docket No. 192-R3-785 (Comm'r Educ. 1985) | Contracted to be a teacher or a coach, the district properly reassigned the employee from the position of middle school teacher and high school coach to the position of physical education teacher with scheduling and budgeting responsibilities. |
| *Grounds v. Tolar Independent School District*, Docket No. 340-R3-786 (Comm'r Educ. 1986) | Contracted to be Teacher/Coach Football (Head football coach), the district improperly reassigned the employee to a teaching position. |
| *Reyes v. Culberson County Independent School District*, Docket No. 229-R3-787 (Comm'r Educ. 1987) | Contracted to be a teacher and head coach for duties as assigned, the district properly reassigned the employee from teacher and head coach for football, basketball, and track to the position of teacher and head coach for boys' basketball. |
| *Satcher v. Florence Independent School District*, Docket No. 363-R3-786 (Comm'r Educ. 1987) | Contracted to be a teacher/coach, the district properly reassigned the employee from being a teacher and football coach to being a teacher and baseball coach. |
| *Abbott et al. v. Ector County Independent School District*, Docket No. 081-R3-1287, 105-R3-288 (Comm'r Educ. 1991) | Contracted to be teachers/deans, the district improperly reassigned the employees from teacher/dean positions to teacher positions. |
| *Marshall v. Seguin Independent School District*, Docket No. 177-R1-690 (Comm'r Educ. 1991) | Contracted for 220 duty days, the district properly reduced duty days to 188 days for the following school year. |
| *Carpenter v. Wichita Falls Independent School District*, Docket No. 247-R3-491 (Comm'r Educ. 1993) | Contracted as an administrator, the district properly reassigned the employee from the district wide position of Science Support Specialist to the position of high school assistant principal. |
| *Andrews v. Houston Independent School District*, Docket No. 236-R1-897 (Comm'r Educ. 1997) | The district properly reassigned employee from the position of high school assistant principal to the position of middle school assistant principal. |
| *Keith v. Tarkington Independent School District*, Docket No. 459-R3-891 (Comm'r Educ. 1992) | Contracted as a professional employee, the district properly reassigned the employee from the position of athletic director to the position of teacher/assistant principal. |
| *Goedeke v. Smyer Independent School District*, Docket No. 111-R3-1292 (Comm'r Educ. 1997) | Contracted as teachers, the district's reduction in salary by itself did not place the teachers in different professional capacities. |
| *Salinas v. Roma Independent School District*, Docket No. 058-R3-1196 (Comm'r Educ. 1997) | Contracted as teacher/assistant band director, the district improperly reassigned the employee to a teaching position. |
| *Underwood v. Rusk Independent School District*, Docket No. 062-R3-198 (Comm'r Educ. 1998) | Contracted as an administrator, the district properly reassigned the employee from principal of an independent middle school campus to the position of principal or assistant principal for grades 7 to 9 at a unified junior high/high school campus. |
| *Young v. Leggett Independent School District*, Docket No. 175-R3-898 (Comm'r Educ. 1999) | Contracted as a teacher/coach, the district properly reassigned the employee from the position of varsity coach and teacher to the position of junior high school coach and teacher. |
| *Veliz v. Donna Independent School District*, Docket No. 011-R3-999 (Comm'r Educ. 2000) | Contracted as an administrator, the district properly reassigned the employee from the district wide position of attendance coordinator to the position of middle school assistant principal. |
| *Yturralde v. El Paso Independent School District*, Docket No. 001-R10-900 (Comm'r Educ. 2002) | The district properly transferred the employee from one principal position to another. |
| *Ramos v. El Paso Independent School District*, Docket No. 002-R10-900 (Comm'r Educ. 2002) | The district properly transferred the employee from the position of high school principal to the position of elementary principal. |
| *Pasqua v. Fort Stockton Independent School District*, Docket No. 011-R3-1102 (Comm'r Educ. 2004) | Contracted as an administrator, the district properly reassigned the employee from the position of high school principal to the position of middle school assistant principal. |
| *Perales v. Robstown Independent School District*, Docket Nos. 052-R10-104, 084-R3-604 (Comm'r Educ. 2006) | Contracted as an administrator, the district properly reassigned the employee from a district-wide Director of Even Start to the position middle school assistant principal. |

| Case | Application of Barich Principles |
| --- | --- |
| *Sanchez v. Donna Independent School District*, Docket No. 075-R10-605 (Comm'r Educ. 2007) | Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. |
| *Gonzalez v. Donna Independent School District*, Docket No. 074-R10-605 (Comm'r Educ. 2007) | Contracted as an administrator, the district properly reassigned the employees from a central office position to an assistant principal position. |
| *Perez v. Donna Independent School District*, Docket No. 086-R1-705 (Comm'r Educ. 2007) | Contracted as an administrator, the district properly reassigned the employee from a central office position to an assistant principal position. |
| *Lehr v. Ector County Independent School District*, Docket No. 003-R3-0908 (Comm'r Educ. 2011) | Contracted as an administrator, the district properly reassigned the employee from the position of Executive Director of Special Education to the position of elementary school assistant principal. |
| *Wheeler v. Austin Independent School District*, Docket No. 008-R3-1108 (Comm'r Educ. 2011) | Contracted as professional employee, the district improperly reassigned the employee from the position of assistant principal to the position of classroom teacher. |
| *Murillo v. Laredo Independent School District*, Docket No. 027-R3-0108 (Comm'r Educ. 2012) | Contracted as a professional employee, the district properly reassigned the employee from the position of middle school principal to the position of Human Resources Coordinator. |
| *Montgomery v. Richardson Independent School District*, Docket No. 007-R10-1008 (Comm'r Educ. 2012) | The district properly reassigned the employee from the position of elementary school principal to the position of Program Specialist II. |
| *Tuck v. Alief Independent School District*, Docket No. 008-R10-1007 (Comm'r Educ. 2012) | Contracted as a professional employee, the district improperly reassigned the employee from the position of Career Specialist to the position of teacher. |
| *McCoy v. Kermit Independent School District*, Docket No. 004-R3-0908 (Comm'r Educ. 2012) | Contracted as an administrator, the district properly reassigned the employee from the position of principal to the position of assistant principal. |